## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CONNECTIONS COMMUNITY SUPPORT PROGRAMS, INC., | Case No. 21-10723 (xxx) |
| Debtor.[1] | |

### DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO (A) PAY CERTAIN PREPETITION WAGES, SALARIES, BENEFITS, AND OTHER COMPENSATION AND (B) MAINTAIN EMPLOYEE BENEFITS PROGRAMS AND PAY RELATED OBLIGATIONS, AND (II) GRANTING RELATED RELIEF

The above-captioned debtor and debtor-in-possession (the "**Debtor**"), by and through its *proposed* counsel, Chipman Brown Cicero & Cole, LLP, submit this motion (the "**Motion**"), pursuant to sections 105(a), 363(b)(1), 507(a), 541, 1107, and 1108 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2015-2 and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for entry of interim and final orders, substantially in the forms attached to this Motion as **Exhibit A** (the "**Interim Order**") and **Exhibit B** (the "**Final Order**," and together, the "**Proposed Orders**"), (i) authorizing the Debtor to (a) pay certain prepetition wages, benefits and other compensation (collectively, the "**Prepetition Employee Obligations**"), and (b) continue employee compensation and employee benefits programs (collectively, the "**Employee Benefits Programs**"), and (ii) granting related relief. In support of the Motion, the

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its tax identification number, is as follows: Connections Community Support Programs, Inc. (3030). The address of the Debtor's corporate headquarters is 3812 Lancaster Pike, Wilmington, Delaware 19805.

Debtor relies upon and incorporates herein by reference as if set forth in full the *Declaration of Robert D. Katz in Support of Debtor's Chapter 11 Petition and First Day Pleadings* (the "**First Day Declaration**"), filed with the Court concurrently with this Motion.  In further support of the Motion, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over the Debtor, its estate, and this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.

2.      This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

3.      Pursuant to Local Rule 9013-1(f), the Debtor consents to the entry of a final order by the Court in connection with this Motion, to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

4.      Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

5.      The statutory predicates for the relief requested in this Motion are sections 105(a), 363(b)(1), 507(a), 541, 1107, and 1108 of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004, and Local Rules 2015-2 and 9013-1(m).

## BACKGROUND

6.      On the date hereof (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**"), thereby commencing this case (the "**Chapter 11 Case**").

7.      The Debtor continues to be in possession of its property, operate its business, and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.      No trustee, examiner, or official committee of unsecured creditors has been appointed in this Chapter 11 Case.

9.      Additional factual background regarding the Debtor, including its business operations, its capital and debt structure, and the events leading to the filing of this Chapter 11 Case, is set forth in the First Day Declaration, which is fully incorporated herein by reference.

## RELIEF REQUESTED

10.     By this Motion, the Debtor requests entry of the Proposed Orders authorizing the Debtor to (i) pay, in its discretion, all prepetition amounts required or related to the Prepetition Employee Obligations and Employee Benefits Programs (*each as defined below* and together with all fees, costs, and expenses incident thereto, including amounts owed to third-party administrators, the "**Employee Obligations**"); and (ii) maintain, and continue honoring and paying, in its discretion, all amounts with respect to the Employee Obligations as such were in effect as of the commencement of this Chapter 11 Case and as such may be modified, amended, or supplemented from time to time in the ordinary course of business, including amounts owed to third-party administrators.

11.     To enable the Debtor to carry out the relief requested, the Debtor also requests that the Court authorize all applicable financial institutions and banks (the "**Banks**"), and Paylocity Corporation (the "**Payroll Processor**"), to receive, process, honor, and pay all checks presented for payment and all electronic payment requests made by the Debtor relating to the Employee Obligations, whether such checks were presented or electronic-payment requests were submitted

prior to or after the date hereof.  The Debtor pays its fees owed to the Payroll Processor with the first payroll of each month.  Accordingly, the Debtor believes that no prepetition amounts are owed to the Payroll Processor.

## THE DEBTOR'S EMPLOYEE OBLIGATIONS

A.    **THE DEBTOR'S WORKFORCE.**

12.    The Debtor is a multifaceted not-for-profit health and human services organization located and founded in Delaware with locations throughout the State and more than eleven hundred (1,100) employees (the "**Employees**"). The Employees perform a variety of functions in connection with the Debtor's operations and are critical to the continued operation of the Debtor's business and ongoing resident care.

13.    The Employees are retained on a full-time, part-time, or contract basis, in locations throughout Delaware.  On occasion, the Debtors also utilize the services of temporary employees. Approximately six hundred and sixty (660) of the Debtors' Employees are employed on an hourly basis.  Another three hundred and ninety (390) Employees are salaried.  The Debtor currently employs ten (10) people on a contract basis, including one (1) temporary employee employed through a temporary staffing agency, Robert Half International, Inc. ("**RHI**"), three (3) independent contractors, and seven (7) contract employees through Headcount Management.  The Debtor seeks authority to pay such temporary and contract Employees, including by payments to RHI, Headcount Management, and the independent contractors, through this Motion as well.  None of the Debtor's Employees are represented by a union.

B.    **PREPETITION EMPLOYEE OBLIGATIONS.**

14.    The following summarizes the various types of Prepetition Employee Obligations offered by the Debtor:

*(a)     Wages*

15.      In the ordinary course of business, the Debtor pays its Employees wage and salary obligations (collectively, the "**Wages**") on either a salaried or hourly basis.  CCSP funds its payroll by a wire to the Payroll Funder and all payments are then issues by the Payroll Processor.  Nearly all of the Employees receive their wages, salaries, and other compensation by direct deposit, with the remaining Employees receiving checks; however, those checks are issued by the Payroll Processor, not CCSP.

16.      In the ordinary course of business, hourly Employees are paid on the 15th and the end of each month, with one week in arrears.  CCSP pays salaried Employees also on the 15th and the end of each month, but such Employees are paid current.  The Debtor's last payroll was paid to Employees on April 15, 2021, for the period (for hourly Employees) from March 24, 2021 through and including April 8, 2021, and for the period (for salaried Employees) from April 1, 2021 through and including April 15, 2021.  The next scheduled payroll is due to be paid on April 30, 2021, for the period from April 9, 2021 through and including April 23, 2021 (for hourly Employees) and April 16, 2021 through and including April 30, 2021 (for salaried Employees). The Debtor estimates that the total amount of the April 30, 2021 payroll will be approximately $1,800,000, plus approximately $150,000 of employer taxes.

17.      Payroll is funded to the Payroll Processor at least one (1) day prior to the semimonthly payday.   As of the Petition Date, the Debtor estimates it owes Employees approximately $600,000.00 on account of accrued but unpaid Wages, all of which will become due and owing with the April 30, 2021 payroll (collectively, the "**Unpaid Wages**").  The Debtor believes that, as of the Petition Date, no Employee is owed Unpaid Wages in excess of the $13,650.00 cap under section 507(a)(4) of the Bankruptcy Code.

(b)    *Reimbursable Expenses*

18.    Prior to the Petition Date and in the ordinary course of business, the Debtor reimbursed Employees for certain allowed business and travel-related expenses incurred on behalf of the Debtor (the "**Reimbursable Expenses**").  Employees pay for such expenses directly from their own funds and are reimbursed upon the submission of an expense reimbursement form itemizing the applicable business expenses.  Reimbursement is contingent on the Debtor's determination that the charges are for legitimate, reimbursable business expenses.

19.    Reimbursable Expenses approximate to $1,000.00 to $2,000.00 per month.  As of the Petition Date, the Debtor estimates that it owes no more than $2,000.00 in outstanding prepetition Reimbursable Expenses.  The Debtor's incurrence of Reimbursable Expenses varies from month-to-month.  As a result, the Debtor cannot accurately estimate prepetition, unpaid Reimbursable Expenses.

20.    Employees incurred the Reimbursable Expenses as business expenses on the Debtor's behalf and with the understanding that they would be reimbursed.  To avoid harming Employees who incurred the Reimbursable Expenses, the Debtor requests authority to (a) continue paying the Reimbursable Expenses in accordance with prepetition practices, including payment to and in adherence with the Debtor's policy for reimbursing Employees such expenses, and honor any prepetition obligations related thereto to the extent Employees have paid for such expenses directly from their own funds or are otherwise personally liable for such expenses; (b) modify their prepetition policy relating thereto as they deem appropriate without the need for further court approval; and (c) pay all Reimbursable Expenses to Employees that (i) accrued prepetition and (ii) accrue postpetition but relate to the prepetition period.  The Debtor requests authority to pay up to $1,000 on an interim basis and $2,000 on a final basis for such Reimbursable Expenses.  The

Debtor also seeks authority to continue its reimbursement policy in the ordinary course during the administration of the Chapter 11 Case.

*(c)    Holidays/Paid Time-Off and Vacation Time*

21.    The Debtor offers full-time Employees pay for predetermined holidays ("**Paid Holidays**").  In addition, the Debtor provides full-time Employees sick time at the rate of 1.67 hours per pay, up to five (5) days per year (based on an 8-hour workday).  There is no restriction on the amount of sick time that can be accumulated.  Employees are also eligible for paid time away from work based on the employee's length of service.  These absences include personal illness, vacation, preventive care, care for a family member, school activities, medical/dental appointments, personal business and emergencies (collectively, "**Paid Time Off**").

22.    The Debtor does not offer its Employees the option to seek to use or redeem for cash Paid Time Off.  The Debtor intends to continue to honor Paid Time Off, but the Debtor will not be making any payments for such Paid Time Off, in accordance with its policies.

23.    The Debtor respectfully requests permission to honor all unused Paid Time Off that accrued prior to the Petition Date, in accordance with its historical practices and in the ordinary course of business.[2]  The Debtor also seeks authority to continue to incur and pay eligible Employees for Paid Holidays consistent with past practices.

*(d)    Deductions and Withholdings*

24.    During each applicable payroll period, the Debtor routinely deducts certain amounts from its Employees' gross pay, including, without limitation, (a) pre-tax and after-tax deductions payable pursuant to the Employee Benefits Programs discussed herein (*e.g.*,

---

[2]    In addition, the Debtor also provides all Employees with other leaves of absence as required by law (collectively, the "**Leaves of Absence**").  Leaves of Absence include jury duty, voting leave, medical leave, and bereavement leave.  Employees do not accrue Leaves of Absence over time, and Leaves of Absence are not reflected as a liability on the Debtor's respective balance sheets.

contributions relating to health care benefits and 403(b)) and (b) other miscellaneous deductions (collectively, the "**Deductions**").  Every two-weeks, the Debtor deducts and the Payroll Processor remits to appropriate third-party recipients approximately $137,500.00 from the Employees' paychecks for the Deductions.  As of the Petition Date, the Debtor estimates that no more than $100,000.00 in Employee Deductions have been withheld and not yet remitted to third-party recipients.  Out of an abundance of caution, the Debtor requests authority to remit any unpaid prepetition Deductions that exist.  Additionally, the Debtor seeks authority to continue deducting amounts from the applicable Employee's wages and salaries and forwarding Deductions to the appropriate third-party recipients on a postpetition basis, in the ordinary course of business, and consistent with past practices.  The Deductions represent earnings that applicable authorities have designated for deduction from Employees' paychecks and, thus, may not be property of the Debtor's estate.

25.    In addition to the Deductions, the Debtor is required by law to withhold amounts related to federal income taxes, as well as Social Security and Medicare taxes for remittance to the appropriate taxing authority (collectively, the "**Withheld Amounts**").  The Debtor is also required to pay additional amounts for federal and state unemployment insurance (together with the Withheld Amounts, the "**Payroll Taxes**").  Each time the Debtor funds payroll, the Debtor remits approximately $700,000.00 in Payroll Taxes, which amount includes employer taxes plus what is withheld and remitted on behalf of the Employee.  As of the Petition Date, the Debtor estimates accrued and unpaid Payroll Taxes (collectively, the "**Unremitted Payroll Taxes**") total approximately $250,000.00.  Because the Deductions and Unremitted Payroll Taxes are not property of the Debtor's estate, the Debtor requests that the Court authorize the Debtor to transmit these amounts, all of which will become due within the first two weeks of this Chapter 11 Case,

to the appropriate parties in the ordinary course of business. In this case, the Debtor remits such payments to the Payroll Processor for payment on its behalf.

## C. EMPLOYEE BENEFITS PROGRAMS.

26. In the ordinary course of business, the Debtor offers eligible Employees the opportunity to participate in a number of health and welfare benefits programs, including medical, dental and vision insurance, life and disability insurance, and other employee benefit plans as described below (collectively, the "**Employee Benefits Programs**"). Maintaining these benefits and honoring obligations thereunder is necessary to preserve employee morale and maintain the stability of the Debtor's workforce during this Chapter 11 Case.

27. <u>Medical Plan</u>. The Debtor offers a choice of three medical plans to eligible Employees (the "**Medical Plan**"), which is administered by Highmark Delaware ("**Highmark**"). The coverage in the Medical Plan and associated premiums differ depending on the level of coverage Employees elect to receive and whether the Employee has dependents covered by the applicable plan. The Employees contribute toward the coverage through payroll deductions, with the Debtor paying the balance of the premiums. As of the Petition Date, the Debtor believes that approximately $200,000.00 is owed for the Medical Plan. Specifically, although administered by Highmark, the Medical Plan Medical is funded by the Debtor. Monthly payments made by the Debtor include monthly administrative fees, a stop loss premium, and required calculated claims funding. As of the Petition Date, the Debtor owes approximately $300,000.00, no more than $200,000.00 of which relates to amounts arising prior to the Petition Date in connection with the self-funded Medical Plan, which consists entirely of the self-funding requirement of the Medical Plan.

28.     Dental Plan.  Eligible Employees may also enroll in a dental plan (the "**Dental Plan**") administered by Delta Dental.  The Employees contribute toward the Dental Plan coverage through payroll deductions, with the Debtor paying the balance of the premiums.  As of the Petition Date, the Debtor believes that that are no outstanding amounts due on account of the Dental Plan.

29.     Vision Plan.  Eligible Employees may also enroll in a vision plan (the "**Vision Plan**") administered by Superior Vision Services.  The Employees contribute toward the Vision Plan coverage through payroll deductions, with the Debtor paying the balance of the premiums.  As of the Petition Date, the Debtor believes that it owes nothing on account of the Vision Plan.

30.     Company-Paid Plans.  The Debtor provides eligible Employees with company-paid Life and Accidental Death & Dismemberment insurance (the "**Company-Paid Plan**").  The Company-Paid Plan is administered by Cigna.  As of the Petition Date, the Debtor estimates that approximately $600.00 is owed to the plan administrator on account of the Company-Paid Plan.

31.     403(b) Plan.  The Debtor maintains for the benefit of eligible Employees an employee savings plan, administered through Nationwide, which is a tax-qualified plan within the meaning of, and administered in accordance with, the requirements of section 403(kb) and other applicable sections of the Internal Revenue Code (the "**403(b) Plan**").  There are approximately 2,300 participants in the 403(b) Plan.  The Debtor withholds certain amounts from participating Employee's paychecks and contributes such amounts to the 403(b) Plan (the "**Employee 403(b) Contributions**").  The Debtor estimates that it withholds a total of approximately $40,000.00 in Employee 403(b) Contributions per month.  As of the Petition Date, approximately $60,000.00 has been withheld and not yet remitted to the 403(b) Plan administrator.  The Debtor requests authority to pay these amounts and to continue the 403(b) Plan and Employee 403(b) Contributions on a postpetition basis.

32.     <u>Other Policies and Benefits</u>.  Eligible Employees have the benefit of certain other policies and benefits, including, but not limited to, jury duty, bereavement leave, voting leave, and military duty leave, some of which are mandated or encouraged by law and some of which may have pay or benefits components.  The Debtor seeks authorization to continue the aforementioned policies and benefits and to make any payments on account of any accrued but unpaid amounts owing thereunder.

33.     Substantially all of the Debtor's Employee Benefits Programs are administered by Weiner Benefits Group ("**WBG**").  Because WBG is paid in advance for all administrative and other fees, the Debtor believes that no amounts other than the amounts set forth above are due to WBG as of the Petition Date. The Debtor further requests authority to (a) continue the Employee Benefits Programs in the ordinary course of business, (b) continue making the above-described contributions to the Employee Benefits Programs, and (c) pay any amounts related thereto, including premiums, claims amounts, and administration fees, to the extent that they remain unpaid as of the Petition Date in the ordinary course of business.  The Debtor requests authority to pay $200,000.00 in pre-petition monthly premiums and funding, including the funding of the Medical Plan, for Employee Benefits Programs on an interim basis and $261,000.00 on a final basis.

D.     **THE PAYROLL PROCESSOR**

34.     As noted above, the Debtor uses the Payroll Processor to administer payroll funds made available to Employees through direct deposit.  The Payroll Processor's responsibilities include processing payroll and transferring funds from the Debtor to its Employees and to the relevant taxing and garnishing authorities.  The Debtor pays the Payroll Processor approximately $15,000.00 per month.  As noted above, that amount is paid in advance with the first payroll of each month.  Accordingly, the Debtor believes that no amounts are owed to the Payroll Processor

as of the Petition Date.  Because the services provided by the Payroll Processor are crucial to the smooth functioning of the Debtor's payroll system, the Debtor requests permission to pay unpaid Payroll Processor fees as of the Petition Date, if any, and in an amount of no more than $10,000.00, and to continue to pay fees that accrue during this bankruptcy case in the ordinary course of business.

## BASIS FOR RELIEF

### Cause Exists to Authorize the Debtor to Pay Prepetition Obligations, Maintain Employee Benefits Programs, and Pay Related Administrative Costs

35.     Pursuant to sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, an individual's claims for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within one hundred eight (180) days before the Petition Date, and claims against the Debtor for contributions to employee benefit plans arising from services rendered within one hundred eighty (180) days before the Petition Date, are each afforded unsecured priority status up to $13,650.00 per employee.  Furthermore, to the extent any Employee Obligations exceed the cap amounts imposed by sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code, provided such caps apply, such payments would be authorized under sections 105(a) and 363(b)(1) of the Bankruptcy Code, as discussed below.

### A.     THE PROPOSED PAYMENTS ARE ACCORDED PRIORITY UNDER SECTION 507 OF THE BANKRUPTCY CODE.

36.     The Debtor believes that many of its Employee Obligations constitute priority claims under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code.  To the extent such Employee Obligations constitute priority claims, the Debtor is required to pay such claims in full to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(B).  Thus, granting the relief sought herein would only cause such Employee claims to be paid in the initial stages of this Chapter 11 Case, rather than at the plan confirmation stage, and would be consistent with the Bankruptcy

Code's purpose of ensuring that employees are paid in full on account of the priority status of their claims, up to the statutorily imposed limit.  Accordingly, the Debtor submits that no prejudice to creditors or other parties in interest would result from granting the relief requested herein.

**B.    PAYMENT OF THE EMPLOYEE OBLIGATIONS IS APPROPRIATE UNDER SECTION 541 OF THE BANKRUPTCY CODE.**

37.    The Debtor seeks authority to pay the Deductions and Unremitted Payroll Taxes, which principally represent Employee earnings that governments and judicial authorities have designated for deduction from their pay.  Indeed, certain deductions, including contributions to various employee benefit programs and child support and alimony payments, are not property of the Debtor's estate because they have been withheld from Employees' paychecks on another party's behalf.  *See* 11 U.S.C. § 541(b); *Begier v. IRS*, 496 U.S. 53, 59 (1990) (holding that taxes such as excise taxes, FICA taxes and withholding taxes are property held by the debtor in trust for another and, as such, do not constitute property of the estate); *see also Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron)*, 155 F.3d 718, 721 (4th Cir. 1998) (holding that deposits subject to an express trust are excluded from the bankruptcy estate); *City of Farrell v. Sharon Steel Corp. (In re Sharon Steel Corp.)*, 41 F.3d 92, 98-103 (3d Cir. 1994) (finding that funds withheld from employees' paychecks may be subject to a trust, and thus are not property of a debtor's estate, even where such funds were commingled with the debtor's other property).  Accordingly, such funds are not available for general distribution to a debtor's creditors.  Further, federal and state laws require the Debtor and its officers to make certain tax payments that have been withheld from the employees' paychecks.  *See* 26 U.S.C. § 6672 and 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95-97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *DuCharmes & Co., Inc. v. State of Mich. (In*

*re DuCharmes & Co.)*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Because the deductions and payroll taxes are not property of the Debtor's estate, the Debtor requests that this Court authorize the Debtor to transmit the deductions and payroll taxes to the proper parties. Otherwise, any exposure to personal liability would result in the unnecessary distraction of the Debtor's directors and officers during this critical stage of this Chapter 11 Case.

C.   **THE PROPOSED PAYMENTS ARE APPROPRIATE UNDER SECTIONS 363(b), 1107(a), AND 1108 OF THE BANKRUPTCY CODE AND THE DOCTRINE OF NECESSITY.**

38.   Courts in this district and elsewhere generally acknowledge that it is appropriate to authorize the payment of prepetition obligations where necessary to protect and preserve the estate. *See In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191 92 (Bankr. D. Del. 1994) (finding that a debtor is entitled to pay certain prepetition creditors upon a showing that the payment is "essential to the continued operation of the business") (citations omitted); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (authority to pay prepetition wages); *Armstrong World Indus., Inc. v. James A. Phillips, Inc., (In re James A. Phillips,* Inc*.)*, 29 B.R. 391, 398 (S.D.N.Y. 1983) (authority to pay prepetition claims of suppliers); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

39.   Section 363(b)(1) of the Bankruptcy Code empowers the Court to allow a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The Debtor's decision to use, sell, or lease assets outside the ordinary course of business must be based upon the sound business judgment of the Debtor. *See, e.g.*, *In re Martin (Myers v. Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper* (*Fulton State Bank v. Schipper*), 933 F.2d 513, 515 (7th Cir. 1991)); *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Abbotts Dairies of Penn., Inc.*, 788

F.2d 143 (3d Cir. 1986) (implicitly adopting the "sound business purpose" test of *Lionel Corp.* and

requiring good faith); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999);

*In re Del. and Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (concluding that the Third Circuit

adopted the "sound business purpose" test in the *Abbotts Dairi*es decision).

40.     The payment of the Employee Obligations and continuation of the Employee

Benefits Programs serve the sound business purpose of maximizing the value of the Debtor's

estate.  The Debtor's success in this Chapter 11 Case, and the success of the sale process in this

bankruptcy case, hinges in large part on the morale and continued dedication and efforts of its

Employees.  The vast majority of the Employees rely exclusively on their compensation, benefits,

and reimbursement of expenses to satisfy their daily living expenses, support their families, and

maintain their health and well-being.  Consequently, these Employees would be exposed to

significant financial difficulties if the Debtor was not permitted to (i) continue paying

compensation, (ii) provide employee benefits, and (iii) maintain existing programs.  Through the

payment of the Employee Obligations, the Debtor seeks to motivate and encourage the Employees

to continue to support the Debtor's reorganization efforts.  Accordingly, this Court should grant

the requested relief under section 363 of the Bankruptcy Code.

41.     Further, the Debtor, operating its business as a debtor-in-possession under sections

1107(a) and 1108 of the Bankruptcy Code, are fiduciaries "holding the bankruptcy estate[s] and

operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity

owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Implicit in the duties

of a chapter 11 debtor-in-possession is the duty "to protect and preserve the estate, including an

operating business's going-concern value." *Id.*  Courts have noted that there are instances in which

a debtor-in-possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a

prepetition claim." *Id.* The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.* The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

42.     Payment of the Employee Obligations meets each element of the *CoServ* court's standard. As described above, the Employees likely hold priority claims against the Debtor for the Prepetition Obligations subject to the limitations imposed by section 507(a)(4) and (a)(5) of the Bankruptcy Code. The potential harm and economic disadvantage that would stem from the failure to pay the Employee Obligations is grossly disproportionate to the amount of any prepetition claim that may be paid. Any failure by the Debtor to pay the Employee Obligations would negatively impact the morale of the Debtor's workforce at a critical time for the Debtor and its business which could impact resident care. The Debtor seeks to minimize the personal hardship the Employees would suffer if the Employee Obligations are not paid when due or as expected. The Debtor has examined other options short of payment of the Employee Obligations and have determined that to avoid significant disruption of the Debtor's business operations and ensure continued excellent resident care, there exists no practical or legal alternative to payment of such obligations. Therefore, the Debtor can only meet its fiduciary duty as a debtor-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code by payment of the Employee Obligations.

**D.     THE DOCTRINE OF NECESSITY AND SECTION 105(a) OF THE BANKRUPTCY COURT FURTHER SUPPORT THE CONCLUSION THAT THE PROPOSED PAYMENTS ARE APPROPRIATE.**

43.     The Debtor's proposed payment of the Employee Obligations should also be authorized pursuant to section 105(a) of the Bankruptcy Code and the "doctrine of necessity." Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  A Bankruptcy Court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Ionosphere Clubs*, 98 B.R. at 175.  Moreover, "[u]nder Section 105, the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 177).  The authority to pay such prepetition obligations is known as the "necessity of payment" rule (also referred to as the "doctrine of necessity").  The doctrine of necessity "recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay pre-petition claims where such payment is essential to the continued operation of the debtor." *Ionosphere Clubs*, 98 B.R. at 176; *see also In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a prepetition unsecured creditor, a debtor must show that the payment is necessary to avert a serious threat to the chapter 11 process.").

44.     The doctrine of necessity is an accepted component of modern bankruptcy jurisprudence. *See Just For Feet*, 242 B.R. at 826 (approving payment of key inventory suppliers' prepetition claims when such suppliers could destroy debtor's business by refusing to deliver new

inventory on eve of debtor's key sales season); *In re Payless Cashways, Inc.*, 268 B.R. 543, 546–47 (Bankr. W.D. Mo. 2001) (authorizing payment of critical prepetition suppliers' claims when such suppliers agree to provide postpetition trade credit); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. at 175, *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191–92 (Bankr. D. Del. 1994). Moreover, courts have recognized the applicability of the doctrine of necessity with respect to the payment of prepetition employee compensation and benefits. *See, e.g.*, *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp. (In re Chateaugay Corp.)*, 80 B.R. 279, 285–89 (S.D.N.Y. 1987) (under "necessity of payment" doctrine, it is appropriate for bankruptcy court to defer to Debtor's business judgment in permitting payment of certain workers' compensation claims); *In re Ionosphere Clubs, Inc.*, 98 B.R. at 176 ("This rule recognizes the existence of the judicial power to authorize a debtor in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor.").

45.    Based on the above legal principles, the relief requested represents a sound exercise of the Debtor's business judgment, is necessary to avoid immediate and irreparable harm to the Debtor's estate, and is, therefore, justified under the applicable authority.  Paying the Employee Obligations and continuing with the Employee Benefits Programs will benefit the Debtor's estate and its creditors by allowing the Debtor to continue business operations postpetition ensuring continued excellent client care.  The Employees provide the Debtor with services essential to its clients and the operation of the Debtor's business, and the Debtor believes that absent the payment of the employee compensation and benefits owed to the Employees, the Debtor will experience employee turnover and instability at this critical time.

46.    Payment of the Employee Obligations is a necessary and critical element of the Debtor's effort to preserve its going concern value and will give the Debtor the greatest likelihood

of retention of its Employees as the Debtor seeks to operate its business in this Chapter 11 Case. Indeed, the Debtor believes that without the relief requested herein, its Employees may seek alternative opportunities.  Such a development would deplete the Debtor's workforce, thereby undermining the Debtor's restructuring efforts.

47.     Accordingly, for the foregoing reasons, the Debtor submits that cause exists for granting the relief requested in this Motion.

**E.    THE COURT SHOULD AUTHORIZE APPLICABLE BANKS TO HONOR AND PAY CHECKS USED AND MAKE OTHER TRANSFERS TO PAY THE EMPLOYEE OBLIGATIONS**

48.     In connection with the relief requested in this Motion, the Debtor also requests that (a) the Banks be authorized and directed to receive, process, honor, and pay all checks presented for payment of, and to honor all fund transfer requests made by the Debtor related to, the claims that the Debtor requests authority to pay in this Motion, regardless of whether the checks were presented or fund transfer requests were submitted before or after the Petition Date, (b) the Banks rely on the Debtor's designation of any particular check as approved by the Proposed Orders; and (c) authorize the Debtor to issue replacement checks or transfers, to the extent any check or transfer in relation to the claims the Debtor request authority to pay in this Motion is dishonored or rejected by the banks and other financial institutions.

## IMMEDIATE RELIEF IS IMPERATIVE

49.     Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one (21) days after the Petition Date to the extent that relief is necessary to avoid "immediate and irreparable harm."  FED. R. BANKR. P. 6003.  Specifically, Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion

to pay all or part of a claim that arose before the filing of the petition . . . ." *Id.* For reasons discussed above, authorizing the Debtor to pay Employee Obligations and to continue its Employee Benefits Programs and directing the Banks at which the Debtor maintains disbursement and other accounts to process and pay, to the extent of funds on deposit, any and all electronic funds transfers in connection with the Employee Obligations and Employee Benefits Programs, at the Debtor's direction, is integral to the Debtor's success in this Chapter 11 Case. Failure to receive such authorization and other relief during the first twenty-one (21) days of this Chapter 11 Case would severely disrupt the Debtor's operations at this critical juncture. For the reasons discussed herein, the relief requested is necessary in order for the Debtor to operate its business in the ordinary course and preserve the ongoing value of the Debtor's operation, thus maximizing the value of its estate for the benefit of all stakeholders. Accordingly, the Debtor submits that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## **WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(a) AND 6004(h)**

50.     The Debtor also requests that, to the extent applicable to the relief requested in this Motion, the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h). As described above, the relief that the Debtor seeks in this Motion is necessary for the Debtor to operate its business without interruption and to preserve value for its estate. To implement the foregoing successfully, the Debtor requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtor has

established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## **RESERVATION OF RIGHTS**

51.     Nothing contained in this Motion is intended or shall be construed as (a) an admission as to the validity of any claim against the Debtor, (b) a waiver of the Debtor or any party-in-interest's rights to dispute any claim, or (c) an approval or assumption of any agreement under section 365 of the Bankruptcy Code.  Likewise, if this Court grants the relief sought herein, any payment made pursuant to the interim order or final order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtor's right to dispute such claim at a later date.

## **NOTICE**

52.     Notice of this Motion will be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) the Internal Revenue Service; (c) the Securities and Exchange Commission; (d) the parties included on the Debtor's list of its thirty (30) largest unsecured creditors; (e) the Office of the United States Attorney for the District of Delaware; (f) counsel to WSFS; and (g) the Banks (collectively, the "**Notice Parties**").  As this Motion is seeking "first day" relief, notice of this Motion and any order entered in connection with the Motion will be served on all parties as required by Local Rule 9013-1(m).  Due to the urgency of the circumstances surrounding this Motion and the nature of the relief in it, the Debtor respectfully submits that no further notice of this Motion is required.

**WHEREFORE**, the Debtor respectfully requests entry of the Interim Order, and pending a final hearing, the Final Order, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: April 19, 2021
      Wilmington, Delaware

**CHIPMAN BROWN CICERO & COLE, LLP**

/s/ Mark L. Desgrosseilliers

William E. Chipman, Jr. (No. 3818)
Mark L. Desgrosseilliers (No. 4083)
Mark D. Olivere (No. 4291)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone:    (302) 295-0191
Facsimile:    (302) 295-0199
Email:    chipman@chipmanbrown.com
         desgross@chipmanbrown.com
         olivere@chipmanbrown.com

*Proposed Counsel to the Debtor and the Debtor-In-Possession*