**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>CONNECTIONS COMMUNITY SUPPORT PROGRAMS, INC.,<br><br>　　　　　　　Debtor.[1] | Chapter 11<br><br>Case No. 21-10723 (MFW)<br><br>**Hearing Date:  May 17, 2021 at 11:30 a.m. (ET)**<br>**Objection Deadline: May 10, 2021 at 4:00 p.m. (ET)** |

**DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING**
**(I) THE EMPLOYMENT AND RETENTION OF SSG ADVISORS, LLC, AS**
**INVESTMENT BANKER TO THE DEBTOR EFFECTIVE AS OF APRIL 19, 2021, AND**
**(II) A WAIVER OF COMPLIANCE WITH CERTAIN REQUIREMENTS OF**
**LOCAL RULE 2016-2**

By this Application (this "**Application**"), the debtor and debtor-in-possession (the "**Debtor**") in the above-captioned chapter 11 case, seeks entry of an order, substantially in the form attached hereto as **Exhibit B**, authorizing the Debtor to employ and retain SSG Advisors, LLC ("**SSG**") as investment banker to the Debtor effective as of April 19, 2021 (the "**Retention Date**").  In support of this Application, the Debtor relies on the *Declaration of J. Scott Victor in Support of the Application* (the "**Victor Declaration**"), which is attached hereto as **Exhibit A** and incorporated herein by reference.  In further support of this Application, the Debtor respectfully states as follows:

**JURISDICTION AND VENUE**

1.	The Court has jurisdiction over the Debtor, its estate, and this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States

---

[1]	The Debtor in this chapter 11 case, along with the last four digits of its tax identification number, is as follows: Connections Community Support Programs, Inc. (3030).  The address of the Debtor's corporate headquarters is 3812 Lancaster Pike, Wilmington, Delaware 19805.

District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b).

2.      Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

3.      Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the Debtor consents to the entry of a final order by the Court in connection with this Application, to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

4.      The statutory predicates for the relief requested herein are sections 327(a) and 328(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "**Bankruptcy Code**").  The relief is also appropriate under Rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Local Rules 2014-1 and 2016-2.

## **BACKGROUND**

5.      On April 19, 2021 (the "**Petition Date**"), the Debtor commenced this case (the "**Chapter 11 Case**") by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**").

6.      The Debtor has continued in the possession of its property and has continued to operate and manage its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      To date, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") has not appointed a creditors' committee in the Chapter 11 Case, nor has any trustee or examiner been appointed therein.

8.      Additional factual background regarding the Debtor, including its business operations, its capital and debt structure, and the events leading to the filing of this Chapter 11 Case, is set forth in the *Declaration of Robert D. Katz in Support of Chapter 11 Petition and First Day Pleadings* [Docket No. 4], filed on the Petition Date and incorporated herein by reference.

## RELIEF REQUESTED

9.      By this Application, the Debtor seeks, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, Bankruptcy Rules 2014 and 2016, and Local Rules 2014-1 and 2016-2, the entry of an Order (i) authorizing the  employment and retention of SSG as its investment banker in this Chapter 11 Case, effective as of the Retention Date, pursuant to the terms and conditions of the engagement letter dated as of February 24, 2021 (the "**Engagement Letter**"), a copy of which is attached to the Victor Declaration as Schedule 1 and incorporated herein by reference; and (ii) granting a waiver of compliance with the information requirements relating to compensation requests set forth in Local Rule 2016-2, to the extent requested herein.

## SSG'S QUALIFICATIONS

10.      The Debtor submits this Application because of its need to continue to retain a qualified investment banker to assist the Debtor through a sale process in this Chapter 11 Case. The Debtor believes that its retention of SSG is necessary and appropriate to enable the Debtor to consummate a sale of its operations and to fulfill the Debtor's statutory duties in this Chapter 11 Case.

11.     SSG is an internationally recognized investment banking firm with offices in New York and Philadelphia.  Since its founding, SSG has completed over 350 investment banking assignments in North America and Europe.

12.     SSG's professionals have expertise in mergers and acquisitions, private placements, financial restructurings, valuations, and financial advisory services.  Moreover, SSG has substantial expertise in advising troubled companies in numerous situations, including in connection with asset sales and related issues, and SSG is particularly well suited to serve as the Debtor's investment banker in this Chapter 11 Case.

13.     SSG's professionals have developed extensive experience in matters involving complex financial restructuring.  Specifically, SSG has served as an investment banker for debtors and other parties in a large number of bankruptcy cases in the Third Circuit, including *inter alia*: *In re PBS Brand Co., LLC 20-13157 (JTD); In re PQ New York, Inc., et al*., Case No. 20-11266 (JTD); *In re Sustainable Restaurant Holdings, Inc. et al*. Case No. 20-11087 (JTD); *In re Cedar Haven Acquisition, LLC, Case No. 19–11736 (CSS); In re Vascular Access Centers, LP, Case No. 19-17117 (AMC); In re THG Holdings LLC*, Case No. 19-11689 (JTD); *In re Center City Healthcare, LLC d/b/a Hahnemann University Hospital, et al.*, Case No. 19-11466 (KG); *In re St. Christopher's Hospital*, Case No. 19-11468 (KG); *In re 1515-GEEnergy Holding Co. LLC, et al*, Case No. 19-10303 (LSS); *In re Argos Therapeutics*, Case No. 18-12714 (KJC); *In re NSC Wholesale Holdings, LLC, et al.*, Case No. 18-12394 (CSS); *In re Samuel Jewelers, Inc.*, Case No. 18-11818 (KJC); *In re ABT Molecular Imaging, Inc.*, Case No. 18-11398 (CSS); *In re Nighthawk Royalties LLC, et al*. Case No. 18-10989 (BLS); *In re Vitamin World, Inc.*, Case No. 17-11933 (KJC); *In re Peekay Acquisition, LLC*, Case No. 17-11722 (BLS); *In re Saladworks, LLC*, Case No. 15-10327 (LSS); *In re KIOR, Inc.*, Case No. 14-12514 (CSS); In re

Seegrid Corporation, Case No. 14-12391 (BLS); *In re PMGI Holdings, Inc.*, 13-12404 (CSS); *In re MSD Performance, Inc.*, Case No. 13-12286 (PJW); *In re Cylex Inc.*, Case No. 12-13259 (BLS); *In re TCIM*, Case No. 12-11711 (KG); *In re BroadSign International, Inc.*, Case No. 12-10789 (BLS); *In re Hussey Copper Corp.*, Case No. 11-13010 (BLS); *In re Pure Beauty*, 11-13159 (MFW); *In re Blitz U.S.A., Inc.*, Case No. 11-13603 (PJW); *In re American Laser Centers*, Case No. 11-13853 (MFW), and many more.  As a result, the Debtor believes that SSG is well qualified to perform these services and represent the Debtor's interests in this Chapter 11 Case.

14.     As set forth in the Victor Declaration, SSG was engaged by the Debtor to provide investment banking services to the Debtor pursuant to the Engagement Letter prior to the Petition Date.  As a result of SSG's engagement prior to the Petition Date, and extensive efforts during such time to market the Debtor's operations, and numerous meetings and conversations with the Debtor and its senior management and other professionals, and review of critical documents, SSG has become intimately familiar with the Debtor's corporate and capital structure, management, operations, and various other aspects of its business.  SSG's existing and extensive knowledge of the Debtor and its assets and operations places it in the best position to provide the Debtor with the investment banking services that are contemplated by the Engagement Letter and that SSG has been undertaking for over a month prior to the Petition Date.

## SERVICES TO BE RENDERED

15.     Subject to Court approval of this Application, and consistent with the terms of the Engagement Letter,[2] SSG has agreed to provide investment banking services to the Debtor in this Chapter 11 Case in accordance with the terms of the Engagement Letter.  The Debtor

---

[2]   The summary set forth herein is qualified in its entirety by the terms of the Engagement Letter, and the terms of the Engagement Letter shall control in the event of a conflict.  Capitalized terms not otherwise defined in this section shall have the meanings ascribed to such terms in the Engagement Letter.

understands that the individuals who will provide these services have considerable experience in

restructuring matters, have extensive knowledge already of the Debtor, and are well qualified to

perform the work required in this Chapter 11 Case.

16.     SSG has provided already or otherwise will provide, subject to Court approval of

this Application, such investment banking services as SSG and the Debtor deem appropriate,

including, but not limited to, the following:

- Prepare an information memorandum describing the Debtor, its historical performance and services, including existing beds, payors, contracts, marketing and sales, labor force, management, and financial projections;

- Assist the Debtor in compiling a data room of any necessary and appropriate documents related to the Sale;

- Assist the Debtor in developing a list of suitable potential buyers who will be contacted after approval by the Debtor and update and review such list with the Debtor on an on-going basis;

- Coordinate the execution of confidentiality agreements for potential buyers wishing to review the information memorandum;

- Assist the Debtor in coordinating site visits for interested buyers and work with the management team to develop appropriate presentations for such visits;

- Solicit competitive offers from potential buyers;

- Advise and assist the Debtor in structuring the Sale and negotiating the transaction agreements; and

- Otherwise assist the Debtor and its other professionals, as necessary, through closing on a best efforts basis.

17.     The Debtor requires qualified professionals to render these essential professional

services. As noted above, SSG has substantial expertise in all areas for which it is proposed to

be retained.

18.     The services that SSG will provide to the Debtor are necessary to enable the

Debtor to identify the highest and best possible bid for its assets in the case of a sale, or

otherwise effectuate a transaction that is in the best interests of its estate, creditors, and parties-in-interest.  All of the services that SSG will provide to the Debtor will be undertaken at the request of the Debtor and will be appropriately directed by the Debtor so as to avoid duplicative efforts among the professionals retained in this Chapter 11 Case.  The Debtor has been informed that SSG will also use reasonable efforts to coordinate with the Debtor's other retained professionals to avoid the unnecessary duplication of services.

## PROFESSIONAL COMPENSATION

19.     Subject to this Court's approval and as set forth in the Engagement Letter,[3] the Debtor and SSG have agreed to the following compensation and expense structure (the "**Fee and Expense Structure**") in consideration for the services to be rendered by SSG in this Chapter 11 Case:

1.  Initial Fee. An initial fee (the "**Initial Fee**") of $40,000, which initial fee was due and was paid upon signing the Engagement Letter.

2.  Monthly Fees.  Monthly fees (the "**Monthly Fees**") of $40,000 per month payable beginning April 1, 2021, and continuing each month thereafter on the first (1st) of the month during the Engagement Term, as defined in the Engagement Letter.

3.  Financing Fee. Upon the closing of a Financing Transaction to any party, SSG shall be entitled to a fee ("Financing Fee") payable in cash, in federal funds via wire transfer or certified check, at and as a condition of closing of such Financing equal to 2.0% of any Senior Debt (as such term is hereafter defined) raised from any financing source, including senior revolver and term loan, plus 4.0% of any Tranche B, Traditional Subordinated Debt or Equity (as such term is hereafter defined) raised regardless of whether the Company chose to draw down the full amount of the Financing.  Notwithstanding the foregoing, SSG shall not be entitled to any Financing Fee related to

---

[3]   The summary set forth herein is qualified in its entirety by the terms of the Engagement Letter, and the terms of the Engagement Letter shall control in the event of a conflict.

capital, financing or guaranty from any existing lender or equity investor or government economic assistance program.

4. <u>Sale Fee</u>.  Upon the consummation of a Sale Transaction to any party and as a direct carveout from proceeds of any Sale, prior in right to any post- or pre-petition secured debt, SSG shall be entitled to a fee (the "Sale Fee"), payable in cash, in federal funds via wire transfer or certified check, at and as a condition of closing of such Sale, equal to the greater of (a) $450,000 or (b) three percent (3.0%) of Total Consideration (as such term is hereafter defined).  In the event that the Company determines to terminate the Sale process and move to an orderly wind-down of its assets, then SSG's Sale Fee shall be $150,000.

5. <u>Restructuring Fee</u>. Upon confirmation of a plan of reorganization effectuating a Restructuring, SSG shall be entitled to a fee (the "Restructuring Fee") payable in cash, in federal funds via wire transfer or certified check, at and as a condition of closing such Transaction equal to $450,000.  For the sake of clarity, SSG shall not be entitled to both a Sale Fee and a Restructuring Fee.

19.    In addition to the foregoing Initial Fee, Financing Fee, Monthly Fee, Sale Fee, and Restructuring Fee, noted above, whether or not a Sale is consummated, additional financing is obtained, or a plan is confirmed, the Debtor agrees to reimburse SSG for all of SSG's reasonable out-of-pocket expenses incurred in connection with the subject matter of this Engagement Letter.

**THE FEE AND EXPENSE STRUCTURE IS APPROPRIATE
AND REASONABLE AND SHOULD BE APPROVED UNDER
<u>SECTION 328(a) OF THE BANKRUPTCY CODE</u>**

20.    The Fee and Expense Structure described above is comparable to compensation generally charged by investment banking firms for comparable engagements, both in and out of court.  The Fee and Expense Structure is also consistent with SSG's normal and customary billing practices for cases of this size and complexity that require the level and scope of services outlined.  SSG and the Debtor also believe that the Fee and Expense Structure is reasonable and at favorable market rates, and should be approved.

21.    The Debtor and SSG negotiated the Fee and Expense Structure to function as an interrelated, integrated unit, in correspondence with SSG's services, which SSG renders not in parts, but as a whole.  It would be contrary to the intention of SSG and the Debtor for any isolated component of the Fee and Expense Structure to be treated as sufficient consideration for any isolated portion of SSG's services.  Instead, the Debtor and SSG intend that SSG's services be considered as a whole that is to be compensated by the Fee and Expense Structure in its entirety.

22.    SSG's restructuring expertise, as well as its mergers and acquisitions expertise, some or all of which may be required by the Debtor during the term of SSG's engagement under the Engagement Agreement, were important factors in determining the Fee and Expense Structure.  The ultimate benefit to the Debtor derived from the services provided by SSG under the Engagement Agreement cannot be measured by a reference to the number of hours expended by SSG's professionals.  Moreover, the Fee and Expense Structure takes into consideration SSG's anticipation that it will need to provide a substantial commitment of

professional time and effort in order to perform its duties under the Engagement Agreement, and in light of the fact that such commitment may foreclose other opportunities for SSG.

23.      In light of the foregoing and given the numerous issues that SSG has been and likely will be required to address in the performance of its services under the Engagement Agreement, SSG's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for SSG's services for engagements of this nature both in in-and out-of-court contexts, the Debtor believes that the Fee and Expense Structure is fair and reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

24.      SSG has not shared or agreed to share any of its compensation from the Debtor with any other person, other than as permitted by section 504 of the Bankruptcy Code.  No promises have been received by SSG as to compensation in connection with this Chapter 11 Case, other than as outlined in the Engagement Agreement.

### RECORD KEEPING AND APPLICATIONS FOR COMPENSATION

25.      It is not the general practice of investment banking firms, including SSG, to keep detailed time records similar to those customarily kept by attorneys and required by Local Rule 2016-2(d).  Because SSG does not ordinarily maintain contemporaneous time records in tenth-hour (.10) increments or provide or conform to a schedule of hourly rates for its professionals, pursuant to Local Rule 2016-2(h), SSG should be excused from compliance with such information requirements set forth in Local Rule 2016-2(d) and from compliance with any order establishing procedures for interim compensation and reimbursement of expenses of professionals pursuant to section 331 of the Bankruptcy Code (an "**Interim Compensation Order**") with respect to SSG's professional fees only.  SSG should be required to maintain time

records in half-hour (0.50) increments, not decimal hours, setting forth, in a summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtor.

26.    SSG will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services.  SSG's final application for compensation and expenses will be paid by the Debtor pursuant to the terms of the Engagement Agreement, in accordance with any procedures established by the Court, pursuant to an Interim Compensation Order or otherwise.

## INDEMNIFICATION PROVISIONS

27.    The Engagement Agreement provides that the Debtor will indemnify and hold harmless SSG, its affiliates, the respective partners, members, directors, officers, agents, and employees of SSG and its affiliates (collectively, the "**Indemnified Parties**") under certain circumstances (such indemnification obligations, as modified by the proposed retention order, the "**Indemnification Provisions**"), which provisions are attached to and made a part of the Engagement Agreement.

28.    The Debtor and SSG believe that the Indemnification Provisions are customary and reasonable for investment banking engagements, both out of court and in chapter 11 cases and, as modified by the Proposed Order, reflect the qualifications and limitations on indemnification provisions that are customary. *See United Artists Theatre Co. v. Walton (In re United Artists Theatre Co.)*, 315 F.3d 217, 234 (3d Cir. 2003) (finding that indemnification agreement between debtor and financial advisor was reasonable under section 328 of the BankruptcyCode).

29.     The terms and conditions of the Engagement Agreement, including the Indemnification Provisions, were negotiated by the Debtor and SSG at arm's-length and in good faith.   The Debtor respectfully submits that the Indemnification Provisions contained in the Engagement Agreement, viewed in conjunction with the other terms of SSG's proposed retention, are reasonable and in the best interests of the Debtor, its estate and creditors in light of the fact that the Debtor requires SSG's services for a successful result in this Chapter 11 Case. Accordingly, as part of this Application, the Debtor requests that the Court approve the Indemnification Provisions.

## **SSG'S DISINTERESTEDNESS**

30.     To the best of the Debtor's knowledge and based upon the Victor Declaration: (i) SSG is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code and does not hold or represent an interest adverse to the Debtor's estate; and (ii) SSG has no connection to the Debtor, its creditors or related parties, except as may be disclosed in the Victor Declaration.

31.     SSG and the SSG professionals working on this matter are also not relatives of and do not have connections with the U.S. Trustee or of any known employee in the office thereof, or the United States Bankruptcy Judge for the District of Delaware assigned to this Chapter 11 Case.

32.     SSG has not provided, and will not provide, any professional services to any of the creditors, other parties-in-interest, or their respective attorneys and accountants with regard to any matter related to this Chapter 11 Case.

33.    SSG was paid the Initial Fee, and the first Monthly Fee in April, 2021, and, as of the Petition Date, the Debtor did not owe SSG for any fees or expenses incurred prior to the Petition Date.

**BASIS FOR RELIEF**

34.    Section 327(a) of the Bankruptcy Code provides that a debtor, subject to court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor's] duties under [the Bankruptcy Code].

11 U.S.C. § 327(a).

35.    Section 328(a) of the Bankruptcy Code provides, in relevant part, that:

> The [debtor] . . . with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . of this title . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. Notwithstanding such terms and conditions, the court may allow compensation different from the compensation provide under such terms and conditions after the conclusion of such employment, if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions.

11 U.S.C. § 328(a).

36.    In addition, Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

37.     The resources, capabilities, and experience of SSG in advising the Debtor is crucial to the Debtor during this Chapter 11 Case.  SSG and its professionals have extensive experience and an excellent reputation for providing high quality advisory services to debtors and creditors in large and complex chapter 11 cases and other debt restructurings.  SSG possesses and will continue to develop its knowledge of the Debtor's financial history and business operations and is well suited to provide the Debtor with the investment banking services contemplated by the Engagement Letter.

38.     Furthermore, in the event the Application is not granted, the Debtor and its estate would be significantly harmed.  The Debtor would be forced to locate a new investment banker lacking the same understanding of the Debtor's business and restructuring initiatives.  Also, engaging a new investment banker would require the Debtor to expend additional time and divert their resources at a critical stage of this Chapter 11 Case.  For these reasons, the Debtor believes that the retention of SSG is in the best interest of its estate and that the Application should be granted.

39.     As stated in the Victor Declaration, SSG is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtor's estate and has no connection to the Debtor, its creditors or related parties except as may be disclosed in the Victor Declaration.  The Debtor also believes that the Fee and Expense Structure is reasonable and should be approved by the Court under section 328(a) of the Bankruptcy Code in light of: (a) the nature of services to be provided by SSG; (b) SSG's substantial experience with respect to financial advisory services; (c) fee and expenses provisions typically utilized by SSG and other

leading financial advisory firms, which do not bill their time on an hourly basis and generally are compensated on a transactional basis; and (d) the complexity and scope of work anticipated to be performed by SSG in connection with this Chapter 11 Case.

40.     Moreover, as noted above, the Indemnification Provisions are standard terms, both in chapter 11 cases and outside chapter 11, and reflect the qualifications and limits on such terms that are customary for SSG and other similar investment bankers as approved in this and other jurisdictions. *See United Artists Theatre Co. v. Walton (In re United Artists Theatre Co.)*, 315 F.3d 217, 234 (3d Cir. 2003) (finding that indemnification agreement between debtor and financial advisor was reasonable under section 328 of the Bankruptcy Code).  Indeed, courts in this jurisdiction and others have granted similar relief. *See, e.g., In re A123 Systems, Inc.*, No. 12-12859 (KJC); *In re CHL, Ltd.*, No. 12-12437 (KJC); *In re Int'l Media Group, Inc.*, No. 12-10140 (MFW).

41.     For the foregoing reasons, the Debtor submits that the retention of SSG as investment banker is warranted and satisfies the requirements of sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a).

## REQUEST FOR APPROVAL OF RETENTION OF SSG
## EFFECTIVE AS OF THE PETITION DATE

42.     The Debtor requests that SSG's retention be made effective as of the Petition Date in order to allow SSG to be compensated for the work it performed for the Debtor following the Retention Date and prior to the Court's consideration and approval of this Application.  Such relief is warranted by the circumstances presented by this Chapter 11 Case. The Debtor submits that under the circumstances, and to avoid irreparable harm to the Debtor's estate that may occur if SSG is not immediately retained, retroactive approval to the Retention Date is warranted.  *See, e.g., Matter of Arkansas Co.*, 798 F.2d 645, 650 (3d Cir. 1986); *F/S Airlease II, Inc. v. Simon (In*

*re F/S Airlease II, Inc.)*, 844 F.2d 99, 103 (3d Cir. 1988), cert. denied, 488 U.S. 852 (1988); *Indian River Homes, Inc. v. Sussex Trust Co.*, 108 B.R. 46, 51 (D. Del. 1989) (approval of debtor's employment of attorney and real estate agent as of a prior date was not an abuse of discretion).

## NO PRIOR REQUEST

43.     No prior request for the relief sought in this Application has been made to this or any other Court.

44.     The Debtor submits that this Application does not present novel issues of law requiring the citation to any authority, other than the statutes and rules cited above and, accordingly, submits that no brief is necessary.

**WHEREFORE**, the Debtor respectfully requests the entry of an order, substantially in the form attached hereto as **Exhibit B**, (i) authorizing the Debtor to retain and employ SSG as investment banker to the Debtor, effective as of the Petition Date, on the terms set forth in the Engagement Letter; (ii) waiving compliance with certain requirements of Local Rule 2016-2; and (iii) granting such other and further relief as this Court deems just and proper.

Dated:  April 27, 2021

**CONNECTIONS COMMUNITY SUPPORT PROGRAMS, INC.**


By:    /s/ Robert D. Katz
       Robert D. Katz
       Chief Restructuring Officer