# **<u>EXHIBIT A</u>**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| CONNECTIONS COMMUNITY SUPPORT PROGRAMS, INC., | Case No. 21-10723 (MFW) |
| Debtor.[1] | |

**DECLARATION OF J. SCOTT VICTOR IN SUPPORT OF DEBTOR'S APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING (I) THE EMPLOYMENT AND RETENTION OF SSG ADVISORS, LLC, AS INVESTMENT BANKER TO THE DEBTOR EFFECTIVE AS OF APRIL 19, 2021, AND (II) A WAIVER OF COMPLIANCE WITH CERTAIN REQUIREMENTS OF LOCAL RULE 2016-2**

I, J. Scott Victor, being duly sworn according to law, depose and state that:

1.      I am the Managing Director of SSG Advisors, LLC ("**SSG**"), an investment banking firm that maintains offices at 300 Barr Harbor Drive, Suite 420, West Conshohocken, PA 19428, and I am duly authorized to make this declaration (the "**Declaration**") on behalf of SSG. I have over thirty-five (35) years of experience in the restructuring industry and extensive experience: (i) marketing companies or their assets for sale, including experience marketing companies in distress and debtors in bankruptcy cases; (ii) raising capital for special situation transactions; and (iii) restructuring companies' balance sheets both in court and out of court.

2.      I submit this Declaration on behalf of SSG in support of the application of the above-captioned debtor and debtor-in-possession (the "**Debtor**") for entry of an order authorizing the employment and retention of SSG as investment banker for the Debtor effective as of April 19,

---

[1]   The Debtor in this chapter 11 case, along with the last four digits of its tax identification number, is as follows: Connections Community Support Programs, Inc. (3030).  The address of the Debtor's corporate headquarters is 3812 Lancaster Pike, Wilmington, Delaware 19805.

2021 (the "**Application**").[2]  This Declaration is also submitted as the statement required pursuant to sections 327, 328(a), and 504 of the Bankruptcy Code and Bankruptcy Rule 2014(a).

3.      Unless otherwise indicated herein, the facts set forth in this Declaration are personally known to me and, if called as a witness, I could and would testify thereto.

## SSG'S QUALIFICATIONS

4.      SSG is an internationally recognized investment banking firm with offices in New York and Philadelphia.  Since its founding, SSG has completed over 350 investment banking assignments in North America and Europe.

5.      SSG's professionals have expertise in mergers and acquisitions, private placements, financial restructurings, valuations, and financial advisory services.  Moreover, SSG has substantial expertise in advising troubled companies in numerous situations, including in connection with asset sales and related issues, and SSG is particularly well suited to serve as the Debtor's investment banker in this Chapter 11 Case.

6.      SSG's professionals have developed extensive experience in matters involving complex financial restructuring.  Specifically, SSG has served as an investment banker for debtors and other parties in a large number of bankruptcy cases in the Third Circuit, including *inter alia*: *In re PBS Brand Co., LLC 20-13157 (JTD); In re PQ New York, Inc., et al*., Case No. 20-11266 (JTD); *In re Sustainable Restaurant Holdings, Inc. et al*. Case No. 20-11087 (JTD); *In re Cedar Haven Acquisition, LLC, Case No. 19-11736 (CSS); In re Vascular Access Centers, LP, Case No. 19-17117 (AMC); In re THG Holdings LLC*, Case No. 19-11689 (JTD); *In re Center City Healthcare, LLC d/b/a Hahnemann University Hospital, et al.*, Case No. 19-11466 (KG); *In re St. Christopher's Hospital*, Case No. 19-11468 (KG); *In re 1515-GEEnergy Holding Co. LLC, et al*,

---

[2]  Each capitalized term used but not otherwise defined herein shall have the meaning ascribed thereto in the Application.

Case No. 19-10303 (LSS); *In re Argos Therapeutics*, Case No. 18-12714 (KJC); *In re NSC Wholesale Holdings, LLC, et al.*, Case No. 18-12394 (CSS); *In re Samuel Jewelers, Inc.*, Case No. 18-11818 (KJC); *In re ABT Molecular Imaging, Inc.*, Case No. 18-11398 (CSS); *In re Nighthawk Royalties LLC, et al.* Case No. 18-10989 (BLS); *In re Vitamin World, Inc.*, Case No. 17-11933 (KJC); *In re Peekay Acquisition, LLC*, Case No. 17-11722 (BLS); *In re Saladworks, LLC*, Case No. 15-10327 (LSS); *In re KIOR, Inc.*, Case No. 14-12514 (CSS); In re Seegrid Corporation, Case No. 14-12391 (BLS); *In re PMGI Holdings, Inc.*, 13-12404 (CSS); *In re MSD Performance, Inc.*, Case No. 13-12286 (PJW); *In re Cylex Inc.*, Case No. 12-13259 (BLS); *In re TCIM*, Case No. 12-11711 (KG); *In re BroadSign International, Inc.*, Case No. 12-10789 (BLS); *In re Hussey Copper Corp.*, Case No. 11-13010 (BLS); *In re Pure Beauty*, 11-13159 (MFW); *In re Blitz U.S.A., Inc.*, Case No. 11-13603 (PJW); *In re American Laser Centers*, Case No. 11-13853 (MFW), and many more.  As a result, SSG is well qualified to perform these services and represent the Debtor's interests in this Chapter 11 Case.

7.    SSG was engaged by the Debtor to provide investment banking services in accordance with the engagement letter dated as of February 24,2021 (the "**Engagement Letter**"), a copy of which is attached hereto as <u>Schedule 1</u>.  As a result of SSG's engagement prior to the Petition Date, and extensive efforts during such time to market the Debtor's operations, and numerous meetings and conversations with the Debtor and its senior management and other professionals, and review of critical documents, SSG has become intimately familiar with the Debtor's corporate and capital structure, management, operations, and various other aspects of its business.  SSG's existing and extensive knowledge of the Debtor and its assets and operations places it in the best position to provide the Debtor with the investment banking services that are contemplated by the Engagement Letter and that SSG has been undertaking for over a month prior

to the Petition Date.

## SERVICES TO BE RENDERED

8.      SSG has agreed to provide investment banking services to the Debtor in this Chapter 11 Case in accordance with the terms of the Engagement Letter.  The individuals to provide the services as contemplated by the Application have considerable experience in restructuring matters, and have extensive knowledge already of the Debtor,  and are well qualified to perform the work required in this Chapter 11 Case.

9.      Subject to Court approval of the Application, and consistent with the terms of the Engagement Letter,[3] SSG has provided already or otherwise will provide such investment banking services as SSG and the Debtor deem appropriate, including, but not limited to, the following:

- Prepare an information memorandum describing the Debtor, its historical performance and services, including existing beds, payors, contracts, marketing and sales, labor force, management, and financial projections;

- Assist the Debtor in compiling a data room of any necessary and appropriate documents related to the Sale;

- Assist the Debtor in developing a list of suitable potential buyers who will be contacted after approval by the Debtor and update and review such list with the Debtor on an on-going basis;

- Coordinate the execution of confidentiality agreements for potential buyers wishing to review the information memorandum;

- Assist the Debtor in coordinating site visits for interested buyers and work with the management team to develop appropriate presentations for such visits;

- Solicit competitive offers from potential buyers;

- Advise and assist the Debtor in structuring the Sale and negotiating the transaction agreements; and

---

[3]    The summary set forth herein is qualified in its entirety by the terms of the Engagement Letter, and the terms of the Engagement Letter shall control in the event of a conflict.  Capitalized terms not otherwise defined in this section shall have the meaning ascribed to them in the Engagement Letter.

- Otherwise assist the Debtor and its other professionals, as necessary, through closing on a best efforts basis.

10.     The Debtor requires qualified professionals to render these essential professional services.  As noted above, SSG has substantial expertise in all areas for which it is proposed to be retained.

11.     The services that SSG will provide to the Debtor are necessary to enable the Debtor to identify the highest and best possible bid for its assets in this case of a sale, or otherwise effectuate a transaction that is in the best interests of its estate, creditors, and parties-in-interest. All of the services that SSG will provide to the Debtor will be undertaken at the request of the Debtor and will be appropriately directed by the Debtor so as to avoid duplicative efforts among the professionals retained in this Chapter 11 Case.  SSG will also use reasonable efforts to coordinate with the Debtor's other retained professionals to avoid the unnecessary duplication of services.

## PROFESSIONAL COMPENSATION

12.     Subject to this Court's approval and as set forth in the Engagement Letter, the Debtor and SSG have agreed to the following compensation and expense structure (the "**Fee and Expense Structure**") in consideration for the services to be rendered by SSG in this Chapter 11 Case:

1.     Initial Fee. An initial fee (the "**Initial Fee**") of $40,000, which initial fee was due and was paid upon signing the Engagement Letter.

2.     Monthly Fees.  Monthly fees (the "**Monthly Fees**") of $40,000 per month payable beginning April 1, 2021, and continuing each month thereafter on the first (1st) of the month during the Engagement Term, as defined in the Engagement Letter.

3.     Financing Fee. Upon the closing of a Financing Transaction to any party, SSG shall be entitled to a fee ("Financing Fee") payable in cash, in federal funds via wire transfer or certified check, at and as a condition of closing

of such Financing equal to 2.0% of any Senior Debt (as such term is hereafter defined) raised from any financing source, including senior revolver and term loan, plus 4.0% of any Tranche B, Traditional Subordinated Debt or Equity (as such term is hereafter defined) raised regardless of whether the Company chose to draw down the full amount of the Financing. Notwithstanding the foregoing, SSG shall not be entitled to any Financing Fee related to capital, financing or guaranty from any existing lender or equity investor or government economic assistance program.

4.    Sale Fee. Upon the consummation of a Sale Transaction to any party and as a direct carveout from proceeds of any Sale, prior in right to any post- or pre-petition secured debt, SSG shall be entitled to a fee (the "Sale Fee"), payable in cash, in federal funds via wire transfer or certified check, at and as a condition of closing of such Sale, equal to the greater of (a) $450,000 or (b) three percent (3.0%) of Total Consideration (as such term is hereafter defined). In the event that the Company determines to terminate the Sale process and move to an orderly wind-down of its assets, then SSG's Sale Fee shall be $150,000.

5.    Restructuring Fee. Upon confirmation of a plan of reorganization effectuating a Restructuring, SSG shall be entitled to a fee (the "Restructuring Fee") payable in cash, in federal funds via wire transfer or certified check, at and as a condition of closing such Transaction equal to $450,000. For the sake of clarity, SSG shall not be entitled to both a Sale Fee and a Restructuring Fee.

13.    In addition to the foregoing Initial Fee, Financing Fee, Monthly Fee, Sale Fee, and Restructuring Fee, noted above, whether or not a Sale is consummated, additional financing is obtained, or a plan is confirmed, the Debtor agrees to reimburse SSG for all of SSG's reasonable out-of-pocket expenses incurred in connection with the subject matter of this Engagement Letter. SSG was paid the Initial Fee, and the first Monthly Fee in April, 2021, and, as of the Petition Date, the Debtor did not owe SSG for any fees or expenses incurred prior to the Petition Date.

14.    The structure set forth above is a typical fee structure for SSG for work of this nature. This structure is designed to compensate SSG fairly for the work of its professionals and to cover its fixed and routine overhead expenses.

15.    The parties have established the compensation provided for in the Engagement

Letter with the express understanding that the hours worked, results achieved and ultimate benefit of work performed to the Debtor's estate may be variable and have taken this into account in setting the compensation payable thereunder.

16.     In accordance with section 504 of the Bankruptcy Code, I hereby state that there is no agreement or understanding between SSG and any other entity for the sharing of compensation received or to be received for services in connection with this Chapter 11 Case.

## RECORD KEEPING AND APPLICATIONS FOR COMPENSATION

17.     It is not the general practice of investment banking firms, including SSG, to keep detailed time records similar to those customarily kept by attorneys and required by Local Rule 2016-2(d). Because SSG does not ordinarily maintain contemporaneous time records in tenth-hour (.10) increments or provide or conform to a schedule of hourly rates for its professionals, pursuant to Local Rule 2016-2(h), SSG should be excused from compliance with such information requirements set forth in Local Rule 2016-2(d) and from compliance with any order establishing procedures for interim compensation and reimbursement of expenses of professionals pursuant to section 331 of the Bankruptcy Code (an "**Interim Compensation Order**") with respect to SSG's professional fees only. SSG should be required to maintain time records in half-hour (0.50) increments, not decimal hours, setting forth, in a summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtor.

18.     SSG will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services. SSG's final application for compensation and expenses will be paid by the Debtor pursuant to the terms of the Engagement Letter, in accordance with any procedures established by the Court, pursuant to an Interim

Compensation Order or otherwise.

## **SSG'S DISINTERESTEDNESS**

19.     In preparing this Declaration, SSG performed a conflict search with respect to a list of creditors, equity holders and other interested parties, which is annexed hereto as **Schedule 2** (the "**Potential Interested Parties List**").  Based on that search, SSG represents that, to the best of its knowledge, that it knows of no fact that would present a conflict of interest for SSG with regard to its proposed engagement.  SSG, however, wishes to disclose those items identified on **Schedule 3** (the "**SSG Contacts List**").

20.     Insofar as I have been able to ascertain from my review of the SSG Contacts List, to the best of my knowledge, and other than as described herein, neither SSG, nor its affiliates, nor any professional of SSG: (a) has represented the Debtor's creditors, equity holders, or any other party in interest, or their respective attorneys and accountants, the United States Trustee, or any person employed in the office of the United States Trustee, in any matters relating to the Debtor or its estate; or (b) has any connection with the Debtor in this Chapter 11 Case, or any interest materially adverse to the interest of any class of creditors or equity holders by reason of any direct or indirect relationship to the Debtor, any other parties-in-interest herein, or its respective attorneys.

21.     SSG has numerous clients, past and present, which are located throughout the world, in a variety of industries. Such clients may include certain of the persons or entities that are identified as creditors of the Debtor.  It is also possible that some past or present clients of SSG may have some connection to, or are creditors of, the Debtor.  Nevertheless, insofar as I have been able to ascertain based on the results of the foregoing, to the best of my knowledge, other than as described herein and except for the Debtor, SSG has not advised any party in interest in connection

with this Chapter 11 Case.

22.     SSG is involved in numerous cases, proceedings, and transactions involving many different attorneys, accountants, investment bankers, and financial consultants, some of whom may represent claimants and parties in interest in this Chapter 11 Case.  Moreover, SSG has in the past, and may in the future, be represented by several attorneys and law firms, some of which may be involved in this Chapter 11 Case.  Finally, SSG has in the past, and will likely in the future, be working with or opposite other professionals involved in this Chapter 11 Case with respect to matters wholly unrelated to this Chapter 11 Case.  Based on our current knowledge of the professionals involved in this Chapter 11 Case and to the best of my knowledge, none of these business relationships constitute interests adverse to the estates in matters upon which SSG is to be employed and none are in connection with this Chapter 11 Case.

23.     The Debtor has numerous creditors and relationships with a large number of individuals and entities that may be parties-in-interest in this Chapter 11 Case.  Consequently, although every reasonable effort has been made to discover and eliminate the possibility of any conflict including the efforts outlined above, SSG is unable to state with certainty whether any of its clients or an affiliated entity of a client holds a claim or otherwise is a party-in-interest in this Chapter 11 Case.  If SSG discovers any information that is contrary or pertinent to the statements made herein, SSG will promptly disclose such information to the Court.  SSG does not advise, has not advised, and will not advise any entity other than the Debtor in matters related to this Chapter 11 Case.  SSG will, however, continue to provide professional services to entities or persons that may be creditors of the Debtor or parties-in-interest in this Chapter 11 Case, provided that such services do not relate to, or have any direct connection with, this Chapter 11 Case or the Debtor.

24.     Except as otherwise set forth herein and in the Application, to the best of my

knowledge, information, and belief, neither SSG nor any employee of SSG is a creditor, an equity holder, or an insider of the Debtor.  To the best of my knowledge, information and belief, neither SSG nor any employee of SSG is or was, within two (2) years before the Petition Date, a director, an officer, or an employee of the Debtor.  Also, to the best of my knowledge, information, and belief neither the undersigned nor the SSG's professionals expected to assist the Debtor in this Chapter 11 Case are related or connected to any United States Bankruptcy Judge for the District of Delaware, the U.S. Trustee, or any persons employed in the office of the U.S. Trustee.

25.     As of the date of SSG's engagement, SSG does not hold any claim against the Debtor.

26.     To the extent SSG discovers any facts bearing on the matters described herein during the period of SSG's retention, SSG will undertake to amend and supplement the information contained in this Declaration to disclose such facts.

27.     Based on all of the foregoing, SSG is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 27, 2021                    By:  _____
                                                  J. Scott Victor, Managing Director

**Schedule 1**



February 24, 2021


Steven Davis, Esq.
Chief Restructuring Officer
Connections Community Support Programs, Inc.
2821 Lancaster Pike
Wilmington, DE  19805

Dear Mr. Davis:

This agreement ("Engagement Agreement") will serve as the contract between Connections Community Support Programs, Inc. ("CCSP" or the "Company") and SSG Advisors, LLC ("SSG") regarding the retention of SSG as exclusive investment banker to CCSP for the purposes outlined in this Engagement Agreement. SSG's responsibilities hereunder involve providing investment banking services to the Company, on an exclusive basis, focusing on (i) the private placement of debt and/or equity capital (the "Financing"); and/or (ii) the sale of all or a part of the Company's assets (the "Sale"); and/or (iii) the restructuring of the Company's balance sheet with existing stakeholders (the "Restructuring").

A.     **SSG's Role:**

1.     SSG's role in connection with a Financing will include the following:

- Prepare an information memorandum describing the Company, its historical performance and prospects, including existing contracts, marketing and sales, labor force, management, and financial projections;

- Assist the Company in compiling a data room of any necessary and appropriate documents related to the Financing;

- Assist the Company in developing a list of suitable potential lenders and investors, including DIP lenders, who will be contacted on a discreet and confidential basis after written approval by the Company;

- Coordinate the execution of confidentiality agreements for potential lenders and investors wishing to review the information memorandum;

- Assist the Company in coordinating physical and/or virtual site visits for interested lenders and investors and work with the management team to develop appropriate presentations for such visits;

Steven Davis, Esq.
February 24, 2021
Page 2

- Solicit competitive offers from potential lenders and investors;

- Advise and assist the Company in structuring the Financing and negotiating the Financing agreements;

- Otherwise assist the Company and its other professionals, as necessary, through closing on a best efforts basis.

2.    Advisor's role in connection with a Sale will include the following:

- Prepare an information memorandum describing the Company, its historical performance and prospects, including existing contracts, marketing and sales, labor force, management, and financial projections;

- Assist the Company in compiling a data room of any necessary and appropriate documents related to the Sale;

- Assist the Company in developing a list of suitable potential buyers who will be contacted on a discreet and confidential basis after approval by the Company and update and review such list with the Company on an on-going basis;

- Coordinate the execution of confidentiality agreements for potential buyers wishing to review the information memorandum;

- Assist the Company in coordinating physical and/or virtual site visits for interested buyers and work with the management team to develop appropriate presentations for such visits;

- Solicit competitive offers from potential buyers;

- Advise and assist the Company and its professionals with the structuring of sale procedures, the conduct of any auction that may result therefrom, and/or a plan of reorganization in a potential chapter 11 proceeding;

- Advise and assist the Company in structuring the sale and negotiating the transaction agreements;

- Be available for meetings and court appearances in a potential chapter 11 proceeding, including providing testimony in furtherance and support of a Sale, Financing or Restructuring process and Transaction;

- Otherwise assist the Company and its other professionals, as necessary, through closing on a best efforts basis.

Steven Davis, Esq.
February 24, 2021
Page 3

In performing the services described above, the Company will furnish or cause to be furnished to SSG such information as SSG reasonably believes appropriate to the execution of its engagement hereunder (all such information so furnished being the "Information").  The Company represents to SSG that all Information furnished by it or its agents will be complete and correct in all material respects, to the best of its knowledge, and that until the expiration of SSG's engagement hereunder, the Company will advise SSG immediately of the occurrence of any event or any other change known by it or its agents that results in the Information ceasing to be complete and correct in all material respects.  The Company recognizes and confirms that SSG:  (a) will use and rely primarily on the Information and on information available from generally recognized public sources in performing the services contemplated hereby without having independently verified any of the same; (b) does not assume responsibility for accurateness or completeness of the Information and such other information; and (c) will not make an appraisal of any of the assets or liabilities of the Company.

The Company agrees that SSG shall be its exclusive investment banker in connection with any Transaction undertaken with respect to the Company during the Engagement Term, as defined below, of this Engagement Agreement.  The Company agrees that, during the Engagement Term, SSG shall have the authority to initiate and conduct discussions and assist and advise the Company in its negotiations with all prospective lenders, investors and buyers. In that regard, the Company agrees to identify to SSG:  (a) all prospective lenders, investors and buyers who have been in contact with the Company prior to the date hereof and (b) all prospective lenders, investors and buyers who come in contact with the Company during the Engagement Term.

SSG will consult with and advise the Company with respect to the financial aspects of any proposed Transaction, including price, terms and conditions of a Transaction.  SSG will not, however, have any authority to bind the Company with respect to any proposed Transaction.  Likewise, nothing contained herein shall require the Company to accept the terms of any proposal, and the Company shall at all times have the right, in its sole and absolute discretion, to reject any proposed Transaction regardless of the terms proposed.

B.    **SSG's Compensation**

As compensation for providing the foregoing services, SSG shall receive the following:

1.    Initial Fee.  An initial fee (the "Initial Fee") equal to $40,000 due upon signing this Engagement Agreement.

2.    Monthly Fees.  Monthly fees (the "Monthly Fees") of $40,000 per month payable beginning April 1, 2021 and on the first (1st) of each month thereafter throughout the Engagement Term (as such term is hereafter defined). Half of the Monthly Fees shall be credited toward the Transaction Fee(s).

Steven Davis, Esq.
February 24, 2021
Page 4

3. <u>Financing Fee</u>.  Upon the closing of a Financing Transaction to any party, SSG shall be entitled to a fee ("Financing Fee") payable in cash, in federal funds via wire transfer or certified check, at and as a condition of closing of such Financing equal to 2.0% of any Senior Debt (as such term is hereafter defined) raised from any financing source, including senior revolver and term loan, plus 4.0% of any Tranche B, Traditional Subordinated Debt or Equity (as such term is hereafter defined) raised regardless of whether the Company chose to draw down the full amount of the Financing.

Notwithstanding the foregoing, SSG shall <u>not</u> be entitled to any Financing Fee related to capital, financing or guaranty from any existing lender or equity investor or government economic assistance program.

4. <u>Sale Fee</u>.  Upon the consummation of a Sale Transaction to any party and as a direct carveout from proceeds of any Sale, prior in right to any post- or pre-petition secured debt, SSG shall be entitled to a fee (the "Sale Fee"), payable in cash, in federal funds via wire transfer or certified check, at and as a condition of closing of such Sale, equal to the greater of (a) $450,000 or (b) three percent (3.0%) of Total Consideration (as such term is hereafter defined).

In the event that the Company determines to terminate the Sale process and move to an orderly wind-down of its assets, then SSG's Sale Fee shall be $150,000.

5. <u>Restructuring Fee</u>.   Upon confirmation of a plan of reorganization effectuating a Restructuring, SSG shall be entitled to a fee (the "Restructuring Fee") payable in cash, in federal funds via wire transfer or certified check, at and as a condition of closing such Transaction equal to $450,000.  For the sake of clarity, SSG shall not be entitled to both a Sale Fee and a Restructuring Fee.

6. <u>Expenses</u>. In addition to the foregoing Initial Fee, Monthly Fee, and Transaction Fees noted above whether or not a Transaction is consummated, SSG will be entitled to reimbursement for all of SSG's reasonable out-of-pocket expenses incurred in connection with the subject matter of this Engagement Agreement.

C. **Definitions**

For the purpose of this Engagement Agreement:

**Financing Transaction** means funds received by the Company from any senior debt (including, but not limited to debtor-in-possession financing), secured subordinated debt, unsecured subordinated debt or non-control equity from any lender or investor, except as set forth in section B.(3) above, as well as the purchase by any party of the senior debt.

Steven Davis, Esq.
February 24, 2021
Page 5

**Senior Debt** means funds:  (a) received by the Company in the form of revolving credit facilities, notes, term loans, lines of credit, offering lines, purchase and sale of accounts receivable facilities, or any other type of credit facility, for which the Company is obligated to repay the funds on a fixed schedule with interest on the unpaid balance thereof at a fixed interest rate or a floating interest rate, without any profit participation or yield enhancement as a return on the repayment of the funds received by the Company; and (b) for which the lender has a claim to or lien on the assets of the Company, superior or prior to the claim of the holders of any Tranche B or Traditional Subordinated Debt.

**Tranche B Loan** means:  (a) funds (i) received by the Company or for which the Company is obligated to repay the funds on a fixed schedule with interest on the unpaid balance therefore at a fixed interest rate or a floating rate higher than that of Senior Debt, and (ii) for which the lender may have a claim to or lien on the assets of the Company, junior to the claim of the holders of Senior Debt.

**Traditional Subordinated Debt** means:  (a) funds (i) received by the Company or for which the Company is obligated to repay the funds on a fixed schedule with interest on the unpaid balance therefore at a fixed interest rate or a floating rate; and (ii) for which the lender does not have a claim to or lien on the assets of the Company, or (b) funds (i) received by the Company, or for which the Company is obligated to repay the funds on a fixed schedule with interest on the unpaid balance thereof at a fixed interest rate or a floating interest rate; and (ii) for which part of the overall return to the investor on these funds is anticipated to consist of a participation in the profits of the Company and/or some other type of income enhancement (whether realized through equity warrants conversions of the debt to equity, or otherwise) which has the effect of raising the overall return on these funds to the investors above the level that could be realized solely due to the receipt of stated interest income.

**Equity** shall include, but not be limited to, common stock, preferred stock, convertible stock, and the proceeds from any joint venture agreement, including contributions by a joint venture partner involving cash, stock, property, plant and equipment or any other assets, or asset sale that does not constitute control equity.

**Sale Transaction** means and includes any transaction involving the sale or transfer, directly or indirectly, of all or substantially all of the assets or equity of the Company including, without limitation, a wind-down of assets.

**Total Consideration** shall mean the purchase price paid for the equity, assets or secured debt, or any portion of either, plus the assumption or payoff of any indebtedness.

For purposes of computing any fees payable to SSG hereunder, non-cash consideration shall be valued as follows:  (a) publicly traded securities shall be valued at the average of their closing prices (as reported in <u>The Wall Street Journal</u>) for the five (5) trading days prior to the closing of the Sale Transaction; and (b) any other non-cash consideration, including the retention any non-

controlling equity stake in the Company, shall be valued at the fair market value thereof as determined in good faith by the Company and SSG.  For the avoidance of doubt, if such aggregate consideration may be increased by contingent payments such as an "earnout" or other monetary agreement in the transaction, the portion of SSG's fee relating thereto shall be calculated and paid when and as such contingent payments or other monetary amounts are received.

**Transaction** shall mean and include a Financing and/or Sale and/or Restructuring as determined above.

**Transaction Fee** shall mean and include a Financing Fee and/or Sale Fee and/or Restructuring Fee.

D.    <u>**Term of Engagement**</u>

This Engagement Agreement shall remain in force (the "Engagement Term") for a period of six (6) months from the date of signing this Engagement Agreement, but will terminate upon thirty (30) days written notice by either party to the other, and may continue thereafter on a month to month basis if agreed to by the parties upon written notice; provided, however, that the Engagement Agreement shall terminate immediately upon the closing of a Transaction.  Upon the termination of this Engagement Agreement, neither party shall have any further obligations to the other except that:  (a) termination of the Engagement Agreement shall not affect SSG's right to indemnification under the Indemnification paragraph below; (b) the Company shall remain obligated to pay SSG any unpaid Monthly Fees and to reimburse SSG for any expenses incurred through the date of the termination of the Engagement Agreement; and (c) if a Transaction is consummated within twelve (12) months ("Trailer Term") of the termination of this Engagement Agreement with a lender, purchaser and/or investor, with which SSG has contacted and initiated discussions or negotiations with respect to any Transaction, the Company shall remain obligated to pay a Transaction Fee  as calculated above. Sections B, D, E, F and G (entitled Compensation, Term of Engagement, Indemnification, Miscellaneous, and Scope of SSG's Duties, respectively) of this Engagement Agreement shall survive the expiration or termination of this Engagement Agreement indefinitely.

E.    <u>**Indemnification**</u>

The Company hereby acknowledges and agrees to the indemnification arrangements between the parties hereto as described on Attachment A hereto, which Attachment is incorporated herein and forms an integral part hereof.

F.    <u>**Miscellaneous**</u>

No fee payable to any other financial advisor or finder by the Company or the Company in connection with the subject matter of this Engagement Agreement shall reduce or otherwise affect any fee payable to SSG hereunder without the prior written consent of SSG. This Engagement Agreement sets forth the entire understanding of the parties relating to the subject matter hereof and supersedes

Steven Davis, Esq.
February 24, 2021
Page 7

and cancels any prior communications, understandings and agreements between the parties hereto. This Engagement Agreement cannot be modified or changed, nor can any of its provisions be waived, except by written agreement signed by both parties. The benefits of this Engagement Agreement shall inure to the respective successors and assigns of the parties hereto and of the Indemnified Parties and their respective successors, assigns and representatives, and the obligations and liabilities assumed in this Engagement Agreement by the parties hereto shall be binding upon their respective successors and assigns.

This Engagement Agreement shall be governed by and construed in accordance with the laws of the State of Maryland without regard to principles of conflicts or choice of law that would defer to the substantive laws of any other jurisdiction.

This Engagement Agreement may be executed in any number of counterparts, which counterparts, taken together, shall constitute one and the same Engagement Agreement.

G.   **Scope of Duties**

The Company hereby acknowledges and agrees that:  (a) it has retained SSG for the purposes set forth in the Engagement Agreement and that the rights and obligations of the parties hereto are contractual in nature, and (b) SSG has not made any warranties or guarantees of any nature with respect to the success or satisfactory conclusion of any Transaction or as to the economic, financial or other results which may be obtained or experienced by the Company as a result thereof.

H.   **Bankruptcy Court Proceedings**

In the event the Company files a Chapter 11 Bankruptcy proceeding during the Engagement Term, the Company shall use its best commercially reasonable efforts to have SSG employed upon the same or substantially similar terms and shall have this Engagement Agreement and SSG's retention as the Company's exclusive investment banker approved by a Court of competent jurisdiction.

I.   **Other Matters**

SSG has the right, following the Transaction closing, to place advertisements in financial and other newspapers and journals and to send email advertising at its own expense describing its services to the Company hereunder, provided, that the Company has given its prior written consent thereto which consent shall not be unreasonably withheld.

In accordance with the requirements of the USA Patriot Act (Title III of Pub. L. 107-56 (signed into law October 26, 2001), SSG is required to obtain, verify and record information that identifies its clients, which information may include the name and address of the Company, the Company and its senior management team as well as other information that will allow SSG to properly identify its clients.   Additionally, SSG maintains important disclosures on its web site

Steven Davis, Esq.
February 24, 2021
Page 8

www.ssgca.com. These disclosures may be updated periodically on an as-needed basis. The Company agrees to accept and receive all of these disclosures by electronically accessing the website referenced above and acknowledges that printed hard copies of these disclosures are available upon request by contacting SSG directly at (610) 940-1094.

J.      **Securities Platform**

All transactions involving the sale or purchase of any security (as defined by the Securities Exchange Act of 1934 or the rules and regulations promulgated there under) are offered through SSG Capital Advisors, LLC. ("SCA") which is an affiliated registered Broker-Dealer in good standing with the Financial Industry Regulatory Authority ("FINRA") and the Securities Investor Protection Corporation ("SIPC"). Principals of SSG are registered representatives of SCA. Therefore, SCA is included collectively as "SSG" with all the rights and obligations thereto under the terms of this Engagement Agreement.

To the extent a Transaction Fee is payable to SSG in connection with Transaction constituting the purchase or sale of any security (as defined by the Securities Exchange Act of 1934 or the rules and regulations promulgated there under), such Transaction Fee shall be specifically paid to SCA.

This letter and acceptance may be executed in counterpart, each part of which shall be deemed an original, both of which together shall constitute one and the same instrument, and any amendment, modification or other changes to this Engagement Agreement must be in writing and signed by both parties to be enforceable.

Please indicate your acceptance of the foregoing by executing and returning the enclosed copy of this letter.

**SSG ADVISORS, LLC**

By:  _____

J. Scott Victor
Managing Director

ACCEPTED:

**CONNECTIONS COMMUNITY SUPPORT PROGRAMS, INC.**

By: /s/ *Steven T. Davis*

Steven Davis, Esq.                    Date: 2/25/2021

Chief Restructuring Officer

Steven Davis, Esq.
February 24, 2021
Page 9

**ATTACHMENT A**
**INDEMNIFICATION PROVISIONS**

The Company agrees to indemnify, defend and hold harmless SSG or SCA, and their affiliates, the respective partners, members, directors, officers, agents and employees of SSG, SCA, and their affiliates and each other person, if any, controlling SSG, SCA, and their affiliates (the foregoing being referred to herein individually as an "Indemnified Party" and collectively as the "Indemnified Parties") from and against any and all losses, claims, damages, liabilities or costs, as and when incurred, to which such Indemnified Party may become subject to or which are asserted against any Indemnified Party, directly or indirectly, in any way related to SSG performing services for or on behalf of the Company under the Engagement Agreement of which this Attachment A forms a part, including, without limitation, in connection with: (a) any act or omission by SSG related to its engagement as financial advisor under the Engagement Agreement; or (b) SSG's acceptance, or its performance or non-performance, of its obligations under said Engagement Agreement. However, that the Company shall not be liable under the foregoing indemnity agreement in respect of any liability to the extent that such liability is found in a judgment, settlement or plea agreement by a court, agency, arbitrator or other adjudicating authority of competent jurisdiction, to have resulted from the Indemnified Parties' gross negligence or willful misconduct in the performance of its duties under said Engagement Agreement. The Company agrees that reliance by SSG on any publicly-available information, which SSG verifies with the Company in writing, the information supplied by the Company to SSG in connection with said Engagement Agreement, or any directions furnished by the Company, on which SSG wholly relies, shall not constitute negligence, bad faith or willful misconduct by SSG.

The provisions of this Attachment A shall survive any termination of said Engagement Agreement.

# SCHEDULE 2

## MASTER LIST OF POTENTIAL PARTIES-IN-INTEREST

**DEBTOR:**

CONNECTIONS COMMUNITY SUPPORT
PROGRAMS, INC.

**NON-DEBTOR AFFILIATES**:

ADDICTIONS COALITION OF DELAWARE, INC.
AFFORDABLE HOUSING OPPORTUNITIES, INC.
CHURCH HOME FOUNDATION
CLAYMONT STREET APARTMENTS, L.P.
CONNECTIONS DELAWARE CORPORATION
HOMEWARD BOUND, INC.
HOUSING FIRST, INC.
HOUSING FIRST II, INC.
INGLESIDE HOMES
MARCELLA'S HOUSE LIMITED PARTNERSHIP
QUAKER ARTS, LLC

**BOARD MEMBERS:**

WILLIAM NORTHEY
MICHAEL HALDEMAN
STEVEN DAVIS
CATHERINE DEVANEY MCKAY

**LANDLORDS:**

42 COMMERCE PLACE LLC
603 WASH AVE (CAMPBELL)
A & T REALTY, LLC
ABESSINIO PROP MGT
ACRE INVESTORS LLC (PABIAN)
ADAMS ST APTS (51 SUMMIT)
AION MGNT (AP EAST POINTE)
AION PRIDES CT LLC/KETTLER
AION UNIVERSITY (LIBERTY)
AJ LAWSON LLC
ALDER & PINE HOLDINGS LLC
ALLIANCE REALTY
ALTMAN MANAGEMENT CO
ALTMAN MGT (EMPIRE)
ALTMAN MGT COMPANY, INC
ANETTE DARBY/FISHER
APPLEBALE LLC
ASPIRE ASSOCIATES, INC.
BARBARA J. WRIGHT
BBC REAL ESTATE (REMAX)
BBEE, LLC
BCS BUILDINGS LLC
BENNIE/SHIRLEY SMITH RE
BLUE HEN PROP (ZACCONE)
BRADFORD ST INVESTMENTS

BRANDYWINE HILLS APTS LLC
BREEN R. COLLINS
BRIGHTWAY (EAST COAST)
BYLER (TRI-COUNTY PROP)
BYLER INVESTMENTS (JACOB)
CAPANO MGT CO.
CAPANO MGT COMPANY
CARROLL PROPERTIES LLC
CD PROPERTIES (REHOBOTH)
CDW MGMT (SKY MGMT)
CHARLES BRADLEY (REMAX)
CHATEAU ORLEANS
CHERYL AUGUST/WICKET
CHESTNUT RUN VILLAGE APTS
CHRISTOPHER SMITH/BWS REALTY
CITY WIDE HOUSING LLC
CITY WIDE HOUSING LLC
CLASSIC PROPERTY (PERINI)
CLEARFIELD APTS LP
COMMON CENTS PROP MGT
CONNECTIONS CSP INC
CONNIE MILLER
CSA, LLC
CYNTELLEX PROPERTIES
D & S INVESTMENT CO LLP
DAISEY TRUST
DANIEL A. MILLER
DANIEL A. MILLER (DAM)
DAVID PERSOLEO
DAVID W. SMYTH
DELAWARE HOME INVESTORS
DELAWARE PROPERTY MGT CO
DELTA ETA CORP (SCHWEIZER)
DENISE PENT (BYLER INVSTMT)
DEWEY STREET LLC
DIANE L. YOUNG
DIVINE CONNECTIONS PROP
DKR LLC
DKR LLC (DAISEY TRUST)
DONALD FOLEY
DONALD FOLEY (SEA SANDS)
DONALD FOLEY/JOHN CUSHING
DOUGLAS J SALTER
DOVE ROAD, LLC
DOVER INVESTORS, L.P.
DRUMMOND PLAZA ASSOC LLC
EAST COAST PRIDES COURT
ELMS HOLDING COMPANY LLC
ELTON GEORGE, JR.
EMPIRE DELAWARE LLC
ERA HARRINGTON (JAMIE)
ERAMACK PROPERTIES LLC
FEDALE PROPERTIES (BENNETT?)
FERRETTI TRUST #4 LLC

# SCHEDULE 2

## MASTER LIST OF POTENTIAL PARTIES-IN-INTEREST

FIRST CLASS PROPERTY MGT
FOX RUN ASSOCIATES LLC
FRANCESCO A. VATTILANA
FRE INVESTMENTS LLC
GALMAN GROUP
GALMAN GROUP/EDGE
GEMS PROP (HERMAN)
GEORGE W. MOORE
GEORGIA IRWIN-DE HOMES
GIA DOWNTOWN PROPERTIES
GLEN P. TRUDEL
HAN REAL ESTATE
HARRIET SACHS
HARVIS LLC
HAYIM/SUSAN ANCEL
HERR RENTALS (CHAD)
IRVIN LEVIN
IRVIN LEVIN/PENCADER
J.S. HOLDINGS L.L.C.
J.W. SCOTT RENTALS
JACK LINGO/YOUNT
JACOB BYLER (TRI-COUNTY)
JAMES A. BYRD (BYRDS NEST)
JAMES A. MUNSON SR
JAMES SAUERS (RITTER)
JEANNETTE JACK
JOANN DOWD
JOHN EVANCHO (EVA SMT)
JOHN/KAREN MARBLE
JOSE LOPEZ
JOSEPH S AND KAREN F COEN
JOSHUA LAFFERTY
JOSHUA LIDBERG
JR PROPERTIES OF DE
JUAN CASAS
JYCC LLC/JACK CHIU
KATHERINE INGRAHAM
KATHRYN S. MOORE (WILGUS)
KELLER WILLIAMS/LCD
KENNETH STANFORD
KEVIN EVANCHO
KURSH/LONG & FOSTER
LANCASTER COURT APTS LLC
LANDMARK RENTAL INC
LAS CASA APTS (COLONY BLVD)
LEA BOULEVARD APTS 2007 LLC
LESTER REALTY (SEED 2)
LIBERTY SQUARE APTS
LIGHTHOUSE HILL (WOODS EDGE)
LINDA DOLAN
LLOYD/MIRANDA BEAUDETTE
LOFTS @ CLIFFORD BROWN
MADIGAN PROPERTY MGT
MANG WONG/LING CHEUMG

MARBLE MANAGEMENT
MARCUS LEWIS
MCGINNIS COMML REAL EST
MCLEEN PROPERTIES, LLC
METROPOLITAN MGT GROUP
MEYER & MEYER REALTY
MEYER & MEYER REALTY
MICHAEL BRUNO
MICHAEL JOYCE
MID-ATLANTIC REALTY CO INC
MISHOE COVE, LLC
MOORE PROPERTIES, LLC
MORGAN PROPERTIES
MORGAN WESTOVER APTS LLC
MORNINGSTAR (K SUMMERS)
MORNINGSTAR PROPERTY GRP
MSP MANAGEMENT SERVICES
NAAMANSCAP, LLC
OLD TOWN HALL ASSOC LLC
OSASOGIE AKPOROTU
PABIAN PROP (PROPER-T LLC)
PABIAN PROPERTIES LLC
PABIAN VENTURES (HAYIM)
PABIAN VENTURES LLC
PARKLYNN SUCCESS, LLC
PARTNERS REAL ESTATE
PATRICK EVANCHO
PATRICK J TELL REAL ESTATE
PATTERSON-SCHWARTZ
PAUL M. PANTANO
PE HOLDING II, LLC
PENCADER REALTY
PENCADER REALTY (RENTWELL)
PENNSYLVANIA AVE PROPERTIES
PETTINARO RESIDENTIAL
PINE VALLEY APARTMENTS
PRE HOLDING CONCORD, LLC
PREM, INC
PREM, INC (YFIRE)
PREMIER VILLAGE APTS
PROPERTY EXCHANGE LLC
PURPLE LOQUAX LLC
RACHEL LEE VINSON
RAJ ENTERPRISES, LLC
RAJ ENTERPRISES, LLC (C&C)
RANDY WOTHERS
RE/MAX HORIZONS
REALSPRING LLC
REGINA CAMBELL
RENTWELL
REYNOLDS ASSET/MILL CREEK
RICHARD J. PARSONS
RICHARD L. HINDT
RICHARD TRINCIA

# SCHEDULE 2

## MASTER LIST OF POTENTIAL PARTIES-IN-INTEREST

ROBERT BOVELL (L.C.B.C.)
ROBERT C. WOLHAR
ROMEY LEWIS
SCHATZ-MESSICK ENTERPRISE
SEAFORD APARTMENTS
SEAN STEWARD
SHAWN L HARRISON ENT
SHEILA PERINI
SHORT SALE, LLC
SHREENATHGEE LLC
SNEAD PROPERTY MGT
STAR PROPERTY (AW PROPERTY)
STAR PROPERTY (NAPS HOMES)
STEPHANIE TARKENTON
STEVE EASTBURN
STONY HOMES LLC
SUPARNA MEHRA
TARA PARKHURST
TED KRIKITOS
TEJAS SHETH
TELLISTA ENTERPRISES LLC
THE FLORES RENTALS (TOM)
THE PARKER GROUP
THE VILLAS ASSOCIATES LP
THOMAS W RILEY (ELM)
TM ASSOCIATES MGT
TRICOUNTY PROPERTY MGT
TROLLEY SQUARE (TWO STONES)
TROSS ASSOCIATES
VILLAGE OF CANTERBURY APTS
VININGS AT CHRISTIANA
WAYNE HYLTON
WELCOME HOME REALTY
WEST NINTH STREET LLC
WEST REHOBOTH CLT/SOLUTIONS
WILGUS ASSOCIATES INC
WILLIAM CHILSON
WILLIAM PENN APT ASSOC LLC
WILLIAM/ROSE MARIE WRIGHT
WILLOW CHASE
WOODING RE (WEATHERVANE)
WOODING REAL ESTATE GROUP
WOODING REAL ESTATE GROUP
WRIGHT LOCATIONS, INC.
YOUNG REALTY GROUP LLC

**UTILITIES:**

AP EAST POINTE LLC
ARTESIAN WATER COMPANY
ATLANTIC BROADBAND
BOB CAT SEPTIC SERVICES
BURNS & MCBRIDE, INC.
CAMDEN -WYOING SEWER &

CAMDEN-WYOMING SEWER
CHESAPEAKE UTILITIE
CITY OF DOVER
CITY OF HARRINGTON
CITY OF MILFORD
CITY OF NEWARK
CITY OF SEAFORD
CITY OF WILMINGTON-REVEN
COMCAST
DELAWARE ELECTRIC COOPE
DELMARVA POWER
DIRECTV, LLC
GALMAN GROUP UTIL
GALMAN UTILITY CHARGE
GREAT AMERICA HARRINGTON
GREAT AMERICA PHONES MULTIPLE
GREAT AMERICAN 1085 - NAAMANS
J.H WILKERSON & SON,
LINDA DOLAN
MAYCO MAYOR & COUNCIL OF MIDDL
MEDIACOM-DELAWARE
METTEL
MONITOR DATA CORPORATI
MUNICIPAL SERVICES COMMIS
NETCARRIER TELECOM
NEW CASTLE COUNTY-SEWER
OLD TOWN HALL ASSOCIAT
PRE HOLDING CONCORD, L
PRICE PLUMBING INC
SCHAGRIN GAS COMPANY
SHARP ENERGY
SHARP WATER
SUBURBAN PROPANE
SUEZ WATER DELAWARE
SUSSEX COUNTY
TOWN OF LAUREL
TOWN OF MILLSBORO
TOWN OF SMYRNA
VERIZON
VERIZON WIRELESS
VILLAGE OF WESTOVER
WEAVERS SANITATION

**INSURERS:**

ACE AMERICAN INS. CO.
ALLIED EASTERN IDEMNITY COMPANY
AURTHUR HALL INSURANCE
CINCINNATI SPECIALTY UNDERWRITERS
INSURANCE COMPANY
COVERYS
FEDERAL INSURANCE CO. (CHUBB)
HANOVER INSURANCE COMPANY
HARTFORD STEAM & BOILER

# SCHEDULE 2

## MASTER LIST OF POTENTIAL PARTIES-IN-INTEREST

LLOYDS OF LONDON
NAUTILUS INSURANCE COMPANY
PHILADELPHIA INDEMNITY INSURANCE
COMPANY
PHILADELPHIA INS. CO.
SELECTIVE INSURANCE COMPANY OF THE
SOUTHEAST
TOKIO MARINE SPECIALTY INSURANCE
COMPANY
UPMC WORK ALLIANCE

**TAXING AGENCIES:**

CITY OF DOVER
CITY OF HARRINGTON
CITY OF MILFORD
CITY OF SEAFORD
CITY OF WILMINGTON
HANCOCK PROP TAX
KENT COUNTY TAX OFFIC
NEW CASTLE COUNTY
OLD TOWN HALL ASSOCIAT
SCHOOLHOUSE PROP TAX
SUSSEX COUNTY
THE TOWN OF LAUREL
TOWN OF CAMDEN
TOWN OF MILLSBORO

**CASE PROFESSIONALS:**

CHIPMAN BROWN CICERO & COLE, LLP
EISNERAMPER LLP
OMNI AGENT SOLUTIONS
SSG ADVISORS, LLC

**BANKS:**

TD BANK
WILMINGTON SAVINGS FUND SOCIETY, FSB

**OTHER CREDITORS:**

AMERICAN LEGION AMBULANCE
ARTHUR HALL INSURANCE
BAYHEALTH MEDICAL CENTER
BAYHEALTH MEDICAL GROUP
BAYSHORE FORD
BEEBE MEDICAL GROUP
CAPANO
CARROLL PROPERTIES, LLC
CHRISTIANA CARE HEALTH SERVICE
DEL LAWN LLC

DRUMMOND PLAZA ASSOCIATES
ELMS HOLDING COMPANY, LLC
FIRST STATE SURGERY CENTER LLC
GALLAGHER BASSETT SERVICES INC.
INPERIUM, INC.
INPERIUM WELLNESS
INFINITY SEARCH GROUP
ITDATA INC,
LIFE TREE PHARMACY
MCKESSON MEDICAL SURGICAL
MEDICAL ONCOLOGY HEMATOLOGY CO
MEDLINE INDUSTRIES, INC.
MOBILEXUSA
NATIONAL EYE CARE
PRE HOLDING II, LLC
QUALIFACTS
QUEST DIAGNOSTICS
STATE OF DELAWARE
SYSCO EASTERN MARYLAND
VERIZON WIRELESS
VISTAPHARM, INC.
WEINER BENEFITS GROUP
WHISMAN, GIORDANO & ASSOCS, LLC
WILMINGTON SAVINGS FUND SOCIETY, FSB

**LITIGATION PARTIES:**

ADAM WENZKE
AMIR FATIR
ANTHONY WHITE
BRIAN M. BEY
CARLA MILLER
CAROLINE GRANT
CHAUNCEY W. PINKSTON, JR.
CHRISTOPHER H. WEST
CHRISTOPHER MOEN
DANA METZGER
DANIEL M. WOODS
DAVID ALLEN ALLEMANDI
DAVID YUNIS
DELAWARE DEPARTMENT OF JUSTICE
DEPUTY WARDEN SCARBOROUGH
DOCTOR ROBIN BELCHER-TIMMEY
DONALD DUROSS
DOUGLAS SPRUILL
DR. CRATISSA HAMMOND
DR. HAREWOOD
DR. POTTER
DR. RICHARDSON
DR. ROBIN O. TIMME
FRANCES MARTI
FRED HUFFMAN
GRADY & HAMPTON
HERMAN ELLIS

# SCHEDULE 2

## MASTER LIST OF POTENTIAL PARTIES-IN-INTEREST

HERMIONE KELLY IVY WINTER
JAMES DOUGLAS THOMAS RIDER
JAMES ELDER
JAMES HUTCHISON
JAMES M. ELLIOTTE
JONATHAN TAN
JUDITH CAPRIO
KAMILLA LONDON
KATRINA BURLEY
KELLY EMBERT
KENDALL MAURICE SMITH, III
KENT & MCBRIDE, P.C.
KENT COUNTY, SHERIFF
KEVIN H. BOONE
KOLAWOLE AKINBAYO
LEE TURNER
LUCIUS JONES
LYNELL B. TUCKER
MALIKA SPRUILL
MANDEL DANTE WALKER
MARC RICHMAN
MARCUS JOHNSON
MATTHEW JONES
MATTHEW WOFFORD
MISTY MAY
MR. AUGUST
MRS. PADRELL
NEW CASTLE COUNTY, SHERIFF
NURSE KELLY
PAOLA A. MUNOZ
PERRY PHELPS
PETER OSINUBI
PHIL PARKER
RAMON TAYLOR
REGISTERED NURSE AMY MALKIN
RICHARD L. HOLMES
ROBERT CONAWAY
ROBERT MAY
ROBIN TIMME-BELCHER
SARAH SEASE
SARAH SPRINGER
SHATERIA CASON-BUSH
SHERI L. MCAFEE-GARNER
STATE OF DELAWARE
STATE OF DELAWARE, DEPARTMENT OF JUSTICE
SUSAN MUMFORD
TANYA WILSON
THE POLIQUIN FIRM LLC
THE POLIQUIN FIRM LLC
TRACI COLEMAN
TRAVELERS HOME AND MARINE INS. CO
TYRONE NORWOOD
UNITED STATES OF AMERICA
VERNON ERNEST DORIAN CEPHAS

WARDEN DANA METZGER
WEIK NITSCHE & DOUGHERTY, LLC
WHITE & WILLIAMS
YOUNG, CONAWAY, STARGATT & TAYLOR LLP

**DELAWARE BANKRUPTCY JUDGES AND CLERK OF COURT:**

JUDGE KEVIN J. CAREY
JUDGE ASHLEY M. CHAN
JUDGE JOHN T. DORSEY
JUDGE KEVIN GROSS
UNA O'BOYLE, CLERK OF COURT
JUDGE KAREN B. OWENS
JUDGE BRENDAN L. SHANNON
JUDGE LAURIE SELBER SILVERSTEIN
CHIEF JUDGE CHRISTOPHER S. SONTCHI
JUDGE MARY F. WALRATH

**U.S. TRUSTEE'S OFFICE, DISTRICT OF DELAWARE:**

LAUREN ATTIX, OA ASSISTANT
DAVID BUCHBINDER, TRIAL ATTORNEY
LINDA CASEY, TRIAL ATTORNEY
HOLLY DICE, AUDITOR
SHAKIMA L. DORTCH, PARALEGAL SPECIALIST
TIMOTHY J. FOX, JR., TRIAL ATTORNEY
DENISE GIORDANO, BANKRUPTCY ANALYST
CHRISTINE GREEN, PARALEGAL SPECIALIST
BENJAMIN HACKMAN, TRIAL ATTORNEY
JEFFREY HECK, BANKRUPTCY ANALYST
BRYA KEILSON, TRIAL ATTORNEY
JANE LEAMY, TRIAL ATTORNEY
HANNAH M. MCCOLLUM, TRIAL ATTORNEY
JAMES R. O'MALLEY, BANKRUPTCY ANALYST
MICHAEL PANACIO, BANKRUPTCY ANALYST
LINDA RICHENDERFER, TRIAL ATTORNEY
JULIET SARKESSIAN, TRIAL ATTORNEY
RICHARD SCHEPACARTER, TRIAL ATTORNEY
EDIT A. SERRANO, PARALEGAL SPECIALIST
ROSA SIERRA, TRIAL ATTORNEY
KAREN STARR, BANKRUPTCY ANALYST
T. PATRICK TINKER, ASSISTANT U.S. TRUSTEE
RAMONA VINSON, PARALEGAL SPECIALIST
JACLYN WEISSGERBER, TRIAL ATTORNEY
MICHAEL WEST, BANKRUPTCY ANALYST
DION WYNN, PARALEGAL SPECIALIST

<u>Schedule 3</u>

1.  SSG has worked on other unrelated matters with EisnerAmper, Chief Restructuring Officer and financial advisor for the Debtor;

2.  SSG has worked on other unrelated matters with Chipman Brown Cicero & Cole, LLP, counsel for the Debtor;

3.  SSG has worked on other unrelated matters with Omni Agent Solutions, claims and noticing agent for the Debtor;

4.  SSG has a banking relationship with WSFS, the secured lender to the Debtor; and

5.  SSG has worked on other unrelated matters with Reed Smith, LLP, counsel to WSFS.