## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| CONNECTIONS COMMUNITY SUPPORT PROGRAMS, INC., | Case No. 21-10723 (MFW) |
| Debtor.[1] | **Related Docket No. 71** |

## ORDER (I) AUTHORIZING THE ASSUMPTION, ASSIGNMENT, AND SALE OF CERTAIN ASSETS TO CONEXIO CARE, INC., FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS; AND (II) GRANTING RELATED RELIEF

Upon the motion (the "**MAT Sale Motion**")[2] filed by the above-captioned debtor and debtor-in-possession (the "**Debtor**") seeking entry of an order (this "**Order**") pursuant to sections 105, 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006 and 9014 of the Federal Rules of Bankruptcy Procedure, and Local Rule 6004-1 (i) authorizing and approving the sale of the Acquired MAT Assets (the "**MAT Sale**") free and clear of all liens, claims, encumbrances and interests of any kind to the Successful Bidder after the proper conduct and conclusion of the Auction of the Acquired MAT Assets, as determined in accordance with the terms of the Bidding Procedures Order; (ii) authorizing the assumption and assignment of certain executory contracts and unexpired leases (the "**Acquired MAT Contracts**") of the Debtor that may be assumed and assigned in connection with the MAT Sale, subject to and at the time of the closing of the MAT

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its tax identification number, is as follows: Connections Community Support Programs, Inc. (3030). The address of the Debtor's corporate headquarters is 3812 Lancaster Pike, Wilmington, Delaware 19805.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the MAT Sale Motion.

Sale; and (iii) granting related relief; and the Court having entered the Bidding Procedures Order that, *inter alia,* (a) approved the Bidding Procedures, (b) approved the form and manner of notice of the Auction, if any, and the Sale Hearing, and (c) established a process for providing bid protections to the Stalking Horse Bidder and the MAT Stalking Horse Bidder and for selecting one or more additional stalking horse bidders; and the Court having established the date of the MAT Sale Hearing; and the Court having jurisdiction to consider the MAT Sale Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157(b)(2) and 1334; and upon consideration of the MAT Sale Motion, the relief requested therein and responses thereto; upon the transcript of the Auction (including the representations and agreements contained therein) (the **"Auction Transcript"**); and upon the record of the MAT Sale Hearing, and all other pleadings and proceedings in this Case, including the MAT Sale Motion; and it appearing that the relief requested in the MAT Sale Motion is in the best interests of the Debtor, its estate, its creditors, and all other parties-in-interest; and after due deliberation and sufficient cause appearing therefor;

IT IS HEREBY FOUND, DETERMINED, AND CONCLUDED THAT:

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.      To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.      The Court has jurisdiction over this matter and over the property of the Debtor's estate, including the assets to be sold, transferred, or conveyed pursuant to the MAT Stalking Horse APA and this Order, pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of the Chapter 11 Case in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D.      The statutory predicates for the relief sought in the MAT Sale Motion and the basis for the approvals and authorizations herein are (i) sections 102, 105, 363, and 365 of the Bankruptcy Code, (ii) Bankruptcy Rules 2002, 6004, 6006, 9006 and 9014, and (iii) Local Rule 6004-1.

E.      On the Petition Date, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "**Court**").  Since the Petition Date, the Debtor has continued in possession and management of its business and property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

F.      As evidenced by the affidavits of service filed with the Court, proper, timely, adequate, and sufficient notice of the MAT Sale Motion, the Auction, and the MAT Sale Hearing has been provided in accordance with sections 102(1), 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 9006, 9007, 9008, and 9014, and the Local Rules, and in compliance with the Bidding Procedures Order.  Such notice was sufficient and appropriate under the particular circumstances.  No other or further notice of the MAT Sale Motion, the Auction, the MAT Sale Hearing, or of the entry of this Order is necessary or shall be required.

G.    A reasonable opportunity to object or be heard with respect to the MAT Sale, the MAT Sale Motion, and the relief requested therein, the assumption and assignment of the Acquired MAT Contracts and the amounts necessary under section 365(b) of the Bankruptcy Code to cure defaults thereunder, as such amounts have been transmitted pursuant to a written notice delivered to the applicable counterparty, has been afforded to all interested persons and entities, including, without limitation, (1) the Office of the United States Trustee for the District of Delaware; (2) counsel to the Official Committee of Unsecured Creditors; (3) counsel to WSFS; (4) counsel to the State of Delaware, including the Delaware Department of Health and Social Services and Department of Services for Children, Youth and Their Families; (5) counsel to the United States of America; (6) all parties known by the Debtor to assert a lien on any of the Assets; (7) all persons known by the Debtor to have asserted an interest in any of the Assets; (8) all non-Debtor parties to any of the Contracts and Lease; (9) all persons known by the Debtor to have expressed an interest in acquiring all or any portion of the CCSP Assets within the twelve (12) months prior to the Petition Date; (10) the Office of the United States Attorney for the District of Delaware; (11) the Office of the Attorney General for the State of Delaware; (12) the Office of the Secretary of State of the State of Delaware; (13) all taxing authorities having jurisdiction over any of the CCSP Assets; (14) the Patient Care Ombudsman; and (15) all other parties that had filed a notice of appearance and demand for service of papers in this Chapter 11 Case as of the date of service (collectively, the "**Sale Notice Parties**").

H.    Pursuant to that certain Asset Purchase Agreement, dated April 30, 2021 (together with all related documents, agreements, exhibits, schedules, and addenda thereto, and as may be amended, the "**MAT Stalking Horse APA**"), a copy of which is attached hereto as **<u>Attachment 1</u>**, the Debtor agreed to assume and assign and/or sell certain assets (as set forth in Section 2.1 of the MAT Stalking Horse APA, the "**Acquired MAT Assets**") to Conexio Care, Inc., a Delaware nonstock corporation or its designated subsidiary or affiliate (the "**MAT Purchaser**") relating to the  Acquired MAT Assets, free and clear of all liens, claims, encumbrances and interests of any kind to MAT Purchaser.

I.    Other parties interested in bidding on the Acquired MAT Assets were provided, upon request, sufficient information to make an informed judgment on whether to bid on the Acquired MAT Assets.

J.    The Acquired MAT Assets constitute property of the Debtor's estate and title thereto is vested in the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code.

K.    Based on the record developed in connection with the MAT Asset Sale, the Debtor has demonstrated a sufficient basis and compelling circumstances requiring it to enter into the MAT Stalking Horse APA and sell the Acquired MAT Assets under sections 363 and 365 of the Bankruptcy Code, and such actions are an appropriate exercise of the Debtor's business judgment and in the best interests of the Debtor, its estate, and its creditors.  Such business reasons include, but are not limited to, the following: (i) the MAT Stalking Horse APA constitutes the highest or best offer for the Acquired MAT Assets, (ii) the MAT Stalking Horse APA and the MAT Closing will present the best opportunity to

realize the value of the Debtor on a going-concern basis and avoid potential decline in the Debtor's businesses and programs to the detriment of all parties-in-interest including residents, program participants, Employees, and the general public in the affected communities in the State of Delaware, and (iii) unless the MAT Sale is concluded expeditiously as provided for in the MAT Sale Motion and pursuant to the MAT Stalking Horse APA, creditors' recoveries may be diminished.

L.      The Bidding Procedures set forth in the Bidding Procedures Order were non-collusive, created and followed in good faith by the MAT Purchaser, and substantively and procedurally fair to all parties.

M.      The Debtor and its professionals have complied, in good faith, with the Bidding Procedures Order in all respects.  As demonstrated by (i) any testimony and other evidence proffered or adduced at the MAT Sale Hearing or submitted through the First Day Declaration or otherwise prior to the MAT Sale Hearing and (ii) the representations of counsel made on the record at the MAT Sale Hearing, through marketing efforts and a competitive sale process conducted in accordance with the Bidding Procedures Order, the Debtor (a) afforded interested potential MAT Purchasers a full, fair, and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer for the Acquired MAT Assets and (b) provided potential MAT Purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Acquired MAT Assets.

N.      MAT Purchaser's offer to acquire the Acquired MAT Assets, upon the terms and conditions as accepted by the Debtor in the MAT Stalking Horse APA, (i) is the

highest and best offer received by the Debtor for the Acquired MAT Assets, (ii) is fair and reasonable, (iii) is in the best interests of the Debtor's creditors and estate, (iv) constitutes full and adequate consideration and reasonably equivalent value for the Acquired MAT Assets, and (v) will provide a greater recovery for the Debtor's creditors and other interested parties than would be provided by any other practically available alternative. The MAT Purchaser is the Successful Bidder for the Acquired MAT Assets in accordance with the Bidding Procedures Order; provided, however, the MAT Purchaser shall not be obligated to close until all applicable conditions to MAT Closing under the MAT Stalking Horse APA have been satisfied or waived as provided in the MAT Stalking Horse APA.

O.    The Bidding Procedures enabled the Debtor to obtain the highest value for the Acquired MAT Assets for the Debtor and its estate under the circumstances herein. To the extent provided herein, the Debtor may assume each of the "**Assumed MAT Liabilities**" as defined in Section 2.3 of the MAT Stalking Horse APA and the "**Acquired MAT Contracts**" as defined in Section 2.8. of the MAT Stalking Horse APA and assign each of them to the Stalking Horse MAT Purchaser pursuant to sections 363 and 365 of the Bankruptcy Code and this Order, notwithstanding any anti-assignment clause or other similar provision in the Acquired MAT Contracts, as provided by section 365(f) of the Bankruptcy Code.  The Acquired MAT Contracts shall not include, and this provision shall not permit the assignment or assumption by the Debtor of, any grant agreement entered into between the Debtor and any agency or department of the United States, including without limitation the United States Department of Housing and Urban Development (HUD) or the United States Veterans Administration (VA), nor of the Debtor's Medicare

Part B supplier agreement with the Centers for Medicare & Medicaid Services (CMS).  The assumption and assignment of the Acquired MAT Contracts is in the best interests of the Debtor and its estate, creditors, and other parties in interest, representing the reasonable exercise of sound and prudent business judgment of the Debtor.  The MAT Purchaser has provided evidence of adequate assurance of future performance by the MAT Purchaser under the Acquired MAT Contracts consistent with sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

P.    Notice as to the proposed assumption and assignment of each of the Acquired MAT Contracts was provided to all non-Debtor parties to each of the Acquired MAT Contracts in accordance with the Assumption and Assignment Procedures approved in connection with the Bidding Procedures Order.  Such notice was sufficient and appropriate under the particular circumstances.  No other or further notice of the assumption and assignment of the Acquired MAT Contracts is necessary or shall be required.

Q.    Unless otherwise agreed by the parties to the Acquired MAT Contracts and the MAT Purchaser, the Cure Amounts established in accordance with the Assumption and Assignment Procedures are the sole amounts necessary under sections 365(b)(1)(A), 365(b)(1)(B), and 365(f)(2)(A) of the Bankruptcy Code to cure all defaults and pay all actual pecuniary losses under the Acquired MAT Contracts.

R.    The MAT Purchaser is not an insider of the Debtor as that term is defined in section 101 of the Bankruptcy Code.  As such, the MAT Purchaser is a buyer in good faith, as that term is used in the Bankruptcy Code, and the decisions thereunder, and is

entitled to the protections of section 363(m) of the Bankruptcy Code with respect to all of the Acquired MAT Assets. The MAT Stalking Horse APA was negotiated and entered into in good faith and without collusion or fraud of any kind.

S.     Based on the record developed in connection with the MAT Asset Sale, the MAT Purchaser has not engaged in collusion or any conduct that would otherwise control or tend to control the sale price as between or among potential bidders and, therefore, has not violated section 363(n) of the Bankruptcy Code. Neither the Debtor nor the MAT Purchaser have engaged in any conduct that would prevent the application of section 363(m) of the Bankruptcy Code or cause the application of or implicate section 363(n) of the Bankruptcy Code to the MAT Stalking Horse APA or to the consummation of the MAT Sale. The MAT Purchaser is entitled to all of the protections and immunities of section 363(m) of the Bankruptcy Code.

T.     The Debtor has full corporate power and authority to execute the MAT Stalking Horse APA and all other documents contemplated thereby (collectively, the "**MAT Closing Documents**"), and the sale of the Acquired MAT Assets has been duly and validly authorized by all necessary corporate authority by the Debtor to consummate the transactions contemplated by the MAT Closing Documents. No consents or approvals, other than as may be expressly provided for in this Order or the MAT Stalking Horse APA are required by the Debtor to consummate the MAT Sale.

U.     The terms and conditions of the MAT Closing Documents, including the consideration to be realized by the Debtor pursuant thereto, are fair and reasonable, and the transactions contemplated thereby are in the best interests of the Debtor's estate.

V.      Except as otherwise provided in the MAT Stalking Horse APA or this Order, the Acquired MAT Assets are being sold on an as-is, where-is basis, free and clear of all mortgages, restrictions, hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, liens (including, without limitation, mechanics', materialmens', and other consensual and non-consensual liens and statutory liens), judgments, demands, encumbrances, rights of first refusal, offsets, contracts, recoupment, rights of recovery, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, environmental, pension, or tax, decrees of any court or foreign or domestic governmental entity, or charges of any kind or nature, if any, including, but not limited to, any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtor or the Debtor's predecessors or affiliates, claims (as that term is used in the Bankruptcy Code), reclamation claims, obligations, liabilities, demands, guaranties, options, rights, contractual, or other commitments, restrictions, interests, and matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of the bankruptcy case, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines

of successor liability (collectively, "**Liens, Claims, Encumbrances, and Interests**"); provided, however, that such Liens, Claims, Encumbrances and Interests shall attach to the proceeds of the Acquired MAT Assets received by the Debtor with the same priority, validity, force and effect as such Liens, Claims, Encumbrances, and Interests has in the Acquired MAT Assets pre-petition, subject to any claims and defenses the Debtor may possess with respect thereto.

W.     The transfer of the Acquired MAT Assets to the MAT Purchaser is a legal, valid, and effective transfer of the Acquired MAT Assets to the extent of the Debtor's estate's interest under section 541(a) of the Bankruptcy Code in such assets, and, except as may otherwise be provided in the MAT Stalking Horse APA, shall vest the MAT Purchaser with all rights, titles, and interests to the Acquired MAT Assets free and clear of any and all Liens, Claims, Encumbrances, and Interests.  All such Liens, Claims, Encumbrances, and Interests are to continue in and attach to the MAT Sale Proceeds, in the order of their priority, with the same validity, force, and effect which they had as against the Acquired MAT Assets prior to the entry of this Order and subject to any claims and defenses the Debtor or other parties may possess with respect thereto.  Except as specifically provided in the MAT Stalking Horse APA or this Order, the MAT Purchaser shall not assume or become liable for any Liens, Claims, Encumbrances, and Interests relating to the Acquired MAT Assets being sold by the Debtor.

X.     The transfer of the Acquired MAT Assets to the MAT Purchaser, free and clear of all Liens, Claims, Encumbrances, and Interests, will not result in any undue burden or prejudice to any holders of any Liens, Claims, Encumbrances, and Interests as all such

Liens, Claims, Encumbrances, and Interests of any kind or nature whatsoever shall continue in and attach to the MAT Sale Proceeds, if any, in the order of their priority, with the same validity, force, and effect that they now have as against the Acquired MAT Assets and subject to any claims and defenses the Debtor or other parties may possess with respect thereto.  All persons having Liens, Claims, Encumbrances, or Interests of any kind or nature whatsoever against or in any of the Debtor or the Acquired MAT Assets shall be forever barred, estopped, and permanently enjoined from pursuing or asserting such Liens, Claims, Encumbrances, and Interests against the MAT Purchaser, any of their assets, property, successors or assigns, or the Acquired MAT Assets.

   Y. The Debtor may sell the Acquired MAT Assets free and clear of all Liens, Claims, Encumbrances, and Interests of any kind or nature whatsoever, because, in each case, one or more of the standards set forth in section 363(f) of the Bankruptcy Code has been satisfied.  Those holders of Liens, Claims, Encumbrances, and Interests who did not object, or who withdrew their objections, to the sale of the Acquired MAT Assets and the MAT Sale Motion, are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  All objections to the MAT Sale Motion have been resolved as provided herein or overruled.  Any objections to the MAT Sale made by holders of Liens, Claims, Encumbrances, and Interests fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Liens, Claims, Encumbrances, and Interests continue in and attach to the MAT Sale Proceeds in the order of their priority, with the same validity, force, and effect which they had as against the

Acquired MAT Assets prior to the entry of this order and subject to any claims and defenses the Debtor or other parties may possess with respect thereto.

Z.      Not selling the Acquired MAT Assets free and clear of all Liens, Claims, Interests, and Encumbrances would adversely impact the Debtor's estate, and the sale of Acquired MAT Assets other than one free and clear of all Liens, Claims, Encumbrances, and Interests would be of substantially less value to the Debtor's estate.

AA.     To the greatest extent allowed by applicable law, the transactions contemplated under the MAT Stalking Horse APA do not amount to a consolidation, merger, or *de facto* merger of the MAT Purchaser and the Debtor and/or the Debtor's estate, there is no substantial continuity between the MAT Purchaser and the Debtor, there is no common identity between the Debtor and the MAT Purchaser, there is no continuity of enterprise between the Debtor and the MAT Purchaser, the MAT Purchaser is not a mere continuation of the Debtor or its estate, and the MAT Purchaser does not constitute a successor to the Debtor or its estate.  Except to the extent, if any, that the liabilities of the Debtor are Assumed MAT Liabilities under the MAT Stalking Horse APA, or as provided herein, the MAT Purchaser shall have no obligations with respect to any liabilities of the Debtor.

BB.     The sale of the Acquired MAT Assets outside of a plan of reorganization neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a liquidating plan of reorganization for the Debtor.  The MAT Sale does not constitute a *sub rosa* chapter 11 plan.

CC.    The total consideration provided by the MAT Purchaser for the Acquired MAT Assets is the highest and best offer received by the Debtor, and the Purchase Price and the assumption of the Assumed MAT Liabilities constitutes (i) reasonably equivalent value under the Bankruptcy Code and the Uniform Fraudulent Transfer Act, (ii) fair consideration under the Uniform Fraudulent Conveyance Act, and (iii) reasonably equivalent value, fair consideration, and fair value under any other applicable laws of the United States, any state, territory, or possession, or the District of Columbia, for the Acquired MAT Assets.

Now, therefore, based upon all of the foregoing,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

1.    The relief requested in the MAT Sale Motion is GRANTED to the extent forth herein.  The MAT Sale Motion complies with all aspects of Local Rule 6004-1.

2.    Except as set forth herein, to the extent any objection, response, or request for continuance was not otherwise withdrawn, waived, or settled, it, and all reservations of rights contained therein, is overruled and denied.  Except as set forth herein, without limiting the foregoing, all objections and/or statements to the MAT Sale Motion and the MAT Sale have all been resolved, withdrawn, or overruled in their entirety.

3.    Notice of the MAT Sale Hearing was fair and reasonable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004, and the Local Rules, and the orders of the Court.

**APPROVAL OF MAT SALE**

4.      MAT Purchaser's offer for the Acquired MAT Assets constitutes the highest and best offer for the Acquired MAT Assets, and the terms and conditions of the MAT Stalking Horse APA (including all schedules and exhibits affixed thereto), and the transactions contemplated thereby, are hereby authorized and approved in all respects.

5.      The sale of the Acquired MAT Assets and the consideration provided by the MAT Purchaser under the Successful Bid, the MAT Stalking Horse APA, and this Order, are fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

6.      The MAT Purchaser is hereby granted and is entitled to all of the protections provided to a good faith buyer under section 363(m) of the Bankruptcy Code.

7.      Pursuant to section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of this Court or any other court, such reversal, modification, or vacatur shall not affect the validity and enforceability of any transfer under the MAT Stalking Horse APA or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal), and notwithstanding any reversal, modification, or vacatur, shall be governed in all respects by the provisions of this Order and the MAT Closing Documents, as the case may be.

8.      The Debtor is hereby authorized to fully assume, perform under, consummate, execute, deliver, and implement the terms of the MAT Closing Documents,

together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the Successful Bid, the MAT Stalking Horse APA , this Order, and the sale of the Acquired MAT Assets contemplated thereby, including, without limitation, deeds, assignments, and other instruments of transfer, including, without limitation, the Access Agreement (the "**Access Agreement**"), and to take all further actions as may reasonably be requested by the MAT Purchaser for the purpose of assigning, transferring, granting, conveying, and conferring to the MAT Purchaser, or reducing to possession any or all of the Acquired MAT Assets or Assumed MAT Liabilities, as may be necessary or appropriate to the performance of the Debtor's obligations as contemplated by the MAT Stalking Horse APA, without any further corporate action or orders of the Court.  The MAT Purchaser shall have no obligation to proceed with the consummation of the MAT Sale (the "**MAT Closing**") until all conditions precedent to its obligations to do so under the terms of the MAT Stalking Horse APA have been met, satisfied, or waived.

9.      Notice of the Debtor's assumption and assignment to the MAT Purchaser of the Acquired MAT Contracts has been provided to all counterparties to the Acquired MAT Contracts in accordance with the Assumption and Assignment Procedures approved in connection with the Bidding Procedures Order.  As to each Acquired MAT Contract, payment of the Cure Costs, as established herein and in accordance with the Assumption and Assignment Procedures, is sufficient for the Debtor to comply fully with the requirements of section 365(b) of the Bankruptcy Code and the MAT Purchaser has demonstrated adequate assurance of future performance.  To the extent that a counterparty

to the Acquired MAT Contracts failed to timely object to the Cure Costs, such Cure Costs shall be deemed to be finally determined and any such counterparty shall be prohibited from challenging, objecting to, or denying the validity and finality of the Cure Costs.  The Debtor is authorized to assume and assign to the MAT Purchaser the Acquired MAT Contracts, as may be supplemented or amended by the MAT Purchaser in accordance with the MAT Stalking Horse APA.  The MAT Purchaser shall be responsible for any cure costs associated with the Acquired MAT Contracts.  In no event will Debtor have any liability for any Cure Costs.

10.     The assumption and assignment of the Acquired MAT Contracts and pursuant to the terms of this Order is integral to and the primary component of the MAT Stalking Horse APA and is in the best interests of the Debtor and its estate, creditors, and other parties in interest, and represents a reasonable exercise of sound and prudent business judgment by the Debtor.

11.     In addition, the MAT Purchaser has provided adequate assurance of its ability to perform its obligations under each of the Acquired MAT Contracts within the meaning of section 363(f) of the Bankruptcy Code.  All other requirements and conditions under the Bankruptcy Code for the assumption by the Debtor and the assignment to the MAT Purchaser of the Acquired MAT Contracts have been satisfied.  Therefore, the Acquired MAT Contracts as provided herein may be assumed by the Debtor and assigned to the MAT Purchaser.

12.     The Debtor and each other person or entity having duties or responsibilities under the MAT Stalking Horse APA, any agreements related thereto, or this Order, and

each of its and their respective directors, officers, employees, members, agents, representatives, and attorneys, are authorized and empowered (a) to carry out all of the provisions of the Successful Bid, the MAT Stalking Horse APA, and any related agreements, (b) to issue, execute, deliver, file, and record, as appropriate, the documents evidencing and consummating the MAT Sale, and any related agreements, (c) to take any and all actions contemplated by the Successful Bid, the MAT Stalking Horse APA, any related agreements, or this Order, and (d) to issue, execute, deliver, file, and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents and to perform such other acts and execute and deliver  such other documents, as are consistent with, and necessary or appropriate to implement, effectuate, and consummate, the Successful Bid, the MAT Stalking Horse APA, any related agreements, and this Order and the transactions contemplated thereby and hereby, all without further application to, or order of, the Court or further action by their respective directors, officers, employees, members, agents, representatives, and attorneys, and with like effect as if such actions had been taken by unanimous action of the respective directors, officers, employees, members, agents, representatives, and attorneys of such entities.

13.     The Debtor is further authorized and empowered to file or cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units, any and all certificates, agreements, or amendments the Debtor or the MAT Purchaser deem necessary or appropriate to effectuate the transactions contemplated by the Successful Bid, the MAT Stalking Horse APA, any related agreements, and this

Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment, and to take or cause to be taken all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as the MAT Purchaser or any of the officers of the Debtor may determine are necessary or appropriate.  The execution of any such document or the taking of any such action shall be, and hereby is, deemed conclusive evidence of the authority of such person to so act.  Without limiting the generality of the foregoing, this Order shall constitute all approvals and consents, if any, required by the corporation laws of the State of Delaware, and all other applicable business corporation, trust, and other laws of the applicable governmental units with respect to the implementation and consummation of the Successful Bid, the Bill of Sale, any related agreements and this Order, and the transactions contemplated thereby and hereby; provided that nothing herein shall constitute a waiver by the MAT Purchaser of any of the conditions contained in the MAT Stalking Horse APA.

14.    Effective as of the MAT Closing, (a) the sale of the Acquired MAT Assets by the Debtor to the MAT Purchaser shall constitute a legal, valid, and effective transfer of the Acquired MAT Assets notwithstanding any requirement for approval or consent by any person and vests the MAT Purchaser with all rights, titles, and interests in and to the Acquired MAT Assets, free and clear of all Liens, Claims, Encumbrances, and Interests of any kind, pursuant to section 363(f) of the Bankruptcy Code to the extent of the Debtor's estate's interest under section 541(a) of the Bankruptcy Code in such assets. Notwithstanding anything contained in this Order or the Asset Purchase Agreements, the

Debtor's estate does not include, and the Debtor shall not transfer, any grant agreement entered into between the Debtor and any agency or department of the United States, including without limitation the United States Department of Housing and Urban Development (HUD) or the United States Veterans Administration (VA) or the Debtor's Medicare Part B supplier agreement with the Centers for Medicare & Medicaid Services (CMS).  All Liens, Claims, Encumbrances, and Interests (including without limitation Liens, Claims, Encumbrances, and Interests of WSFS) shall continue in and attach to the MAT Sale Proceeds in the order of their priority, with the same validity, force, and effect which they had as against the Acquired MAT Assets prior to the entry of this Order and subject to any claims and defenses the Debtor or other parties may possess with respect thereto, and (b) the assumption of any Assumed MAT Liabilities by the MAT Purchaser constitutes a legal, valid, and effective delegation of any Assumed MAT Liabilities to the MAT Purchaser and divests the Debtor of all liability with respect to any Assumed MAT Liabilities.

**TRANSFER OF ASSETS**

15.    Except to the extent specifically provided in the MAT Stalking Horse APA, upon the MAT Closing, the Debtor shall be, and hereby is, authorized, empowered, and directed, pursuant to sections 105, 363(b), and 363(f) of the Bankruptcy Code, to sell the Acquired MAT Assets to the MAT Purchaser, on an as-is, where-is basis.  The sale of the Acquired MAT Assets vests the MAT Purchaser with all right, title, and interest to the Acquired MAT Assets free and clear of any and all Liens, Claims, Encumbrances, and Interests and other liabilities and claims, whether secured or unsecured, choate or inchoate,

filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, or known or unknown, whether arising prior to or subsequent to the Petition Date, whether imposed by agreement, understanding, law, equity, or otherwise. All such Liens, Claims, Encumbrances, and Interests shall continue in and attach to the MAT Sale Proceeds with the same priority, validity, force, and effect, if any, as they now have in or against the Acquired MAT Assets, subject to all claims and defenses the Debtor may possess with respect thereto. The MAT Sale Motion shall be deemed to provide sufficient notice as to the sale of the Acquired MAT Assets free and clear of Liens, Claims, Encumbrances, and Interests in accordance with Local Rule 6004-1. Following the date of the closing (the "**MAT Closing Date**"), no holder of any Liens, Claims, Encumbrances, and Interests in the Acquired MAT Assets may interfere with the MAT Purchaser's use and enjoyment of the Acquired MAT Assets based on or related to such Liens, Claims, Encumbrances, and Interests, or any actions that the Debtor may take in its Chapter 11 Case and no person may take any action to prevent, interfere with, or otherwise enjoin consummation of the transactions contemplated in or by the MAT Closing Documents or this Order.

16.    The provisions of this Order authorizing the sale of the Acquired MAT Assets free and clear of Liens, Claims, Encumbrances, and Interests, shall be self-executing, and neither the Debtor nor the MAT Purchaser shall be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of this Order. All such Liens,

Claims, Encumbrances, and Interests are to attach to the MAT Sale Proceeds in the order of their priority, with the same validity, force, and effect which they had as against the Acquired MAT Assets prior to the entry of this order and subject to any claims and defenses the Debtor or other parties may possess with respect thereto.

17.     On or before the MAT Closing Date, the Debtor's creditors are authorized and directed to execute such documents and take all other actions as may be necessary to release any Liens, Claims, Encumbrances, and Interests of any kind against the Acquired MAT Assets, as such Liens, Claims, Encumbrances, and Interests may have been recorded or may otherwise exist.  If any person or entity that has filed financing statements or other documents or agreements evidencing any Liens, Claims, Encumbrances, and Interests in or against the Acquired MAT Assets shall not have delivered to the Debtor prior to the MAT Closing after request therefor, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of all such Liens, Claims, Encumbrances, and Interests that the person or entity has with respect to the Acquired MAT Assets, the Debtor or the MAT Purchaser, may, in their sole option and at their sole discretion, execute and file on behalf and in the stead of such party any such document as may be necessary to evidence the discharge of any Liens, Claims, Encumbrances, and Interests.

18.     All of the Debtor's interests in the Acquired MAT Assets to be acquired by the MAT Purchaser under the MAT Stalking Horse APA shall be, as of the MAT Closing Date and upon the occurrence of the MAT Closing, transferred to and vested in the MAT Purchaser.  Upon the occurrence of the MAT Closing, this Order shall be considered and

constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of the Acquired MAT Assets acquired by the MAT Purchaser under the MAT Closing Documents transferring good and marketable, indefeasible title and interest, to the extent of the Debtor's estate's interest under section 541(a) of the Bankruptcy Code in such assets, in the Acquired MAT Assets to the MAT Purchaser.

19.     Except as otherwise expressly provided in the MAT Stalking Horse APA, all persons or entities, presently or on or after the MAT Closing Date, in possession of some or all of the Acquired MAT Assets are directed to surrender possession of the Acquired MAT Assets to the MAT Purchaser on the MAT Closing Date or at such time thereafter as the MAT Purchaser may request.

**ADDITIONAL PROVISIONS**

20.     Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the MAT Closing Documents and this Order.

21.     To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Acquired MAT Assets sold, transferred, or conveyed to the MAT Purchaser on account of the filing or pendency of this Chapter 11 Case.

22.     The MAT Purchaser has not assumed or is otherwise not obligated for any of the Debtor's liabilities other than the Assumed MAT Liabilities and as otherwise set forth in the MAT Stalking Horse APA, and the MAT Purchaser has not purchased any

assets of the Debtor that are not Acquired MAT Assets (the "**Excluded MAT Assets**").

Consequently, all persons, Governmental Units (as defined in sections 101(27) and 101(41)

of the Bankruptcy Code), and all holders of Liens, Claims, Encumbrances, and Interests

based upon or arising out of liabilities retained by the Debtor is hereby enjoined from taking

any action against the MAT Purchaser or the Acquired MAT Assets, including asserting

any setoff, right of subrogation, or recoupment of any kind, to recover any Liens, Claims,

Encumbrances, and Interests or on account of any liabilities of the Debtor other than

Assumed MAT Liabilities, if any.  All persons holding or asserting any Liens, Claims,

Encumbrances, and Interests in Excluded MAT Assets are hereby enjoined from asserting

or prosecuting such Liens, Claims, Encumbrances, and Interests or cause of action against

the MAT Purchaser or the Acquired MAT Assets for any liability associated with the

Excluded MAT Assets.  Notwithstanding the foregoing or anything to the contrary in this

Order, nothing shall preclude the Debtor from asserting claims against the MAT Purchaser

for the return and recovery of Excluded MAT Assets, including, without limitation, all pre-

MAT Closing security deposits, reserves, and reimbursements in the possession or control

of MAT Purchaser.

     23.    To the greatest extent allowed by applicable law, the MAT Purchaser is not

a "successor" to the Debtor or its estate by reason of any theory of law or equity, and the

MAT Purchaser shall not assume, nor be deemed to assume, or in any way be responsible

for any liability or obligation of any of the Debtor and/or its estate including, but not limited

to, any bulk sales law, successor liability, liability or responsibility for any claim against

the Debtor or against an insider of the Debtor, or similar liability except as otherwise

expressly provided in the MAT Stalking Horse APA, and the MAT Sale Motion contains sufficient notice of such limitation in accordance with Local Rule 6004-1.

24.    Except to the extent expressly set forth in the MAT Stalking Horse APA or this Order, pursuant to sections 105 and 363 of the Bankruptcy Code, all persons and entities, including, but not limited to, the Debtor, the Committee, all debt security holders, equity security holders, the Debtor's employees or former employees, governmental, tax and regulatory authorities, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding a Lien, Claim, Encumbrance, and Interest of any kind or nature whatsoever against, in, or with respect to any of the Debtor or the Acquired MAT Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Acquired MAT Assets, the operation of the Debtor's business prior to the MAT Closing Date or the transfer of the Acquired MAT Assets to the MAT Purchaser, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such Lien, Claim, Encumbrance, and Interest, whether by payment, setoff, or otherwise, directly or indirectly, against the MAT Purchaser or any affiliates, successors, or assigns thereof and each of their respective current and former members, officers, directors, managed funds, investment advisors, attorneys, employees, partners, affiliates, financial advisors, and representatives (each of the foregoing in its individual capacity), or the Acquired MAT Assets.

25.    Other than as provided for in the MAT Stalking Horse APA or this Order, the MAT Purchaser shall have no obligations with respect to any liabilities of the Debtor,

and the Debtor is deemed to release and forever discharge the MAT Purchaser and any of its affiliates, successors, and assigns from any and all claims, causes of action, obligations, liabilities, demands, losses, costs, and expenses of any kind, character, or nature whatsoever, known or unknown, fixed or contingent, relating to the MAT Sale, except for liabilities and obligations under the MAT Stalking Horse APA.

26.    The Successful MAT Bid, the MAT Stalking Horse APA, and any related agreements may be waived, modified, amended, or supplemented by agreement of the Debtor and the MAT Purchaser without further action or order of the Court; *provided*, *however*, any such waiver, modification, amendment, or supplement is not material and substantially conforms to, and effectuates, the Successful MAT Bid, the MAT Stalking Horse APA, and any related agreements.

27.    The failure specifically to include any particular provisions of the Successful Bid, the MAT Stalking Horse APA, or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court, the Debtor and the MAT Purchaser that the Successful Bid, the MAT Stalking Horse APA, and any related agreements are authorized and approved in their entirety, except as provided herein, with such amendments thereto as may be made by the parties in accordance with this Order prior to MAT Closing.

28.    To the extent any provisions of this Order conflict with the terms and conditions of the MAT Stalking Horse APA, this Order shall govern and control.

29.    This Order and the MAT Stalking Horse APA shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtor and the

MAT Purchaser, their respective successors and permitted assigns, including, without limitation, any chapter 11 trustee hereinafter appointed for the Debtor's estate or any trustee appointed in an applicable chapter 7 case if the chapter 11 case is converted from chapter 11, all creditors of the Debtor (whether known or unknown), filing agents, filing officers, title agents, recording agencies, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register, or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Acquired MAT Assets.  This Order shall survive and remain enforceable in accordance with its terms following any dismissal of this Chapter 11 Case or any subsequent chapter 7 case of the Debtor.

30.     The provisions of this Order are nonseverable and mutually dependent.

31.     Notwithstanding Bankruptcy Rules 6004, 6006, and 7062, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing, and the MAT Sale Motion shall be deemed to provide sufficient notice of the Debtor's request for relief from stay.  In the absence of any person's or entity's obtaining a stay pending appeal, the Debtor and the MAT Purchaser are free to close under the Successful Bid, the MAT Stalking Horse APA , and this Order at any time, subject to the terms of the MAT Stalking Horse APA.  In the absence of any person or entity obtaining a stay pending appeal, if the Debtor and the MAT Purchaser close under the MAT Stalking Horse APA, the MAT Purchaser shall be deemed to be acting in "good faith" and shall be entitled to the protections of section 363(m) of the Bankruptcy Code as to all aspects of the

transactions under and pursuant to the MAT Stalking Horse APA if this Order or any authorization contained herein is reversed or modified on appeal.

32.    This Court shall retain exclusive jurisdiction to enforce the terms and provisions of this Order, the Bidding Procedures Order, and the MAT Stalking Horse APA in all respects and to decide any disputes concerning this Order and the MAT Stalking Horse APA, or the rights and duties of the parties hereunder or thereunder or any issues relating to the Successful Bid, the MAT Stalking Horse APA, and this Order including, but not limited to, the interpretation of the terms, conditions, and provisions hereof and thereof, the status, nature, and extent of the Acquired MAT Assets, and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning the transfer of the Acquired MAT Assets free and clear of all Liens, Claims, Encumbrances, and Interests.

33.    Subject to the terms of the MAT Stalking Horse APA, and without limiting the Access Agreement, the MAT Purchaser shall, upon the request of the Debtor, allow the Debtor reasonable access to, and copies of, the books, records and personnel of the Debtor existing as of the MAT Closing Date, so as to enable the Debtor to administer the Chapter 11 Case, including, without limitation, to prepare and file a plan of liquidation and accompanying disclosure statement, and to prepare and file federal, state, and local tax returns.  The Debtor and the MAT Purchaser shall enter into the Access Agreement, in form and substance reasonably satisfactory to WSFS, the Debtor,  and the Committee.

34.    For the avoidance of doubt, no assets related to the Claymont Street Apartments are included in the MAT Sale.  In particular, the Debtor's interests in the real

estate related to the Claymont Street Apartments and as identified by tax parcels 26.037.10-099, 26-036.20-082, 26.036.20-083, 26-036.20-084, the Debtor's equity interest in Housing Finance, II, Inc. (and thereby its 0.01% limited partnership interest in Claymont Street Apartments, L.P.), the ground lease between the Debtor and Claymont Street Apartments, L.P., and the management and submanagement agreements for the Claymont Street Apartments are specifically excluded from the MAT Sale and no right, title or interests in the foregoing shall be transferred, sold or assigned by the Debtor to the MAT Purchaser or any other person or entity.

35.    Any payments of MAT Sale Proceeds and other sale proceeds from any sale of the Debtor's assets approved hereby (collectively, with the MAT Sale Proceeds, the "**CCSP Sale Proceeds**") owed to those entities asserting Liens with respect to such CCSP Sale Proceeds on account of prepetition obligations shall be held by the Debtor and may be disbursed to those entities holding such Liens unless, prior to the expiration of the Challenge Period on July 7, 2021, (A) a motion has been brought pursuant to 11 U.S.C § 506(c), or a motion has been brought seeking standing to bring a motion pursuant to 11 U.S.C § 506(c), with respect to all such Proceeds; (B) a motion has been brought to challenge such Lien or Liens of a particular entity, or a motion has been brought seeking standing to challenge such Lien or Liens of a particular entity; or (C) a motion has been brought with respect to  the allocation of all such Proceeds among such entities. If a motion pursuant to (A), (B), or (C) herein is filed,  the Proceeds shall not be disbursed to such entity or entities until (i) entry of a final order of this Court denying the Committee or other interested party, as applicable, standing to pursue such challenge or such motion,  or (ii)

upon the final adjudication or dismissal of the merits of such challenge or such motion, or (iii) upon further order of the Court.   Notwithstanding the above, the Debtor shall  be permitted to disburse from such CCSP Sale Proceeds the fees owed to SSG in accordance with and subject to the order of the Court approving the retention of SSG.

36.     The Debtor, and its officers and directors, acknowledge and reaffirm their obligation to preserve any and all records and documents potentially relevant to *United States v. Community Connections Support Programs, Inc., et al.*, Civil Action No. 21-514-MN (D. Del.) and/or *United States and the State of Delaware ex rel. Spruill v. Connections Community Support Programs, Inc.*, Civil Action No. 19-475-CFC (D. Del.) (the "**District Court Litigation**"), and agree they shall not destroy, alter, or remove, or permit the destruction, alteration or removal of, such records and documents, except upon an order entered upon motion filed in the District Court Litigation, with notice to the United States.

37.     Prior to the closing with respect to any sale of the Debtor's assets, the Debtor and the Buyer shall provide written notice of the location or locations of documents and records the Debtor intends to transfer to the Buyer, and which documents or records it will not transfer (describing the general type of record, location and form in which it is retained or transferred). Such notice shall be in addition to, and not in replacement of, the notice required to be provided to the United States pursuant to the Orders Approving Certain Bidding Procedures and granting related relief [Docket Nos. 151 and 152]. The obligations of the Debtor, and its officers and directors, not to destroy, alter, or remove, or permit the destruction, alteration or removal of, records and documents that the Debtor

does not transfer shall continue after such sale except upon an order entered upon motion filed in the District Court Litigation, with notice to the United States.

38.     Any and all records or documents potentially relevant to the District Court Litigation as well as any pending or future litigation relating to claims and causes of action relating to the Debtor's former or current directors and officers which are transferred to the Buyer in any sale shall be maintained by the Buyer as custodian for the Debtor, and any successor or assign of the Debtor, including without limitation, the Official Committee of Unsecured Creditors upon a grant of standing,  and the Buyer shall not destroy, alter, or remove, or permit the destruction, alteration or removal of, such records and documents, except upon an order entered upon motion filed in the District Court Litigation, with notice to the United States, and the United States Bankruptcy Court for the District of Delaware.

39.     The provisions of this Order regarding retention of and access to documents shall be binding on the Buyer and Debtor, any and all of their successors and assigns, their officers and directors, as well as the bankruptcy estate, and shall survive dismissal of the case, conversion of the case to another Chapter, appointment of a trustee, liquidating trustee, or other fiduciary with custody over assets of the estate.  Such provisions of this order may be enforced in any Court or judicial body of competent jurisdiction.

40.     Notwithstanding anything in this Order or the Asset Purchase Agreements, no executory contract with AmeriHealth Caritas Delaware, Inc. ("**AmeriHealth Caritas**") shall be assumed and assigned absent (1) written agreement with AmeriHealth Caritas approved by the Court or (2) further order of this Court.

Case 21-10723-MFW    Doc 245    Filed 06/14/21    Page 32 of 38


41.     Notwithstanding any provision of this Order or the MAT Stalking Horse APA to the contrary: (1) the Objection of Drummond Plaza Associates, LLC ("**Drummond**") to the Notices of Proposed Assumption, Assignment, and Cure Amounts with Respect to Executory Contracts and Unexpired Leases of the Debtor [D.I. 190] is adjourned to the next hearing as may be scheduled by the Court or as otherwise agreed to by the parties; (2) the issues/arguments raised in Drummond's Objection [D.I.190] are fully reserved and are in no way impaired or prejudiced by this Order, and (3) Drummond's leases shall not be assumed or otherwise transferred absent Drummond's written consent or further order of the Court.

42.     Notwithstanding anything in this Order or the Asset Purchase Agreements, no executory contract with Highmark BCBSD Inc. and Highmark BCBSD Health Options Inc. (collectively, "**Highmark**") shall be assumed and assigned absent (1) written agreement with Highmark approved by the Court or (2) further order of this Court.

43.     Notwithstanding anything in this Order or the Asset Purchase Agreements, no grant agreement with the United States of America or its departments and agencies, including without limitation HUD or VA, shall be transferred, assumed or and assigned through the sale. The Debtor and the MAT Purchaser shall cooperate with HUD and VA in such agencies' efforts to novate or substitute any grantee in place of the Debtor.

44.     Notwithstanding anything in this Order or the Asset Purchase Agreements, the Debtor's Medicare Part B supplier agreement, and any supplier numbers or other identifying numbers associated with the reimbursements from the United States, shall not

be transferred, assumed, or assigned hereunder, and the MAT Purchaser shall make no use of such agreements or numbers of the Debtor.

45.     Nothing in this Order or the Asset Purchase Agreements shall modify any right of the United States Department of Health and Human Services (HHS) and its component agencies, including, but not limited to CMS and the Health Resources and Services Administration (HRSA), to regulate and enforce compliance with statutes and regulations, including, but not limited to, such agencies' rights to take any actions to help protect health and safety. Nothing in this Order or the Asset Purchase Agreements shall affect or impair any defenses (jurisdictional or otherwise), reductions, recoupment or counterclaims by any agency or department of the United States against the Debtor.

46.     Nothing in this Order or the Asset Purchase Agreements shall release or affect any claim, liability, or cause of action of the United States, and without any party conceding the existence or merits thereof, the United States does not release any claim, liability, or cause of action against the Debtor, including any action for: (i) any civil, criminal, or administrative liability arising under Title 26 of the United States Code (the Internal Revenue Code); (ii) any criminal liability; (iii) any liability under subchapter III of chapter 37 of Title 31 of the United States Code; (iv) any liability that is based on conduct in violation of antitrust laws; or (v) any claim of any agency of the United States.

47.     Notwithstanding anything in this Order, the MAT Stalking Horse APA, or related documents (the "**Sale Documents**") to the contrary, (i) absent further agreement of the parties, none of the Sale Documents shall discharge, release, preclude, or enjoin: (a) any liability to the State of Delaware or any division or department thereof (collectively,

"**Delaware**") that attaches to any successor entity by virtue of its assumption of contracts or use of any of the Debtor's billing or provider numbers; (b) any Claim of Delaware arising on or after the Closing Date; (c) any liability to Delaware under police and regulatory statutes or regulations that any entity would be subject to as the owner or operator of the Acquired MAT Assets related to acts or omissions occurring on or after the Closing Date; or (d) any liability to Delaware on the part of any non-Debtor person. Nor shall anything in the Sale Documents enjoin or otherwise bar Delaware from asserting or enforcing, outside of this Court, any liability described in the preceding sentence. Nothing in the Sale Documents authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law. Nothing in the Sale Documents shall affect any setoff or recoupment rights of Delaware against the Debtor. Nothing in the Sale Documents divests any tribunal of any jurisdiction it may have under police or regulatory law to interpret the Sale Documents or to adjudicate any defense asserted under this Order. For the avoidance of doubt, the matters preserved by this paragraph are subject to all rights and defenses available under applicable law.

48.    As to any Acquired MAT Contracts between the MAT Purchaser and the State of Delaware Department of Health and Social Services or any division thereof, (a) to the extent any such Acquired MAT Contract has an expiration date that has already elapsed, the parties intend to continue operating under such agreement for an interim period to be further agreed between the parties, (b) the listing of an Acquired MAT Contract on

Schedule 2.8 of the MAT Stalking Horse APA shall be deemed to include all amendments and supplements thereto, and (c) additional agreements may be added to the Acquired MAT Contract list upon agreement of the parties. Further, the cure amount under the contracts between the Debtor and the State of Delaware, Department of Health and Social Services, Division of Developmental Disabilities Services is $98,999.75 plus any additional amounts accrued after April 30, 2021.

49.    On or before June 25, 2021, the Debtor shall file a motion with the Court seeking authority to enter into an Accounts Receivable Collection Agreement with EisnerAmper LLP in form and substance substantially the same as the form of such agreement referred to on the record at the Sale Hearing.

50.    Notwithstanding anything to the contrary contained in this Sale Order or the MAT Closing Documents, the MAT Purchaser acknowledges and agrees, and it is so ordered by the Court, that the MAT Purchaser shall pay directly to The Benecon Group for further allocation and distribution to The Benecon Group, Highmark BCBSD Inc., and Everest Reinsurance (collectively, the "**Medical Plan Administrators**"), as applicable, all amounts that are incurred by the Debtor from and after the MAT Closing Date in connection with or related to administration of the Debtor's employee medical plans (the "**Employee Medical Plans**"), including, without limitation, monthly administrative fees, stop loss premiums, and required claims funding (all such amounts, the "**Employee Medical Costs**").  To facilitate payments from the MAT Purchaser to The Benecon Group, the Debtor shall provide copies of all invoices from The Benecon Group on account of the Employee Medical Costs to the MAT Purchaser within two (2) business days of receipt of

such invoices. Any payments made by the MAT Purchaser to The Benecon Group pursuant to this paragraph shall be considered made in satisfaction of the MAT Purchaser's corresponding obligation to compensate the Debtor for the Employee Medical Costs under the transition services agreement between the Debtor and the MAT Purchaser. Without any application, motion, or notice to, hearing before, or order from the Court, if the MAT Purchaser fails to remit payment to The Benecon Group on account of any invoiced Employee Medical Costs on or before the date on which such Employee Medical Cost is due (a "**Payment Default**"), any one or more of the Medical Plan Administrators may declare (any such declaration shall be referred to herein as a "**Payment Default Notice**") that a Payment Default has occurred, and shall do so by delivering a Payment Default Notice by electronic mail (or other electronic means providing proof of delivery) to counsel to the Debtor, counsel to the MAT Purchaser, counsel to the Committee, and the U.S. Trustee. Without any application, motion, or notice to, hearing before, or order from the Court, the automatic stay in this Chapter 11 Case otherwise applicable to the Medical Plan Administrators is hereby modified so that after the expiration of five (5) business days after the date a Payment Default Notice is delivered (the "**Remedies Notice Period**"), any one or more of the Medical Plan Administrators shall be entitled to exercise all rights and remedies under their respective agreements with the Debtor associated with the Employee Medical Plans, including, without limitation, the termination of all of their obligations to the Debtor in connection with or related to the Employee Medical Plans and each associated agreement, unless the alleged Payment Default is cured or an emergency hearing as provided below is timely requested; *provided, however*, that during the Remedies Notice

Period, the Debtor, the MAT Purchaser, and/or the Committee shall be entitled to seek an emergency hearing within the Remedies Notice Period; *and provided further* that the sole issue that the Debtor, the MAT Purchaser, and/or the Committee may bring before the Court at any such emergency hearing is whether a Payment Default has occurred and is continuing.  In the event that the Payment Default is cured within the Remedies Notice Period, the Payment Default Notice shall be of no further force or effect, and the rights and obligations of the parties shall return to the *status quo ante.* Except as provided in the foregoing sentence, the Debtor and the MAT Purchaser hereby waive their right to and shall not be entitled to seek relief, including under section 105 of the Bankruptcy Code, to the extent that such relief would in any way impair or restrict the rights and remedies of the Medical Plan Administrators under their respective agreements with the Debtor, this Sale Order, in equity, or at law.  In addition to any rights and remedies that the Medical Plan Administrators may have under their applicable agreements with the Debtor, the MAT Purchaser acknowledges and agrees, and it is so ordered by the Court, that the obligation of the MAT Purchaser to pay the Employee Medical Costs under this paragraph may be enforced by any one or more of the Medical Plan Administrators directly against the MAT Purchaser.

51.     Notwithstanding anything in this Order or the MAT Stalking Horse APA, no executory contract or unexpired lease with Bayshore Ford Truck Sales, Inc. ("**Bayshore**"), shall be assumed and assigned absent (1) written agreement with Bayshore approved by the Court or (2) further order of this Court.

52.     Notwithstanding any provision of this Order or the MAT Stalking Horse

APA to the contrary: (1) the Objection of Old Town Hall Associates LLC ("**OTH**") to the Notices of Proposed Assumption, Assignment, and Cure Amounts with Respect to Executory Contracts and Unexpired Leases of the Debtor [D.I. 179] is adjourned to the next hearing as may be scheduled by the Court or as otherwise agreed to by the parties; (2) the issues/arguments raised in OTH's Objection [D.I.179] are fully reserved and are in no way impaired or prejudiced by this Order, and (3) OTH's lease shall not be assumed or otherwise transferred absent OTH's written consent or further order of the Court.

53.    Nothing in this Order or the Asset Purchase Agreements shall release or affect any claim, liability, or cause of action of Malika Spruill and/or Douglas Spruill, against the Debtor, without any party conceding the existence or merits thereof.

**Dated: June 14th, 2021**
**Wilmington, Delaware**

**MARY F. WALRATH**
**UNITED STATES BANKRUPTCY JUDGE**