# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>CONNECTIONS COMMUNITY SUPPORT PROGRAMS, INC.,<br><br>Debtor.[1] | Chapter 11<br>Case No. 21-10723 (MFW)<br>**Related to ECF No. 454**<br>**Hearing Date: September 17 at 10:30 (ET)**<br>**Objections due: September 15 at 4:00 (ET)** |

### RESPONSE OF CONEXIO CARE, INC. AND CORAS WELLNESS AND BEHAVIORAL HEALTH, LLC TO THE MOTION OF HIGHMARK BCBSD INC. FOR RELIEF FROM STAY, ALLOWANCE OF AN ADMINISTRATIVE EXPENSE AND RELATED RELIEF

Conexio Care, Inc. and Coras Wellness and Behavioral Health, LLC submit this response to the *Motion of Highmark BCBSD Inc. for Relief from Stay, Allowance of an Administrative Expense and Related Relief* as follows:

1. On April 21, 2021, the Debtor and Conexio Care, Inc. ("**Conexio**") entered into an asset purchase agreement (the "**Non-MAT APA**"), pursuant to which Conexio agreed to purchase the "Assumed Programs" as defined in the agreement and listed on its Exhibit A.

2. On June 14, 2021, the Court approved the Debtor's sale of the Non-MAT Assets to Conexio, by entering the *Order (I) Authorizing the Assumption, Assignment, and Sale of Certain Assets to Conexio Care, Inc., Free and Clear of All Liens, Claims, Encumbrances, and Interests; and (II) Granting Related Relief* [ECF No. 247], and on June 15, 2021, the Debtor and Conexio closed the sale of the Non-MAT Assets and the Debtor conveyed the Non-MAT Assets to Conexio.

---

[1] The last four digits of the Debtor's federal taxpayer identification number are 3030. The address of the Debtor's corporate headquarters is 3812 Lancaster Pike, Wilmington, Delaware 19805.

3. Also on June 15, 2021, the Debtor and Conexio also entered into a "Transition Services Agreement" (the "**Non-MAT TSA**"), authorizing Conexio to use the Debtor's various licenses, authorizations, certificates, permits, registrations, or similar approvals (if permissible) and to lease the Debtor's employees to operate the Assumed Programs Conexio had acquired until such time as it obtained new licensure or approval or a transfer licensure or approval and could transfer some or all of the leased employees to employment and benefits coverage under the Conexio/Coras plans.

4. On April 30, 2021, the Debtor, and Connections also entered into an asset purchase agreement (the "**MAT APA**", with the Non-MAT APA, the "**APAs**"), which essentially mirrored the Non-MAT APA and included all of the related programs and operations of the Debtor listed in its Exhibit A (the "**MAT Programs**"; with the Non-MAT Programs, the "**Assumed Programs**").

5. On June 14, 2021, the Court approved the Debtor's sale of the MAT Assets to Conexio, by entering the *Order (I) Authorizing the Assumption, Assignment, and Sale of Certain Assets to Coras Wellness and Behavioral Health, LLC., Free and Clear of All Liens, Claims, Encumbrances, and Interests; and (II) Granting Related Relief* [ECF No. 245]. On the same day, Conexio assigned the MAT APA to its affiliate Coras Wellness and Behavioral Health, LLC ("**Coras**").

6. On June 15, 2021, the Debtor and Coras closed the sale of the MAT Assets, and, in accordance with the MAT APA, the Debtor transferred the MAT Assets to Coras.

7. On June 15, 2021, the Debtor and Coras entered into a "Transition Services Agreement" (the "**MAT TSA**"), authorizing Coras to use the Debtor's various licenses, etc. (of permissible), and lease the Debtor's employees to operate the Assumed Programs until such

2

time as some or all of the leased employees were offered and accepted employment with Conexio/Coras and became covered by the benefit programs under the Conexio/Coras plans. The purpose of Section 1.03 of the MAT TSA was to enable Coras to operate the Assumed Programs conveyed to it under the MAT APA while applying for replacements for its own permits.

8. Given the extreme financial circumstances of the Debtor, the Non-MAT APA and MAT APA were entered into, and the transactions thereunder consummated, on an accelerated timeline with many transitional tasks typically carried out before closing to be deferred until after the Closing Date. Hence the two TSAs.

9. Both of the Sale Orders provided that:

> "…the MAT Purchaser shall pay directly to The Benecon Group for further allocation and distribution to The Benecon Group, Highmark BCBSD Inc., and Everest Reinsurance (collectively, the "**Medical Plan Administrators**"), as applicable, all amounts <u>that are incurred by the Debtor from and after the MAT Closing Date</u> in connection with or related to administration of the Debtor's employee medical plans (the "**Employee Medical Plans**"), including, without limitation, monthly administrative fees, stop loss premiums, and required claims funding (all such amounts, the "**Employee Medical Costs**").[Emphasis added.]

MAT Order ¶ 50; Non-Mat Order ¶ 51

10. The clear language and intent of the TSAs and the Sale Orders were that all liability for "Employee Medical Costs" which were "incurred" pre-closing before the employee leases in the TSAs became effective were to remain the Debtor's obligations and those that were "incurred" once the employees were being leased by Conexio/Coras – *i.e.,* for which the Debtor had become liable post-closing but had not yet been billed – would be paid to the administrators for the benefit of the Debtor and its estate. Conexio/Coras has done so and will continue to do so for all costs for services rendered and liability therefor incurred "from and after the Closing

3

Date," for all leased employees whenever the Debtor is billed for them, and whether or not the employee was offered and accepted employment with Conexio/Coras.[2]

11. Highmark, who was neither a party to nor an intended beneficiary of the APAs and the TSAs, but is just a benefits plan administrator faced with an unforeseen shortfall as a consequence of the actions of WSFS, now makes the argument that "incurred" actually means "invoiced," and "invoiced" for regardless of when the services were performed. Thus, its argument goes, Conexio/Coras are now potentially liable for "Employee Medical Costs" of the Debtor's employees for obligations incurred at <u>any time</u> before the closing and effective dates of the APAs; perhaps months before in the case of major items. This would be an absurd result and is one which neither of the actual parties to the transaction contends for and is at odds with how they actually have performed and continued to perform post-closing, including in how they agreed to apportion liability for incurred costs as well as "tail" insurance premiums. The parties to the TSAs each intended that Conexio/Coras would fund all of Debtor's additional and incremental costs and expenses generated by Conexio/Coras leasing Debtor's employees as of the Closing Date (instead of transferring employment to Conexio/Coras as of such date), and Debtor's continued employment of, and provision of compensation and benefits to, its employees post-closing, which would inherently include employee medical claims for services provided on or after the Closing Date (but certainly not include any such employee medical claims for services provided before the Closing Date, as such would have been a Debtor liability irrespective of and unrelated to the TSAs).

---

[2] As the result of Conexio/Coras's counsel's inartful communication skills, an email sent to interested parties on the subject on September 2, 2021, incorrectly and unintentionally suggested that a leased employee's continued employment with Conexio/Coras was a condition of the obligation to pay covered "Employee Medical Costs" for services rendered and obligations therefor incurred while an employee was being leased from the Debtor. It was not and is not a condition, and Conexio/Coras has been paying and will continue to pay as intended and agreed. Counsel alerted the recipients of the email, with apologies, prior to this filing.

12. Regardless of its disposition of the other facets of Highmark's Motion, this assertion should be dismissed out of hand.

## CONCLUSION

For the foregoing reasons, and in light of the plain language of the transaction documents and the two sale orders and the performance of the parties to the two transactions to date, the Court should reject the arguments advanced as to Conexio/Coras' potential liability for "Employee Medical Costs" for services rendered before the closing and effective dates of the two transactions, and deny the Motion in that respect.

Dated: September 15, 2021
      Wilmington, Delaware

Respectfully submitted,

*/s/ Joseph H. Huston, Jr.*
Joseph H. Huston, Jr. (No. 4035)
David W. Giattino (No. 5614)
**STEVENS & LEE, P.C.**
919 North Market Street, Suite 1300
Wilmington, Delaware 19801
Tel:    (302) 425-3310 | (302) 425-2608
Fax:   (610) 371-7972 | (610) 371-7988
E-mail:  joseph.huston@stevenslee.com
           david.giattino@stevenslee.com

*Counsel to Conexio Care, Inc., and Coras Wellness and Behavioral Health, Inc.*