**IN THE UNITED STATES BANKRUPTY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 7 |
| CONNECTIONS COMMUNITY SUPPORT PROGRAMS, INC., | Case No. 21-10723 (MFW) |
| Debtor.[1] | **Hearing Date: June 8, 2022 at 2:00 p.m. (ET)**<br>**Obj. Deadline: May 25, 2022 at 4:00 p.m. (ET)** |

**MOTION OF DON A. BESKRONE, CHAPTER 7 TRUSTEE,**
**FOR ORDERS (A) APPROVING (1) PRIVATE SALE PROCESS,**
**INCLUDING DESIGNATION OF STALKING HORSE BIDDER AND**
**BID PROTECTIONS, AND (2) SALE OF CERTAIN REAL PROPERTY,**
**AND (B) GRANTING RELATED RELIEF**

Don A. Beskrone, Chapter 7 trustee (the "Trustee") of the above-captioned debtor (the "Debtor") and its estate, pursuant to 11 U.S.C. §§ 105 and 363(b), (f) and (m) of Title 11 of the United States Code (as may be amended from time to time, the "Bankruptcy Code"), Rules 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), hereby files this motion (the "Motion") seeking entry of an order (the "Sale Procedures Order"), substantially in the form attached hereto as **Exhibit A**, (A) approving (i) a private sale process regarding certain real property located in Harrington, Delaware (the "Harrington Property"),[2] including the designation of a stalking horse bid and the grant of bid protections for the stalking horse bidder, and (ii) scheduling the sale of the Harrington Property (to be approved pursuant to a separate proposed form of order, a copy of which is attached hereto as **Exhibit B** (the "Proposed Sale Order") and (B) granting related relief.

---

[1] The Debtor in this chapter 7 case, along with the last four digits of its tax identification number, is as follows: Connections Community Support Programs, Inc. (3030).

[2] The Harrington Property also includes an undeveloped lot located at 45 Clark Street in Harrington, Delaware. The Trustee's proposed sale to Coras includes the lot, and therefore any reference herein to "Harrington Property" necessarily includes the 45 Clark Street parcel.

This Motion, and the relief requested herein, is supported by the entire record of this case, as well as the *Declaration of Don A. Beskrone, Chapter 7 Trustee, in Support of Private Sale Process and Related Sale* (the "Beskrone Declaration") filed contemporaneously herewith and incorporated herein by reference.  In further support of the Motion, the Trustee respectfully represents as follows:

## PRELIMINARY STATEMENT

By this Motion, the Trustee respectfully moves the Court for the entry of: (A) an order authorizing the Trustee to sell certain real property – the Harrington Property -- free and clear of all liens, claims, encumbrances, and interests to Coras Wellness and Behavioral Health, LLC ("Coras") (or to any other party making a higher and better offer than that made by Coras), under that certain Real Estate Purchase Agreement between the Trustee, on behalf of the Debtor and its estate, and Coras, a copy of which is attached hereto as **Exhibit C** (the "Agreement"); and (B) an order (i.e., the Sales Procedure Order) approving procedures for a private sale of the Harrington Property, including (i) the designation of Coras as the stalking horse bidder for the Harrington Property and (ii) the approval of certain bid protections, and setting a hearing to approve the sale. This Motion is supported by the entire record before the Court, and the Beskrone Declaration.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over these cases and this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.

2.      This is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(N) and (O). The Trustee confirms his consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot

enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The statutory and legal predicates for the relief requested herein are Sections 105 and 363(b), (f) and (m) of the Bankruptcy Code, Bankruptcy Rules 6004 and 9014 and Local Rule 6004-1.

### RELEVANT BACKGROUND[3]

**A.      The Debtor and its Business.**

5.      Prior to the commencement of this case, and up to the entry of the Conversion Order (as defined below), the Debtor was one of Delaware's largest nonprofit organizations assisting thousands of Delaware's most vulnerable citizens (and their families), dealing with behavioral health and substance use disorders, housing challenges, and developmental and intellectual disabilities.  *See* Beskrone Decl. ¶ 3.  Additional background on the Debtor and its prior business operations can be found in the *Declaration of Robert D. Katz, Chief Restructuring Officer, in Support of Chapter 11 Petition and First Day Pleadings* [D.I. 4], the statements and content of which are incorporated herein by reference.

6.      In furtherance of its business, the Debtor operated numerous facilities throughout Delaware, including a center in Harrington, Delaware that treated individuals struggling with substance abuse issues.  The real property in and from which the Debtor provided these services – *ie*, the Harrington Property – is the subject of this Motion.  *Id.* At ¶ 4.

---

[3] The Trustee recites this background based on a preliminary investigation of the Debtor and its business. The Trustee reserves his right to amend or alter this background or other asserted statement of fact as the Trustee and his professionals learn more about the Debtor through further investigation.

**B.**    **The Debtor's Bankruptcy Case.**

7.    On April 19, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Chapter 11 Case").

8.    On May 3, 2021, the Office of the United States Trustee (the "OUST") appointed an Official Committee of Unsecured Creditors [D.I. 79].

9.    On May 26, 2021, the Debtor filed its Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements") [D.I. 169 and D.I. 170, respectively].  On May 28, 2021, a meeting of creditors was held pursuant to 11 U.S.C. § 341(a) and continued to an open date [D.I. 185].

10.    On June 14, 2021, the Court entered the *Order (I) Authorizing the Assumption, Assignment, and Sale of Certain Assets to Conexio Care, Inc., Free and Clear of All Liens, Claims, Encumbrances, and Interests; and (II) Granting Related Relief* (the "Medication Assisted Treatment Asset Sale Order") [D.I. 245] and *Order (I) Authorizing the Assumption, Assignment, and Sale of Certain Assets to Conexio Care, Inc., Free and Clear of All Liens, Claims, Encumbrances, and Interests; and (II) Granting Related Relief* (the "Non-Medication Assisted Treatment Asset Sale Order", and together with the Medication Assisted Treatment Asset Sale Order, the "Conexio Sale Orders"), both of which effected a transfer of certain assets and operations of the Debtor to Conexio Care, Inc. ("Conexio") [D.I. 247].  Prior to closing, the Medication Assisted Treatment transaction was assigned by Conexio to Coras, its wholly-owned subsidiary, which purchased the associated Medication Assisted Treatment assets from the Debtor. These sales, as reflected in the Conexio Sales Orders, represented the disposition of a significant portion of the Debtor's assets.  *See* Beskrone Decl. ¶7.

11.     On September 27, 2021, the Debtor filed a *Motion to Convert Debtor's Chapter 11 Case to a Case Under Chapter 7 of the Bankruptcy Code* [D.I. 466]. The Court entered an Order converting this case (the "Case") on September 27, 2021 (the "Conversion Order") [D.I. 537].

12.     On September 27, 2021, the OUST for the District of Delaware appointed Don A. Beskrone to serve as the Interim Chapter 7 Trustee in this Case [D.I. 538].  On December 22, 2021, a meeting of creditors as required by 11 U.S.C. § 341 was held and concluded.  Mr. Beskrone thus serves as the Trustee of the Debtor and its estate under 11 U.S.C. § 702(d).

## C.     The Harrington Property and the Coras Lease.

13.     As noted above, the Harrington Property served as a treatment center of the Debtor. In connection with the Debtor's sale of certain assets and operations to Conexio and Coras, Coras also entered into an agreement to provide for a seamless transition of the facility's operations. Specifically, on June 15, 2021, the Debtor and Coras entered into that certain Transition Services Agreement whereby the Debtor leased the Harrington Property to Coras for continued use as a treatment center (the "Coras Lease").  Since that time, the Debtor (and later the Trustee) have, on multiple occasions, extended the term of the Coras Lease through a series of addenda. Since the sale, Coras has consistently remained and remains the tenant of the Harrington Property and the operator of the community support programs there.  *See* Beskrone Decl. ¶ 10.

14.     The Debtor is indebted to the United States Department of Agriculture ("USDA"), acting through its component agency Rural Housing Service, under a Rural Housing Service Loan Agreement executed and delivered August 26, 2016 in the original amount of $6,050,000.00 (the "USDA Loan Agreement").  USDA filed a proof of claim in the Debtor's bankruptcy case on or about October 14, 2021, indicating a balance of principal and interest under the USDA Loan Agreement of $5,633,091.91 (the "USDA Claim"). The Debtor's obligations under the USDA

Loan Agreement are secured by a first priority mortgage (the "USDA Mortgage") recorded in the land records for Kent County, Delaware, perfecting a security interest in and first-priority mortgage on the Harrington Property. *See* Beskrone Decl. ¶ 11.

> **D.        Marketing of Assets, the Proposed Sale Transaction and Benefits.**

15.        As described in the Beskrone Declaration, the Trustee has undertaken an investigation of the Debtor's assets, including the Harrington Property, with the intent of maximizing value for the benefit of creditors.  Beskrone Decl. ¶ 12.  To that end, the Trustee has approached Coras to explore its interest in acquiring the Harrington Property facility for the purpose of continuing its operations at that location, and Coras has agreed to purchase the property on terms and conditions satisfactory to the Trustee. The Trustee believes the USDA will support the transaction and consent to the sale free and clear of its lien subject to the terms described herein. Moreover, the Trustee has sought Court approval to retain Hilco Real Estate, LLC ("Hilco") for purposes of marketing, soliciting interest in, and selling, subject to Bankruptcy Court approval, the Harrington Property.[4] *Id.*

16.        Since its engagement, Hilco has commenced a review of the Harrington Property, and offered suggestions to the Trustee.  Consistent with the terms of its engagement, the Trustee expects that Hilco, and the services it provides, will enhance the sale process.  Indeed, the Trustee believes Hilco will be value-accretive to the Trustee's efforts to market and sell the Harrington Property.  *See* Beskrone Decl. ¶ 13.

---

[4] Prior to the filing of this Motion, the Trustee filed the *Application of Don A. Beskrone, Chapter 7 Trustee, to Employ Hilco Real Estate, LLC as Real Estate Agents* [D.I. 633] (the "Hilco Application").  As provided herein, and consistent with the terms of the listing agreement between the Trustee and Hilco, Hilco will undertake a marketing process for the Harrington Property.

17.     After discussions with Coras and the USDA, and following his own investigation, the Trustee determined, in the exercise of his business judgment, and upon consultation with his professionals, that the bid received from Coras represents a fair and reasonable price for the Harrington Property.  Moreover, the Trustee determined that a private sale process (with Hilco marketing and soliciting additional interest), subject to higher and better bids, would yield the best outcome for the Debtor's estate and its creditors.  To that end, and to entice additional bidders, the Trustee agreed, again, subject to Bankruptcy Court approval, to designate Coras as a "stalking horse" bidder and grant Coras certain bid protections.  Such bid protections include a break-up fee of $50,000.00, or 2% of the proposed $2,500,000.00 purchase price to compensate Coras for its continued operation of and improvements to the property, as well as the right for Coras to continue the Coras Lease for the duration of its remaining term in accordance with its terms and conditions by having the Harrington Property sold subject to the Coras Lease.   Beskrone Decl. ¶ 14.

18.     The Trustee respectfully submits that the Agreement with Coras is the product of good faith, arm's length negotiations between the Trustee and Coras, and all parties were represented by able counsel.  *Id.* at ¶ 15.

19.     The Trustee submits that a successful and private sale, subject to higher and better offers (as is made an express term in the Agreement), of the Harrington Property free and clear of liens, claims and encumbrances pursuant to section 363 of the Bankruptcy Code, is the best way to maximize the value of the Harrington Property under the facts and circumstances of this case. *Id.* ¶ 16.  Indeed, the Trustee believes the USDA will agree, conditioned upon its receipt of the Purchase Price at the sale closing, to "carve-out" from its proceeds $100,000.00 for the Debtor's estate (the "Estate Carve-Out") and, if the Harrington Property sells for more than the Purchase Price will agree to an additional carve out of 4% for the estate from any additional USDA proceeds

received. These carve-out funds will yield a benefit to the estate, provide a means to administer this case, and serve as a potential source from which distributions to creditors might be made (apart from potential litigation claims). *Id.* Moreover, the proposed sale also yields a demonstrable benefit to the Debtor's estate as the terms thereof allow for the anticipated sale to move forward on a consensual and efficient basis, and provides a salutary benefit to creditors as the USDA's claim against the estate will be reduced.[5] Having Coras continue to occupy and operate its community support programs at the Harrington property also provides a significant benefit to the surrounding area. In addition, Coras or any other purchaser of the Harrington Property will be obliged after the closing to perform certain remedies and improvements to the property which are required by the City of Harrington (the "City") and have been outstanding since before the Debtor commenced its Chapter 11 case. *Id.*

20.     Accordingly, in light of such facts and circumstances, the Trustee hereby seeks Court authorization to undertake a private sale of the Harrington Property to Coras, subject to higher and better offers, under and pursuant to the Bankruptcy Code and applicable rules.

**E.     The Agreement.**

21.     The Agreement contemplates the sale of the Harrington Property, subject to higher and better offers, on terms that include the following:[6]

---

[5] As set forth in the USDA Claim, the balance of principal and interest due under the USDA Loan Agreement was $5,633,091.91 on the petition date. Upon consummation of the Harrington Property sale, USDA shall retain an unsecured claim for the remaining balance under the agreement, in addition to other unsecured claims as set forth in the USDA Claim. USDA shall not be required to amend or supplement its proof of claim to reflect the remaining unsecured balance due thereon.

[6] The following summary is not comprehensive and is provided pursuant to Local Rule 6004-1. In the event of any inconsistency between the summary and the Agreement, the Agreement shall control. Parties are encouraged to review the Agreement in its entirety. Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Agreement.

| | |
|---|---|
| **Consideration** | The consideration for the Harrington Property shall be $2,500,000.00 (the "<u>Purchase Price</u>").[7]  As additional consideration for the purchase of the Property, as of Closing, Purchaser[8] shall assume financial and operational responsibility for conducting and completing such improvements, installations, remediation and repairs as specifically requested and required by the City of Harrington (the "<u>Required Renovations</u>") in order to, among other things, issue new permits, approvals and certificates of occupancy for the Property, as applicable, all to the extent set forth in the September 21, 2021 letter from the City of Harrington, but expressly excluding any associated fines or penalties. Excepting the foregoing and any other liability expressly assumed by Purchaser hereunder, Purchaser shall not assume, and shall not otherwise become legally or financially responsible for, any liability of Seller or CCSP relating to the Property or CCSP's operations to the extent arising, occurring or accruing prior to Closing, except as may be expressly set forth in the Interim Lease.<br><br>Agreement § 2(a)-(b). |
| **Acquired Assets** | The assets to be acquired are the Harrington Property and related buildings and improvements, namely:<br><br>(a)  all those certain parcels of real estate located at 1-11 East Street and 45 Clark Street, Harrington, Delaware 19952, as more particularly described on Exhibit A attached to the Agreement, and all rights, privileges and appurtenances pertaining thereto, including, without limitation, all right, title and interest in and to all rights-of-way, open or proposed streets, alleys, easements, strips or gores of land adjacent thereto (collectively, the "<u>Land</u>");<br><br>(b)  all buildings (the "<u>Buildings</u>"), improvements and fixtures located on the Land, including all heating and air conditioning, electrical systems, plumbing and lighting fixtures, water heaters and boilers and all facilities used to provide any utility services, refrigeration, ventilation or garbage disposal, and all doors, carpeting, other floor coverings, wall coverings and other interior improvements and built-in items owned by Seller and permanently affixed to the Buildings and all fixtures attached or appurtenant to the Buildings or the real property which are traditionally defined as part of real property including, without limiting the generality of the foregoing, all sprinkler, plumbing, |

---

[7] For the avoidance of doubt, "Purchase Price" shall be the $2,500,000.00 or such other amount approved or required by the Bankruptcy Court.

[8] For the avoidance of doubt, "Purchaser" shall be such entity that is identified or designated by the Court as the successful purchser of the Harrington Property.

| | |
|---|---|
| | heating, air-conditioning, electric power or lighting, incinerating, vacuum cleaning, ventilating and cooling systems, with each of their respective appurtenant furnaces, boilers, engines, motors, dynamos, radiators, pipes, wiring and other apparatus, equipment and fixtures, elevators, partitions, fire prevention and extinguishing systems and equipment, and all other fixtures and items considered a part of the real property (the "<u>Improvements</u>") (the Land, the Buildings and the Improvements, collectively hereinafter referred to as, the "<u>Property</u>").<br><br>Agreement § 1(a)-(b). |
| <u>No/Limited Warranty</u> | The Harrington Property is being sold with limited warranties, based on Trustee's knowledge and referred to in the Agreement as the "Seller's knowledge". "Seller's knowledge" means shall mean the actual knowledge of Trustee, as seller, and the Debtor of (i) the inaccuracy, untruth or incorrectness of a representation or warranty or (ii) facts which would induce a reasonable, similarly situated property owner to conduct inquiry which would lead to discovery of such inaccuracy, untruth or incorrectness.<br><br>The Purchaser shall pay all taxes, including all real estate transfer taxes arising out of the transfer of the Property, the cost of the Purchaser's and any lender's title insurance policies, if any, the cost of recording the deeds and any mortgages created by the Purchaser at Closing, the cost of the Purchaser's land title survey of the Real Property, if applicable, and the cost of all appraisals and environmental, engineering and other professional studies undertaken by the Purchaser, as applicable.<br><br>Agreement §§ 6, 12. |

## F.    <u>Compliance With Local Rule 6004-1.</u>

22.    Pursuant to Local Rule 6004-1, the following are material terms of the sale that are required to be highlighted:

| Local Rule 6004-1 Disclosure | Terms of the Agreement |
|---|---|
| <u>Sale to Insider</u> | N/A |
| <u>Agreements with Management</u> | N/A |
| <u>Releases</u> | N/A |
| <u>Private Sale / No Competitive Bidding</u> | The Trustee seeks approval of a private sale subject to higher and better offers, with an auction to be held in the event an offer equal to or better than the Coras offer is |

| | |
|---|---|
| | received. Thus, if prior to a sale hearing, the Trustee receives a higher and better offer for the Harrington Property as the Trustee may determine in his sole discretion (with consultation with the USDA), Coras understands and agrees that Trustee may convene an auction or some other process to obtain the highest and best bid for the Harrington Property, provided that in no event shall Trustee accept a higher and better offer for the Harrington Property without affording Coras the right to submit a topping bid(s) at an auction or otherwise. The Trustee will retain the right and flexibility to conduct an auction as he deems necessary or appropriate. |
| **Closing and Other Deadlines** | The Closing shall occur on or before June 30, 2022.<br><br>Agreement § 3. |
| **Good Faith Deposit** | N/A |
| **Interim Arrangements with Coras** | Coras and the Debtor's estate are parties to the Interim Lease.<br><br>Agreement Recitals. |
| **Use of Proceeds** | The Purchase Price will be paid to the USDA, less the Estate Carve-Out. USDA's consent to the sale free and clear of its lien is conditioned on receipt, at the closing, of a minimum amount of $2,400,000.00 (the "Minimum USDA Payment"). If a sale is approved for more than the Purchase Price, USDA shall receive, in addition to the Minimum USDA Payment, 96% of the sale proceeds in excess of the Purchase Price, after deducting Hilco's Reimbursable Expenses[9] from the sale proceeds (and not from the Estate Carve-Out), *provided*, however, that payment of such Reimbursable Expenses shall not cause the USDA to receive less than the Minimum USDA Payment. However, in the event the sale Agreement with Coras is approved for the Purchase Price of $2,500,000.00, Hilco's Reimbursable Expenses shall be paid from the Estate Carve-Out. |
| **Tax Exemption** | N/A |

---

[9] The Hilco Application provides that Hilco is entitled to reimbursement for out-of-pocket expenses incurred in connection with its services, including reasonable expenses of marketing, advertising, economy travel and transportation. Such expenses are capped at $10,000.00.

| | |
|---|---|
| **Record Retention** | N/A |
| **Sale of Avoidance Actions** | N/A |
| **Requested Findings as to Successor Liability** | The Trustee and Coras seek entry of an order that provides that the Trustee will convey such title to or rights to use, the Harrington Property, free and clear of all liens, claims and encumbrances.<br><br>Agreement §§ 4(b) and 9(a). |
| **Sale Free and Clear of Unexpired Leases** | N/A |
| **Provisions Providing Bid Protections to Initial Bidder** | Coras is designated as a "stalking horse" bidder and is granted certain bid protections.  Such bid protections include a break-up fee of $50,000.00 (representing 2% of the proposed $2,500,000.00 purchase price) as well as the right for Coras to continue the Coras Lease for the duration of its remaining term in accordance with its terms and conditions by having the Harrington Property sold subject to such Coras Lease. Payment of any breakup fee shall not cause the USDA to receive less than the Minimum USDA Payment. |
| **Credit Bid** | N/A |
| **Relief from Bankruptcy Rule 6004(h)** | The Trustee requests that the order approving the sale be made effective immediately upon entry.  Thus, the Trustee requests waiver of the fourteen day stay under Bankruptcy Rule 6004(h) in order to close the transaction promptly pursuant to the terms of the Agreement. |

## RELIEF REQUESTED AND BASIS THEREFOR

23.     By this Motion, the Trustee seeks entry of the Sale Procedure Order, pursuant to

Sections 105(a), and 363 of the Bankruptcy Code, Bankruptcy Rules 6004 and 9014 and Local

Rule 6004-1 (A) (i) approving and authorizing the private sale, subject to higher and better offers,

of the Harrington Property to Coras (or such other party submitting the highest and best bid) free

and clear of all liens, claims, encumbrances and other interests, and (ii) approving a sale process,

and (B) granting related relief.  The Trustee will then later seek entry of the Proposed Sale Order

approving the sale of the Harrington Property to Coras, subject to higher and better bids.

**A.    The Proposed Sale of the Harrington Property Should Be Approved
as the Product of the Trustee's Sound and Reasonable Business Judgment.**

24.    The Trustee submits that ample authority exists for the approval of the sale of the

Harrington Property through the private sale as proposed.  Section 363(b) of the Bankruptcy Code

permits a trustee to sell assets outside of the ordinary course of business.  Indeed, Section 363(b)

of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing,

may use, sell, or lease, other than in the ordinary course of business, property of the estate[.]" 11

U.S.C. § 363(b).  Section 105(a) of the Bankruptcy Code further provides that "[t]he court may

issue any order, process, or judgment that is necessary or appropriate to carry out the provisions

of this title." 11 U.S.C. § 105(a).  Finally, Bankruptcy Rule 6004 states, in relevant part, that "[a]ll

sales not in the ordinary course of business may be by private sale or by public auction." FED. R.

BANKR. P. 6004(f)(1).

25.    Courts interpreting section 363(b) of the Bankruptcy Code have held that

transactions should be approved when they are supported by the sound business judgment of the

trustee. *See, e.g.*, *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 145-47 (3d Cir. 1986) (implicitly

adopting the articulated business justification and good faith tests of *Committee of Equity Sec.*

*Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983)); *In re Delaware*

*& Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (concluding that the Third Circuit had

adopted a "sound business purpose" test in *Abbotts Dairies*); *Dai-Ichi Kangyo Bank, Ltd. v.*

*Montgomery Ward Holding Corp.* (*In re Montgomery Ward Holding Corp.*), 242 B.R. 147, 153

(D. Del. 1999) ("In determining whether to authorize the use, sale or lease of property of the estate

. . . courts require the debtor to show that a sound business purpose justifies such actions.").

26.    Here, the Trustee respectfully submits that a sale of the Harrington Property to

Coras (or such other party that submits a higher and better offer) is both warranted and reasonable,

and well within the Trustee's sound business judgment.  *See* Beskrone Decl. ¶ 19.  As a fiduciary

of the Debtor and its stakeholders, the Trustee is charged with maximizing value.  As set forth

above, the Trustee respectfully submits that selling and transferring the Debtor's interest in the

Harrington Property at this time is warranted for a number of reasons.  First, the Harrington

Property will be marketed, and to date no superior offer(s) or bid(s) for such assets has been

extended to the Trustee.  Second, the Debtor is no longer operating the treatment center at the

Harrington Property; rather it is being leased to Coras and Coras is operating the programs.  The

rent the Trustee receives from Coras is, in turn, remitted to the USDA as adequate protection

payments.  *See* D.I. [649].  As a result, there is little, if any, benefit to the Debtor's continued

leasing of the Harrington Property, while leasing the property exposes the estate to the potential

administrative expense liability for the City's required remedies and improvements, all to the

detriment of creditors.  And finally, a sale to Coras (or other successful bidder) will ensure a

recovery to the estate.  As noted above, the Trustee believes the USDA will agree to "carve out"

$100,000.00 from its payment of the Purchase Price (and additional amounts as set forth above in

a sale for more than the Purchase Price), ensuring a substantial cash payment to the estate upon

the sale of the Harrington Property.

27.     All of these considerations warrant, if not mandate, a sale of the Harrington

Property to Coras, subject to higher and better offers.  *See* Beskrone Decl. ¶ 18.  In that regard, the

Trustee will provide all parties who may have expressed an interest in the Harrington Property

with notice of the filing of this Motion and the Agreement in the event they are interested in

offering more than Coras.  *Id.*   In the event there is interest in the Harrington Property and bids

that meet or exceed the Coras bid, the Trustee retains the right and flexibility to conduct an auction

as he deems necessary or appropriate.

28.     The Trustee submits that the fairness and reasonableness of the consideration to be paid for the Harrington Property by Coras (and the attendant payment to the estate) is demonstrated by the Trustee's sale efforts, and the facts and circumstances of this case.  *Id.* ¶¶ 18-20.  The Agreement is the product of good faith, arm's length negotiations among the parties.  *Id*. Moreover, as noted above, the Agreement is subject to higher and better offers.  *Id.*

29.     Accordingly, the proposed sale to Coras is justified and necessary, falls well within the Trustee's sound business judgment and, therefore, should be approved by this Court.

**B.      Approval of Stalking Horse Designation and Bid Protections.**

30.     The Trustee seeks the Court's approval of the designation of Coras as the stalking horse bidder for the Harrington Property, as well as the granting of bid protections.  The provisions of the Coras Agreement's stalking horse (and other relevant) terms are fairly straightforward, and can be summarized as follows: (i) the Purchase Price to be paid by Coras is $2,500,000.00, (ii) Coras is designated the stalking horse bidder, (iii) Coras is granted bid protections that include a break-up fee of $50,000.00, which is  2% of the proposed $2,500,000.00 purchase price, as well as the right for Coras to continue the Coras Lease for the duration of its remaining term in accordance with its terms and conditions by having the Harrington Property sold subject to such Coras Lease, and (iv) the right for Coras to make an overbid (collectively, the "Bid Protections"). These Bid Protections are warranted here.  *See* Beskrone Decl. ¶ 14.

31.     Break-up fees and other forms of bid protections are a normal and, in many cases, necessary component of significant sales conducted under section 363 of the Bankruptcy Code: "Break-up fees are important tools to encourage bidding and to maximize the value of the debtor's assets . . . . In fact, because the . . . corporation has a duty to encourage bidding, break-up fees can be necessary to discharge [such] duties to maximize value." *Integrated Res., Inc.*, 147 B.R. 650,

659–60 (S.D.N.Y. 1992) (emphasis added). Specifically, bid protections "may be legitimately necessary to convince a 'white knight' bidder to enter the bidding by providing some form of compensation for the risks it is undertaking." *995 Fifth Ave. Assocs., LP*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (quotations omitted); *see also Integrated Res.*, 147 B.R. at 660–61 (bid protections can prompt bidders to commence negotiations and "ensure that a bidder does not retract its bid"); *In re Hupp Int'l Indus., Inc.*, 140 B.R. 191, 194 (Bankr. N.D. Ohio 1992) ("[W]ithout such fees, bidders would be reluctant to make an initial bid for fear that their first bid will be shopped around for a higher bid from another bidder who would capitalize on the initial bidder's . . . due diligence."). As a result, courts routinely approve such bid protections in connection with proposed bankruptcy sales where a proposed fee or reimbursement provides a benefit to the estate. *See In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527 (3d Cir. 1999).

32.     As stated above, the Agreement will serve as a starting bid for the Harrington Property, and following the Hilco marketing and sale process, provide a baseline for a potential auction.  Furthermore, the parties have acted in good faith. To be sure, the Coras Agreement, including the stalking horse designation and the granting of bid protections, is the culmination of the Trustee's search for a buyer and was negotiated between the parties at arms-length.

33.     The Trustee submits that the Agreement is fair, reasonable and warranted under the circumstances, and will result in maximum value for the Harrington Property.  As such, the Bid Protections should be approved.  *See* Beskrone Decl. ¶ 15.

**C.     The Proposed Sale of the Harrington Property Should Be Approved Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to § 363(f) of the Bankruptcy Code.**

34.     Section 363(f) of the Bankruptcy Code permits a trustee to sell property free and clear of another party's interest in the property if:

(1)  applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2)  such entity consents;

(3)  such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4)  such interest is in bona fide dispute; or

(5)  such entity could be compelled in a legal or equitable proceeding, to accept a monetary satisfaction of its interest.

11 U.S.C. § 363(f).  Because section 363(f) of the Bankruptcy Code is drafted in the disjunctive, satisfaction of any one of the five requirements will be sufficient to permit a sale of the Harrington Property free and clear of all encumbrances that may be asserted in this Case.  *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (sale "free and clear" may be approved provided the requirements of at least one subsection are met); *see also In re Dundee Equity Corp.,* 1992 WL 53743, *4 (Bankr. S.D.N.Y. Mar. 6, 1992) (a "sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met").

35.    The Trustee proposes to transfer the Harrington Property to Coras (or other successful bidder) free and clear of all liens, claims and encumbrances.  Consistent with the schedules and statements filed in this case, the Trustee's investigation has revealed the existence of just one party with security interests in the Harrington Property– the USDA. The Trustee believes the USDA shall consent to the sale subject to the terms set forth herein, and thus subsection 363(f)(2) will be satisfied as to USDA's lien.  To the Trustee's knowledge, no other party has asserted an interest in the Harrington Property. [10]

---

[10] Arguably, WSFS maintains a junior security interest in the Harrington Property as a result of *Final Order (I) Authorizing Debtor to Use Cash Collateral on a Limited Basis, (II) Granting Adequate Protection to Prepetition Secured Creditor, (III) Modifying the Automatic Stay and Granting Related Relief* (as amended from time to time) [D.I. 199].  However, given the USDA's undersecured position on the Harrington Property, it follows that the position held by WSFS on the Harrington Property is "out of the money."

36.     In the event any other valid liens, encumbrances or interests encumber any of the Harrington Property, holders of such liens, encumbrances or interests are junior in priority to USDA, and as the value of the Harrington Property is insufficient to fully collateralize the USDA lien, such asserted junior liens, encumbrances or interests are fully unsecured, and the Harrington Property may be sold free and clear thereof

37.     Finally, the Trustee submits that the absence of an objection to the relief sought in this Motion is, or should be deemed, consent within the meaning of section 363(f)(2) of the Bankruptcy Code.  *See Hargrave v. Township of Pemberton* (*In re Tabone, Inc.*), 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to the sale motion, the secured creditor was deemed to consent under section 363(f)(2) of the Bankruptcy Code).

38.     Accordingly, the Trustee requests that the sale of the Harrington Property be authorized free and clear of all liens, claims and encumbrances, with such liens, claims and encumbrances, if any, attaching to the proceeds of the sale, or to the extent such liens, claims and encumbrances are fully unsecured, being released.  *See* Beskrone Decl. ¶ 17.

**D.      The Sale Should be Subject to the Protections of Section 363(m) of the Bankruptcy Code.**

39.     Section 363(m) of the Bankruptcy Code provides, in pertinent part, that:

> The reversal or modification on appeal of an authorization . . . of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

40.     The Trustee requests that the Court find and hold that Coras (or other successful bidder) is entitled to the protections afforded by section 363(m) of the Bankruptcy Code.  Such relief is appropriate because the parties engaged in good faith, arm's length negotiations and all

parties-in-interest will have the opportunity to review and object to the proposed sale.  Beskrone Decl. ¶ 15; *see also Esposito v. Title Ins. Co. of Pa. (In re Fernwood Mkts.)*, 73 B.R. 616, 620 (Bankr. E.D. Pa. 1987) (stating that upon notice to lienholders, section 363(m) protects good faith purchasers).

### E.    Waiver of Bankruptcy Rule 6004(h).

41.    Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h).  The Trustee requests that the Proposed Sale Order be made effective immediately upon entry by order of waiver of the 14-day stay under Bankruptcy Rule 6004(h).

42.    The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  *See* Advisory Committee Notes to FED. R. BANKR. P. 6004(h).  Although Bankruptcy Rule 6004(h) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the stay period, the leading bankruptcy treatise suggests that the fourteen- day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 COLLIER ON BANKRUPTCY ¶ 6004.10 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).  The treatise further provides that if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay may be reduced to the amount of time actually necessary to seek a stay, unless the court determines that the need to proceed sooner outweighs the interests of the objecting party.  *Id*.

43.    The terms of the Agreement anticipate a closing on or before June 30, 2022. Agreement § 3(a).  As set forth above, the Agreement is the result of good faith, arm's length

negotiations, and the Trustee believes that the terms set forth in the Agreement, including the date of closing, are in the best interest of the estate.  Beskrone Decl. ¶ 15.

44.     Accordingly, the Trustee hereby requests that the Court waive the fourteen (14) day stay period under Bankruptcy Rule 6004(h).

### NOTICE

45.     The Trustee is providing notice of this Motion by serving a copy of the Motion, together with a Notice of Motion upon: (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel for the Debtor; (iii) counsel for the USDA; (iv) all parties who have requested notice in the Debtor's case pursuant to Bankruptcy Rule 2002; (v) all parties that expressed any interest to the Trustee and/or Hilco in acquiring the Harrington Property; and (vi) all applicable local, state and federal government agencies and local municipalities.  In light of the nature of the relief requested herein, the Trustee respectfully requests a determination by the Court that such notice as described in this paragraph (the "Notice") is adequate and that no other or further notice need be given.  In light of the nature of the relief requested herein, the Trustee submits that no other or further notice is required.

### CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Trustee respectfully requests that the Court enter the proposed Sale Procedures Order, substantially in the form attached hereto as **Exhibit A,** and (i) approve and grant the relief requested in the Motion, (ii) approve the Trustee's proposed sale process for the Harrington Property, including the granting of the Bid Protections to Coras, and (iii) schedule a hearing to approve the sale of the Harrington Property to Coras (or such other party submitting a higher and better bid).  The Trustee also requests that the Court grant such other and further relief as is just and proper.

{01793991;v6 }

Dated: May 11, 2022                         **ASHBY & GEDDES, P.A.**

                                            */s/ Ricardo Palacio*
                                            Ricardo Palacio (DE Bar No. 3765)
                                            500 Delaware Avenue, 8th Floor
                                            P.O. Box 1150
                                            Wilmington, Delaware 19899
                                            Tel: (302) 654-1888
                                            Email: RPalacio@ashbygeddes.com

                                            *Counsel to the Chapter 7 Trustee*