# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> CONNECTIONS COMMUNITY <br> SUPPORT PROGRAMS, INC., <br><br> Debtor.[1] | Chapter 7 <br><br> Case No. 21-10723 (MFW) |

## UNITED STATES' MOTION FOR RELIEF FROM THE AUTOMATIC STAY TO TERMINATE GRANT AGREEMENT AND EXERCISE RIGHT OF SETOFF

The United States of America (the "United States"), on behalf of the Department of Housing and Urban Development ("HUD"), and with the consent of Don A. Beskrone, solely in his capacity as chapter 7 trustee (the "Trustee"), respectfully moves the Court for an order granting relief from the automatic stay to permit HUD to terminate a HUD grant agreement between the above-named debtor (the "Debtor") and HUD, and to exercise its setoff rights concerning pre-petition reimbursements under the grant agreement. In support of its motion, the United States shows as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* dated February 29, 2012, from the United States District Court for the District of Delaware.

2. Venue is proper in this District, pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(B), (b)(2)(G). Pursuant to Local Bankruptcy Rule 9013-1(f), the United States consents to the entry of final orders

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its tax identification number, is as follows: Connections Community Support Programs, Inc. (3030). The address of the Debtor's corporate headquarters was 3812 Lancaster Pike, Wilmington, Delaware 19805.

or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## FACTUAL AND PROCEDURAL BACKGROUND

4. The Debtor filed the present case under Chapter 11 of the Bankruptcy Code on April 19, 2021 (the "Petition Date").

5. Prior to filing the bankruptcy case, the Debtor entered into a grant agreement with HUD on February 25, 2020 entitled "Grant Agreement: Housing Opportunities for Persons With AIDS Program (HOPWA)", Grant #DEH190012 (the "Grant Agreement").

6. Under the Grant Agreement, HUD made available funds to the Debtor to provide housing and supportive services to households eligible under HOPWA. Such funds were to be used as provided by the Grant Agreement and HUD's regulations at 24 CFR part 574. The approved budget period under the Grant Agreement began February 25, 2020, and ends February 24, 2023.

7. After filing the case, the Debtor consummated the sale of substantially all of its assets and ceased operating its programs. The Debtor did not assign the Grant Agreement as part of the transfer of its assets.

8. On September 27, 2021, the Court converted the present case to Chapter 7 on the Debtor's motion, appointed the Trustee as interim trustee and the Debtor ceased operating its programs. After qualifying, the Trustee serves a chapter 7 trustee in the case.

9. The Trustee performed no services under the Grant Agreement after conversion of the case to Chapter 7. In addition, the Trustee did not seek to assume the Grant Agreement as an executory contract within sixty (60) days after the conversion of the case pursuant to 11 U.S.C. 365(d)(1), and is unable to continue the projects funded under the Grant Agreement.

10. The Trustee and HUD have agreed to terminate the Grant Agreement and have drafted an Agreement for Termination of Grant (the "Termination Agreement") for execution upon entry of an Order granting relief from the automatic stay. A copy of the Termination Agreement is attached as **Exhibit A**.

11. The Termination Agreement terminates the Grant Agreement as to reimbursement to the Debtor and its estate for any services provided on or after August 6, 2021, and permits HUD to "de-obligate" funds originally allocated to the Grant Agreement, leaving obligated on the Grant Agreement the sum of $179,745.61 (the "Remaining Obligated Funds"), the maximum amount of grant benefits which could be available through the date of termination.

12. The Termination Agreement permits the Trustee to apply for reimbursements from the Remaining Obligated Funds for services provided by the Debtor under the Grant Agreement, provided the Trustee makes such application within thirty (30) days after the Termination Agreement is executed, and satisfies the obligations to support and document any request for grant funds under the terms of the Grant Agreement and applicable statutory and regulatory authority.

## ARGUMENT

13. Section 362(d) of the Bankruptcy Code provides for relief from the automatic stay on request of a party in interest and after notice and a hearing "for cause, including the lack of adequate protection of an interest in property." 11 U.S.C. § 362(d). The Bankruptcy Code does not define "cause" for purposes of Section 362(d), but courts have found that cause exists to lift the stay to terminate an agreement where it cannot be assumed. See *In re Planet Hollywood Int'l, Inc.*, 2000 U.S. Dist. LEXIS 23309, *39 (D. Del. Nov. 21, 2000) (citing *In re West Electronics*, 852 F.2d at 82 (granting non-debtor party to executory contract relief from automatic stay where contract could not be assumed under 11 U.S.C. § 365(c)(1)). Cause exists for relief from the stay

to exercise a setoff once a creditor establishes the elements required for a setoff. *See In re WL Homes LLC*, 471 B.R. 349, 352 (Bankr. D. Del. 2012) (showing cause requires the creditor to show a right to setoff under non-bankruptcy law and to satisfy the conditions §553 places on setoff).

    *A.    Cause Exists to Lift the Automatic Stay and Permit the United States to Terminate the Grant Agreement.*

14. By its terms, the Grant Agreement may be terminated by the United States. First, the Trustee has not continued, and is unable to continue, the program for which the Grant Agreement was intended. A grantee's inability to continue operate program in accordance with the provisions of federal regulations and assure the adequate provision of supportive services to the participants in the program, constitutes a default under a grant agreement, permitting HUD to take actions up to and including termination of the agreement. *See* 24 C.F.R. §574.500(c).

15. In addition, the Trustee has not sought to assume the Grant Agreement under the Bankruptcy Code. Pursuant to 11 U.S.C. §365(d)(1), an agreement is deemed rejected if the trustee does not assume such agreement within sixty days after the order for relief.

16. Here, the Trustee cannot and will not continue the programs related to the Grant Agreement, and, moreover, the Trustee has not sought to assume the Grant Agreement. "Cause" therefore exists to lift the automatic stay to permit termination of the Grant Agreement.

17. The Termination Agreement preserves the estate's ability to seek reimbursement for any services the Debtor provided to beneficiaries. The Trustee has indicated he believes the estate may hold rights to reimbursements totaling $179,745.61for services provided in 2021 prior to August 6, 2021,[2] and HUD has agreed to leave this amount as Remaining Obligated Funds on

---

[2] HUD's records show that the Debtor, as grantee, has not submitted any requests for reimbursements under the Grant Agreement for services provided in calendar year 2021.

the Grant Agreement to permit the Trustee to seek such reimbursements.

18. Under the Termination Agreement, the Trustee shall have thirty (30) days following execution of the Termination Agreement to submit requests for reimbursement. The Trustee is required to submit the information regularly required by HUD under the Grant Agreement to entitle the grantee to receive reimbursements. To the extent the Trustee does not seek reimbursement, or HUD determines the Trustee is not entitled to reimbursement, under the Grant Agreement, HUD will be entitled to de-obligate any or all of the Remaining Obligated Funds from the grant.

19. The Termination Agreement thus permits HUD to terminate the Grant Agreement and obligate grant funds to new grantees providing services to the intended beneficiaries, while preserving the estate's right to seek reimbursements.

> B. *The Automatic Stay Also Should be Lifted to Permit the United States to Exercise Setoff Rights Against Grant Funds Attributable to Pre-petition Services.*

20. The Trustee's potential reimbursement claims under the Grant Agreement may relate to services provided by the Debtor before and after the April 19, 2021 Petition Date. Any reimbursement rights of the Debtor for pre-petition services would be subject to setoff rights held by the United States. In this case, the United States holds pre-petition claims against the Debtor totaling in excess of $18 million.[3]

---

[3] Principally, the United States holds $15,379,091 in allowed claims arising from pre-petition litigation against the Debtors under the False Claims Act (FCA) and Controlled Substances Act (CSA). The Court entered an Order on September 27, 2021 approving a settlement of disputes regarding such claims, granting the United States an allowed "FCA" claim of $13,757,520 and an allowed "CSA" claim of $1,621,571. [Docket No. 536]. In addition, the United States Department of Agriculture (USDA) was granted an allowed claim of $3,322,557.73 as a deficiency claim upon the sale of real property of the Debtor in Harrington, Delaware, by order entered June 23, 2022. [Docket No. 716]. Such deficiency claim does not mature until USDA receives the proceeds of sale of the property

21. The Trustee and the United States have consented to relief from the automatic to permit the United States to set off its pre-petition claims against any reimbursements sought by the Trustee relating to pre-petition grant services.

22. Section 553 of the Bankruptcy Code recognizes and preserves non-bankruptcy setoff rights against a debtor. 11 U.S.C. § 553(a) (the filing of a bankruptcy case "does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . ."); See e.g., *See Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995); *In re University Medical Center*, 973 F.2d 1065, 1079 (3d Cir. 1992) ("Setoff, in effect, elevates an unsecured claim to secured status, to the extent that the debtor has a mutual, pre-petition claim against the creditor.") (quoting *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir. 1984)).

23. The United States rights to setoff arises under federal common law. *Turner*, 59 F.3d at 1044; *United States v. Tafoya*, 803 F.2d 140, 141 (5th Cir. 1986) *In re Nuclear Imaging Systems*, 260 B.R. 724, 733-34 (Bankr. E.D. Pa. 2000) (recognizing United States federal common law right of setoff). The United States is entitled to set off because it satisfies section 553(a)'s requirements that: (1) it owes the debtor a debt that arose pre-petition; (2) it has a corresponding claim against the debtor that arose pre-petition; and (3) the debt and the claim are mutual obligations. *Folger Adam Security, Inc. v. Dematteis/MacGregor JV,* 209 F.3d 252, 262–63 (3d Cir. 2000). Here, the obligations proposed to be set off are mutual because the United States is considered a "unified creditor" for setoff purposes, regardless whether, as here, the obligations lie between different government agencies and the Debtor. *See, e.g., In re Semcrude, L.P.*, 399 B.R. 388, 399 (Bankr. D. Del. 2009) ("[T]he various agencies of the federal government constitute a single 'governmental

unit' for purposes of setoff under § 553 of the Bankruptcy Code.") (citing *Turner v. Small Business Admin. (In re Turner),* 84 F.3d 1294, 1299 (10th Cir. 1996) (en banc)). Additionally, the obligations are pre-petition. Claims "arise" for bankruptcy purposes when all transactions or acts necessary for liability occur. *Ogle v. Fid. & Deposit Co.*, 586 F.3d 143, 146 (2d Cir. 2009) (citing *Olin Corp. v. Riverwood Int'l (In re Manville Forest Prods*.), 209 F.3d 125, 129 (2d Cir. 2000)); *Braniff Airways, Inc. v. Exxon Co.* 814 F.2d 1030, 1036 (5th Cir. 1987). Here, all of the United States' claims against the Debtor are pre-petition claims, and the United States is seeking to set off only pre-petition reimbursement requests (i.e., requests relating to pre-petition services under the Grant Agreement).

24. In the event the parties disagree on the amount(s) or propriety of any prospective setoff, the parties have agreed to seek direction(s) and/or ruling(s) from this Court on such disputes, provided the United States reserves all rights to contest the Court's jurisdiction to adjudicate disputes regarding the estate's entitlement to reimbursements under the Grant Agreement.

## **CONCLUSION**

25. For the above reasons, this Court should lift the automatic stay to permit the parties to enter into the Termination Agreement, terminating the HUD Grant Agreement, and should lift the stay to permit the United States to exercise its rights to set off reimbursements for the Debtor's pre-petition services under the Grant Agreement against its pre-petition claims in the bankruptcy case.

*[page left intentionally blank]*

Dated:  January 10, 2023                    Respectfully submitted,


                                            DAVID C. WEISS
                                            United States Attorney

                                            ELLEN SLIGHTS
                                            Assistant United States Attorney

                                            /s/ Augustus T. Curtis                .
                                            RUTH A. HARVEY
                                            MARGARET NEWELL
                                            AUGUSTUS T. CURTIS
                                            U.S. Department of Justice – Civil Division
                                            Commercial Litigation Branch,
                                            P.O. Box 875, Ben Franklin Station
                                            Washington, DC 20044-0875
                                            TEL: (202) 514-7164
                                            FAX: (202) 514-9163
                                            Email: augustus.t.curtis@usdoj.gov

                                            ATTORNEYS FOR THE UNITED STATES
                                            OF AMERICA

## CERTIFICATE OF SERVICE

      I hereby certify that on this 10th day of January, 2023, I caused a true and correct copy of the foregoing objection to be served via electronic mail upon all parties receiving electronic notice under the Court's CM/ECF system.

                                              /s/ Seth B. Shapiro
                                              Seth B. Shapiro